UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FORD MOTOR COMPANY and
FORD GLOBAL TECHNOLOGIES,
L.L.C.,

        Plaintiffs,

v.

INTERMOTIVE, INC., and
GREGORY E. SCHAFER,

        Defendants.
_____/

Case No. 4:17-cv-11584
District Judge Terrence G. Berg
Magistrate Judge Anthony P. Patti

## OPINION AND ORDER DEEMING RESOLVED IN PART, GRANTING IN PART & DENYING IN PART INTERMOTIVE'S MOTION FOR SANCTIONS (ECF No. 79)

**I. OPINION**

    **A. Instant Matter**

The background of this case is set forth in detail in the Court's May 29, 2020 order (ECF No. 104) and does not warrant repetition here. Currently before the Court on referral from Judge Berg is InterMotive's March 12, 2020 motion for sanctions under Fed. R. Civ. P. 37(b) (ECF Nos. 79, 85), regarding which two sealed exhibits (ECF Nos. 80 & 97), a response (ECF No. 91), two declarations (ECF Nos. 92, 93), a reply (ECF No. 96), and a statement of resolved and unresolved issues (ECF No. 99) have been filed.

Due to the Covid-19 pandemic and the Governor of Michigan's shelter-in-place executive order(s), I conducted a telephonic hearing on May 20, 2020, at which attorneys Jared Cherry, Gregory D. Phillips, Andrew M. Grove, and Gerald E. McGlynn, III appeared. (ECF Nos. 101, 103.) As confirmed at the hearing, InterMotive asserts that Ford should give more complete responses to Request to Produce Nos. 24, 30, 31 and 32, as well as Interrogatory Nos. 10, 11, 12 and 13. (ECF No. 105, PageID.3024-3025.) At the conclusion of the telephonic hearing, I took this motion under advisement.

**B.    InterMotive's Motion for Sanctions under Fed. R. Civ. P. 37(b)**

In its motion for sanctions, InterMotive alleges that Ford has not complied with the Court's January 31, 2020 order (ECF No. 76), namely by refusing to produce "any documents relating to the sales of vehicles other than 2 pages of unverifiable ad hoc summaries (Ex. A at FORD094379 and FORD094380)[,]" and "information regarding its vehicle sales outside the U.S." (ECF No. 79, PageID.2191.)

Considering InterMotive's prayer for relief (ECF No. 79, PageID.2202-2203 ¶¶ 1-6), as narrowed by the joint statement (ECF No. 99, PageID.2946-2950), and further considering that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," Fed. R. Civ. P. 26(b)(1), InterMotive's

motion is **DEEMED RESOLVED IN PART**, **GRANTED IN PART**, and **DENIED IN PART** as follows:

**1.** **As to Document Requests Nos. 24, 30, 31, and 32 (Sales of Ford Vehicles Sold With its UIM) (ECF No. 99, PageID. 2946-2947)**, which seek either "documents," "all commercial documents," or "all documents,"[1] and are not limited to the jurisdiction of North America (ECF No. 79-5, PageID.2296-2298)[2] and for which Ford produced its first supplemental answers on February 28, 2020 (ECF No. 79-4, PageID.2235-2268), the motion is **GRANTED IN PART**. No

---

[1] As clarified at the first hearing, InterMotive is looking for vehicle sales invoices. (ECF No. 77, PageID.2076.) While the Court believes that this is a reasonable request and proportionate to the needs of this case, as explained herein, a request for "all" sales documents beyond that, potentially including any scrap of documentation touching upon sales beyond invoices, is indeed too broad and disproportionate.

[2] It is clear to this Court that Ford Motor Company, when considered together with its subsidiaries, is a worldwide organization. Preliminarily, Ford Motor Company's 2019 Annual Report, of which this Court takes judicial notice under Fed. R. Evid. 201, contains several pages labeled, "Ford Motor Company and Subsidiaries Financial Statements." *See* https://s23.q4cdn.com/725981074/files/doc_downloads/Ford-2019-Printed-Annual-Report.pdf (last visited June 14, 2020) (pp. 5, 89, 99-162). Its "Retail Sales, Industry Volume, and Market Share" include line items for North America, South America, Europe, Australia, *etc*. (*Id*. (pp. 10).) Moreover, at least as of January 31, 2020, Ford Motor Company had subsidiaries or sub-subsidiaries in North America, Europe, Asia, South America, Australia, and Africa. (*Id*. (pp. 174-175).) Among these is Ford-Werke GmbH, a German company. (*Id*. (pp. 175); *see also* ECF No. 92, PageID.2666, ¶ 6.)

later than **Wednesday, July 15, 2020**, Ford **SHALL**: **(1)** supplement its written response, under oath, to confirm that the documents already produced by Ford (*see* ECF No. 80) are complete for North America (*i.e.*, include information from the United States, Canada, *and Mexico*) or update it to include such information;[3] **(2)** supplement its document production to include sales invoices for all North American sales; **and, (3)** supplement its document production to include sales invoices for non-North American jurisdictions, but only if Ford Motor Company and/or Ford Global Technologies, L.L.C., has possession, custody or control over such documents (or a willingness to otherwise produce them) in accordance with the instructions provided below. To the extent Ford raises any Fed. R. Civ. P. 26(b)(2)(C) proportionality or burdensomeness objections (ECF No. 91, PageID.2550, ECF No. 99, PageID.2946-2947), such objections are **OVERRULED** (except as stated herein), because:

**(a)**   they were previously waived; Ford has never properly supported its "unduly burdensome" objection by affidavit or declaration, *e.g.*, by explaining why it would be unduly burdened, what it would take to retrieve the sales invoices at issue, or why these are not readily available in a computerized, electronically interconnected business environment (such as the one that presumably exists between Ford, its dealers, its

---

[3] (*See* ECF No. 79-2 [Mar. 12, 2020 Attorney Grove Decl.], ECF No. 96-1 [Apr. 28, 2020 Attorney Grove Decl.])

subsidiaries, and its affiliates) (*see* ECF No. 70-3, PageID.1852-1865 [November 6, 2019]);[4]

**(b)** the Court previously overruled Ford's objections to these requests (*see* ECF No. 76, PageID.2028 [January 31, 2020]); and/or,

**(c)** Ford failed to object to or seek reconsideration of the January 31, 2020 order compelling discovery (ECF No. 76), which the Court characterized on May 20, 2020 as concerning discovery requests for "all" sales documents (ECF No. 105, PageID.3036-3037). *See* Fed. R. Civ. P. 72(a) ("A party may not assign as error a defect in the order not timely objected to."), *Superior Prod. P'ship v. Gordon Auto Body Parts Co.*, 784 F.3d 311, 321 (6th Cir. 2015) ("PBSI waived its right to appeal this issue for failure to object to the magistrate judge's order in a timely fashion.").

Moreover, even the figures that Ford did provide show substantial sales in just the United States and Canada alone. (ECF No. 80, PageID.2314-2315.) If, as InterMotive claims, these vehicles each contained a misappropriated trade secret, damages or royalties could be substantial, particularly if worldwide sales of the allegedly offending vehicles are exponentially larger. Requiring production of the invoices to back up theses sales figures does not seem disproportionate to the needs

---

[4] A party objecting to a request for production of documents as unduly burdensome must submit affidavits or other evidence to substantiate its objections. *In re Heparin Prods. Liab. Litig.*, 273 F.R.D. 399, 410-411 (N.D. Ohio 2011); *Sallah v. Worldwide Clearing, LLC*, 855 F. Supp. 2d 1364, 1376 (S.D. Fla. 2012); *Convertino v. U.S. Dep't of Justice*, 565 F. Supp. 2d 10, 14 (D.D.C. 2008). *See also* Magistrate Judge Patti's "Discovery and Discovery Motions" Practice Guidelines, which are accessible at: *http://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=51*.

of this case. As InterMotive convincingly argued at the January 28, 2020 hearing on this subject:

> They should be able to know what their sales of these vehicles are. They sold "X" number of vehicles. It could be 80 or 100,000 of these vehicles so far with the Upfitter Interface Module on it. They have invoices for that. What did they sell them for? So that's what we're asking for, and we think that that's our burden [to prove].

(ECF No. 77, PageID.2076.) While Ford is apparently able to provide both number of vehicles sold and gross sales figures for at least North America through the North American Vehicle Information System (NAVIS) (*see* ECF No. 80, PageID.2314-2315), InterMotive is entitled to check the figures provided against actual sales invoices, *i.e.*, to test both the veracity and accuracy of these figures. Furthermore, Ford's argument that the issue of worldwide sales figures "never came up" before this juncture (ECF No. 105, PageID.73, 77) is not well-taken. The original discovery requests at issue defined "Ford," in pertinent part, as "Ford Motor Company and Ford Global Technologies, LLC and their subsidiaries, affiliates, sister corporations, divisions and predecessors, whether wholly or partially owned . . . ." (ECF No. 79-5, PageID.2284-2285, 2292-2293.) Several of these requests ask for information or documentation regarding "sales of vehicles that Ford sold . . ." or "sales of Ford vehicles . . . ." (ECF No. 79-5, PageID.2288, 2297-2298.) Worldwide sales information has been at issue from the start. Finally, even if, as Ford argues, "InterMotive seeks to apply a different standard to

6

Ford than InterMotive has followed throughout this litigation[,]" (ECF No. 91, PageID.2555-2556), the Court declines to engage in a comparison of the phrasing in Ford's and InterMotive's underlying discovery requests, the latter of which are not before the Court.

**(2) As to Interrogatory Nos. 10, 11, 12, and 13 (Sales of Ford Vehicles Sold with its UIM) (ECF No. 99, PageID.2947-2948)**, for which Ford provided second supplemental answers on March 2, 2020 (ECF No. 79-3), and considering that Ford has already produced two-page sales summaries from NAVIS (ECF No. 96, PageID.2809, 2813), the motion is **GRANTED IN PART**, according to the following observations and options. In the counterclaim, Ford is accused of breaching a confidentiality agreement by sharing or disseminating InterMotive's trade secret. (ECF No. 42, PageID.992-996 ¶¶ 44-62.) If the trade secret was shared with Ford's domestic or international subsidiaries or affiliates and used in vehicles sold in commerce, InterMotive would be entitled to know how many such vehicles contained the allegedly secret technology, as well as the sales figures generated thereby, in order to calculate its damages. Ford resists providing this information, claiming a lack of control or an inability to retrieve it from its foreign affiliates. However, the Court remains skeptical of the assertion that Ford – which annually reports worldwide sales achieved through its international subsidiaries and affiliates and which admits to owning 100% of Ford European Holdings,

7

L.L.C., which in turn is a 99.9995% shareholder in Ford-Werke GmbH (hereinafter "Ford-Werke," *i.e.,* Ford's German affiliate) – is somehow unable to demand and obtain information breaking down the total number of units containing UIM and sales figures for those units (in Germany, in Europe, and worldwide) with respect to any subsidiary for which they report sales. (*See* ECF No. 105, PageID.3043-3044 and ECF No. 92, PageID.2667, ¶¶ 7 & 8.)[5] As Ford's own counsel explained the Court, "Ford Motor Company is, of course, a global organization. So when Ford reports about its operations, it does so on a global basis. And it does operate through subsidiaries and joint ventures and so on. It does report that information in one document, in its annual report." (ECF No. 105, PageID.3044.) And when Ford's counsel was asked by the Court:

---

[5] According to Ford's Counsel and Assistant Secretary, "[a]dditionally, Ford and two of its wholly-owned subsidiaries (Ford International Capital LLC and Ford Germany Holding LLC) each own a small number of preference shares that together amount to approximately 0.0003% of Ford-Werke's capital stock. The preference shares held by Ford, Ford International Capital LLC and Ford Germany Holding LLC provide each company with 10% voting power in the shareholder's meeting of Ford-Werke." (ECF No. 92, PageID.2667, ¶ 9.) Ford's ownership of Ford-Werke was summed up at the hearing:

> THE COURT: Okay. So what we have, a situation where Ford's wholly-owned subsidiary very, very, very, very nearly wholly owns Ford Werke GmbH, correct?
>
> MR.CHERRY: Yes. Correct.

(ECF No. 105, PageID.3043.)

8

> If the CEO of Ford Motor Company turns to the CEO of Ford Werke, its sub-subsidiary, and says "Great that you gave me your sales information for me to include in my public filings and offerings, but I want it broken down because I want to know which of those vehicles has the UIM in it," you're not telling me that Ford Werke CEO would say "No," would you?

Ford's counsel responded: "No.  I am not purporting to tell you that."  (ECF No. 105, PageID.3045.)  Yet Ford apparently does not wish to ask for or provide this information here.

Accordingly, no later than **Monday, July 6, 2020**, Ford **SHALL** inform the Court whether it will voluntarily report worldwide sales (number of vehicles and monetary figures, as previously ordered) relating to the total number of units containing UIM worldwide for any subsidiary for which it reports sales in its SEC filings and to shareholders.  *If Ford will voluntarily supply such information*, then it should supplement its answer no later than **Monday, July 27, 2020**.  *If Ford will not do so*, then, no later than **Thursday, August 27, 2020**, InterMotive will be permitted to take Fed. R. Civ. P. 30(b)(6) deposition(s) related to the topic of Ford's relationship to its foreign (*i.e.*, non-USA) affiliates and subsidiaries, including but not limited to designated witnesses who can answer the several questions that Ford's counsel was unable to answer in response to questioning from the bench on this topic (*see* ECF No. 105, PageID.3029-3057) ***and*** one

9

deposition of a Ford executive-level official with responsibility for contributing the worldwide sales figures to Ford Motor Company's Annual Report and SEC filings.

Ford also resists providing the invoices which would back up its worldwide sales figures for vehicles containing the UIM technology, claiming that it does not have control over these documents. For the purposes of Rule 34, Sixth Circuit jurisprudence holds that documents are "deemed to be within the 'possession, custody or control' if the party has *actual* possession, custody or control, or has the legal right to obtain the documents on demand." *In re Bankers Trust Co.*, 61 F.3d 465, 469 (6th Cir. 1995) (emphasis in original). As previous cases in our District have found, "[a] party has control over materials in the possession of a third party by virtue of its ability to secure the consent that was necessary to obtain a copy of these materials." *Flagg v. City of Detroit,* 252 F.R.D. 342, 355 (E.D. Mich. 2008). "[E]xamples of circumstances giving rise to control [include]: contractual provisions granting legal access; documents in the possession of a party's agent; *documents in possession of overseas affiliate* [sic] . . ." *J.S.T. Corp. v. Robert Bosch LLC*, No. 15-13842, 2019 U.S. Dist. LEXIS 92394, at *22 (E.D. Mich. June 3, 2019) (citing *Flagg,* 252 F.R.D. at 353) (emphasis added). Indeed, "[t]he fact that the documents are situated in a foreign country does not bar their discovery." *Cooper Indus. v. British Aerospace*, 102 F.R.D. 918, 920 (S.D.N.Y. 1984) (*citing*

*Marc Rich & Co. v. United States,* 707 F.2d 663, 667 (2d Cir.1983) (grand jury investigation), *cert. denied,* 463 U.S. 1215 (1983)).[6]

Ford also argues that German laws protecting individual privacy rights in data disbursement prevent European records from being obtained, *even though this Court previously held that customer information need not be provided*. (ECF No. 76, PageID.2029.) In its reply, InterMotive directs the Court's attention to *Philips v. Ford Motor Co.,* 2016 WL 8505624 (N.D. Cal. Sept. 10, 2016), to undercut Ford's assertion that it lacks control over records kept by Ford-Werke. (ECF No. 96, PageID.2812.) In *Philips* − where the court referred to Ford-Werke as "Ford Germany" − "Ford identified ten custodians located in Germany who possessed documents related to the Ford Fusion and Ford Focus and produced redacted documents in the custodian's possession, collected from Ford Germany, in Germany." *Philips*, 2016 WL 8505624 at *1. As the *Philips* court noted with respect to the issue of whether Ford "controlled" the documents at Ford-Werke:

> Ford represented to the District Court Judge Lucy Koh in a joint case management statement that it had "begun collection efforts related to the Focus vehicles included in the subject class" and that "the lead

---

[6] Although the Undersigned presumes there are no such issues here, the Court parenthetically noted in *Flagg* that, if a "party 'could so easily evade discovery' by 'destroying its own copies and relying on ... copies maintained by its affiliate abroad,' then 'every United States company would have a foreign affiliate for storing sensitive documents[.]'" *Id.*, 252 F.R.D. at 353 (*citing Cooper Industries*, 102 F.R.D. at 920).

11

> steering engineers are located in Europe. Accordingly, Ford also expects that it will locate responsive Focus-related documents in Europe."

*Philips*, 2016 WL 8505624, at *2. Thus, "Ford would not be able to represent to Judge Koh that it had the power to preserve this set of documents if they were out of Ford's control." *Id.* Accordingly, the court was satisfied that "Ford has demonstrated control over its ten selected custodians [located in Germany] and the disputed body of documents that they possess." *Id*. It therefore concluded, even while taking judicial notice of the German privacy laws, that "Ford has shown control over the documents such that it can be ordered to produce them again, this time without redactions." *Id.* It is hard to imagine that Ford could make such representations to one federal court, leading to the conclusion that it has control over engineering documents at Ford-Werke, while telling this Court that it somehow does not have control over retrieval of either sales information or the invoices to back up that sales information on sales which it actually includes in its Annual Report. Ford now has the option to either produce voluntarily, as it apparently did or offered to do in *Philips*, or subject itself to a significantly more robust level of discovery on this issue. Although the Court will not at this time require production of all invoices of sales outside of North America until a more definitive record is made as to Ford's "possession, custody or control" of these documents under Fed. R. Civ. P. 34(a)(1), the Court will likewise place the onus on

12

Ford to either voluntarily produce the documentation (*sans* identifying information regarding customers, if need be) in support of its forthcoming, third supplemental answers to Interrogatory Nos. 10-13 or subject itself to the additional discovery outlined above, adopting the same timetable set forth for its forthcoming, second supplemental responses to Document Request Nos. 24, 30, 31, 32.[7]

**(3) The request for Ford to pay InterMotive's attorney fees** in enforcing the Court's order, including its fees in bringing this motion (ECF No. 99, PageID.2948) is **DENIED**, because the international information question raised a substantial issue of law as to what the Court can and cannot compel. Also, there was a substantial question of fact as to the documents / information over which Plaintiffs (Ford Motor Company and Ford Global Technologies, L.L.C.) have control, given the Court's January 28, 2020 statement that Ford can "only produce what exists." (ECF No. 77, PageID.2083.)

**(4) The request for the schedule to be extended** at least 30 days from the date Ford produces the already-ordered discovery to give time for InterMotive to

---

[7] Incidentally, the Court is not convinced that the German privacy law even applies. *See Philips*, 2016 WL 8505624, at *4 ("Confronting the same German data-protection statute at issue here, the *BrightEdge* court found that the BDSG does not prohibit the disclosure of protected information because Part 1 § 4(c) allows for production of personal information for 'establishment, exercise or defense of legal claims.'") (quoting *BrightEdge Techs., Inc. v. Searchmetrics, GmbH.*, No. 14-CV-01009-WHO (MEJ), 2014 WL 3965062, at *2-3 (N.D. Cal. Aug. 13, 2014).

13

take its deposition of Ford (ECF No. 99, PageID.2948) is **DEEMED RESOLVED**.

**(5) The request to enter a schedule as to the remaining dates in the case**, including 90 days for expert discovery, trial, a deadline for a joint final pretrial order, a deadline for motions *in limine*, and a date for the final pre-trial conference (ECF No. 99, PageID.2949), is **DEEMED RESOLVED**, although any such agreed upon dates should be submitted to Judge Berg through CM/ECF Utilities as a proposed stipulated order, because it would amount to an amendment of one or more dates in his October 24, 2019 amended scheduling order (ECF No. 67).

**(6) The request for all other sanctions** necessary and appropriate to enforce the Court's authority (ECF No. 99, PageID.2949) is **GRANTED** in the form of the discovery directed above.

**(7) The request to strike InterMotive's motion (ECF No. 79)** for failure to comply with E.D. Mich. LR 7.1 and this Court's Scheduling order (ECF No. 67, PageID.1809, 1816) is **DENIED**. (ECF No. 99, PageID.2949-2950.)

## II. ORDER

Accordingly, InterMotive's motion for sanctions (ECF No. 79) is **DEEMED RESOLVED IN PART**, **GRANTED IN PART** and **DENIED IN PART**. The attention of the parties is drawn to Fed. R. Civ. P. 72(a), which provides a period of

14

fourteen (14) days after being served with a copy of this order within which to file objections for consideration by the district judge under 28 U.S.C. § 636(b)(1).

**IT IS SO ORDERED.**

Dated: June 17, 2020

Anthony P. Patti
UNITED STATES MAGISTRATE JUDGE