UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY, ET AL.**, <br><br> Plaintiff, <br><br> v. <br><br> **INTERMOTIVE, INC. ET AL.**, <br><br> Defendant. | 4:17-CV-11584 <br><br> **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' SECOND MOTION FOR SANCTIONS (ECF NO. 108)** <br><br> **ORDER DENYING PLAINTIFFS' MOTION TO STRIKE (ECF NO. 113)** <br><br> **SCHEDULING ORDER** |

Sanctions motions are rare for this Court, and rarer still are motions seeking sanctions for the failure to comply with an order imposing sanctions. But that is what the delay tactics of Plaintiff Ford Motor Company ("Ford") have led to: before the Court is Defendant InterMotive, Inc.'s ("InterMotive's") second motion for sanctions, ECF No. 108, against Ford for failing to comply with previous sanctions imposed by the Magistrate Judge, ECF No. 106, which themselves were levied due to Ford's previous violation of that judge's order to compel discovery, ECF No. 76.

The background dispute is that InterMotive has a counterclaim against Ford alleging that the automaker installed devices in its trucks

1

that were made using InterMotive's misappropriated trade secrets and in violation of a non-disclosure agreement. During the discovery process, InterMotive has been trying to get Ford to produce records showing its sales and profit information for those trucks containing the allegedly stolen trade secrets. The reason InterMotive wants this information is that its theory of damages is based on disgorgement of profits and unjust enrichment: it wants to argue to the jury that whatever Ford earned from truck sales containing the allegedly stolen trade secrets—that amount should be awarded to InterMotive if it proves its case that Ford is liable. But Ford continually failed to fully produce these records. Now InterMotive has moved for a second imposition of sanctions. Ford responds that its second non-compliance was essentially inadvertent, and also asks the Court to strike portions of Defendant's reply for allegedly including new allegations not properly before the Court.

The Court held a hearing on the pending motions on February 19, 2021. For the reasons explained below, the Court will **GRANT IN PART** and **DENY IN PART** InterMotive's second motion for sanctions and will **DENY** Ford's motion to strike.

## I.   Background

"Upfit applications" are products installed in vehicles such as customized service trucks to equip them to be used for public safety, emergency response, snow-removal, utility, or other specialized

2

functions. ECF No. 26, PageID.292; ECF No. 37, PageID.84. InterMotive had developed an upfit application which was a programmable data access system called "the UPFITTER INTERFACE MODULE" ("UIM") *Id*.

Sometime in 2011, InterMotive approached Ford, having worked on projects together in the past, and proposed working jointly to develop an upfit application for Ford. ECF No. 36, PageID.823-26. They met and discussed the feasibility of such a product and then signed a non-disclosure agreement. ECF No. 26-1; ECF No. 37, PageID.841. In the course of this exploratory phase, InterMotive shared some of its UIM technology with Ford. ECF No. 36, PageID.823. According to Ford, the project was not feasible and so it decided to not move forward. ECF No. 37, PageID.841. But after Ford's decision, InterMotive alleges that Ford began to sell a competing product under the name "Upfitter Interface Module." ECF No. 36, PageID.825.

Shortly thereafter, Ford filed a lawsuit against InterMotive, alleging that InterMotive had been displaying Ford's trademark on its products, website, and promotional materials. ECF No. 37, PageID.842. InterMotive claims that Ford's suit was in retaliation for its having complained about Ford's use of the UIM technology that it had shared with Ford. Then InterMotive filed its own counterclaim, alleging that Ford infringed its registered trademark, engaged in unfair competition,

violated the Michigan trade secrets statute, and breached its contract. ECF No. 36, PageID.833. On June 15, 2018, the parties filed a joint discovery plan pursuant to Federal Rules of Civil Procedure 26(f). ECF No. 37. The plan originally called for the completion of fact discovery on March 29, 2019 and expert discovery on June 28, 2019. *Id*. at PageID.844-45.

After the Court ruled on cross-motions for summary judgment, ECF No. 65, signaling that the case would go to trial, it modified the scheduling order on October 24, 2019 to afford the parties an additional four months to complete discovery. ECF No. 67. The period for fact discovery was extended to December 9, 2019 and for expert discovery to February 21, 2020. *Id*. at PageID.1808.

As the period for fact discovery came to an end, InterMotive filed a motion to compel damages discovery. ECF No. 70.[1] Specifically, InterMotive sought to compel the production of information showing Ford's sales and profits of vehicles containing the UIM device, along with several other kinds of records and information. Intermotive objected that Ford's responses to Interrogatories 11, 12, and 13, Exhibit A, ECF No.

---

[1] The Court referred the motion to compel, as well as the subsequent motions for sanctions, to Magistrate Judge Patti for resolution. *See* ECF Nos. 70, 79, and 87.

70-2,[2] Document Requests 24, 30, 31, and 32, Exhibit B, ECF No. 70-3,[3] and deposition topics 2 and 8, Exhibit C, ECF No. 70-4[4] were inadequate. InterMotive also sought profit information that Ford made from the sale of vehicles with the violative product in order to understand the full extent of Ford's conduct. ECF No. 70, PageID.1830. The profit information was sought in Document Requests 33, 34, and 37, Exhibit B, ECF No. 70-3, PageID.1865-79. In addition, InterMotive requested the production of evidence and witness testimony that Ford intended to use at trial. ECF No. 70, PageID.1832.

Ford opposed the motion to compel by arguing that it did not need to produce the information because doing so would compromise its trade secrets. ECF No. 71, PageID.1955-57. Instead, because the UIM is the product at issue in the case, Ford argued that the proper scope of

---

[2] These Interrogatories essentially seek information as the sales of vehicles that Ford sold in connection with or together with "any Upfitter Interface Modules," as well as sales to any customers who also bought Ford's vehicles equipped with its UIM. *See* ECF No. 70-2, PageID.1841-47.

[3] Document Requests 24, 30, 31 and 32 ask in different ways for documents relating to "the sales of Ford vehicles for each year since 2016, where Ford sold the vehicles together with or in connection with Ford's Upfitter Interface Modules," as well as documents relating to customers who purchased the UIM. *See* ECF No. 70-3, PageID.1858-59.

[4] Deposition topics 2 and 8 related to sales and sales prices of Ford vehicles sold "together with, in connection with, along with, or because of its," UIM, as well as customer information involving the same. *See* ECF No. 70-4, PageID.1886.

discovery should not extend to sales and profit information relating to the entire vehicle. *Id.* at PageID.1961. In considering disclosure of materials intended for trial, Ford argued that it was premature to disclose them because its obligations to do so were set by the Court and Local Rule 16.2. *Id.* at PageID.1963.

The Court referred InterMotive's motion to compel to Magistrate Judge Anthony Patti and he heard argument on it on January 28, 2020. *See* ECF No. 77. Regarding InterMotive's request that Ford disclose its trial witnesses, *Id.* at PageID.2044-46, Ford's counsel expressed concern that disclosures made under its Rule 26(e) duty to supplement would "lock Ford into the position that it cannot call a new witness." *Id.* at PageID.2046. Nevertheless, Magistrate Judge Patti directed Ford to produce the names of witnesses it then anticipated using at trial, without restricting Ford from making supplementary disclosures or modifying its list of witnesses and exhibits in the future. Accordingly, so that InterMotive could proceed in discovery in an orderly fashion and would not be subjected to "trial by ambush," the Court ordered Ford to produce responses to Interrogatories 14.[5] ECF No. 77, PageID.2048. Next, Magistrate Judge Patti ordered that Ford produce information relating to its sales as requested by InterMotive. ECF No. 77, PageID.2081. During the hearing, the Court indicated that the request for Ford to

---

[5] Interrogatory No. 14 states, "Identify each and every witness Ford intends to call at trial." ECF No. 70-5, PageID.1889.

produce information relating to profits would be denied without prejudice because InterMotive conceded that it did not need such information at that stage of the litigation but that, if Ford intended to use profit information at trial, "[Ford] will be subject to its obligations to supplement." *Id*. at PageID.2081.

In a subsequent written order addressing InterMotive's motion to compel, Magistrate Judge Patti ruled as follows: Ford was required to produce complete sales information of Ford vehicles with the UIM technology, ECF No. 76, PageID.2028, as well as "discovery about evidence and witness testimony Ford plans to use at trial." *Id*. at PageID.2029. And as to requests relating to Ford's profit information, the Court denied them without prejudice (Deposition Topic 4 and Document Requests 33, 34, and 37), but explained that "if Ford intends to use this information in its proofs at trial, or if any of its witnesses will rely upon it in support of their testimony or opinions, *it must be produced*" pursuant to "Interrogatory No. 14 and/or Document Request 38." *Id*. at PageID.2029 (emphasis added). All of this discovery information, including whatever profit calculations Ford might wish to present at trial, were ordered to be produced by February 28, 2020, and InterMotive was granted until March 30, 2020 to conduct follow-up depositions. *Id*. at PageID.2030.

Despite having been ordered to produce all "commercial documents evidencing sales" for vehicles with the UIM technology, Ford produced a "two-page summary" with no underlying documents such as invoices or sales contracts. *See* ECF No. 79, Page.ID 2191-96. Intermotive claimed that Ford's production consisted of "vague, confusing and incomplete answers to the interrogatories." ECF No. 79, PageID.2199. Consequently, InterMotive moved to sanction Ford for not following this Court's order. See ECF No. 79. InterMotive argued that instead of producing information detailing "invoices and other business records showing sales," *Id*. at PageID.2196, Ford produced only "2 pages of unverifiable *ad hoc* summaries" to establish its worldwide sales of tens of thousands of vehicles amounting to billions of dollars in revenue. *Id*. at PageID.2191. (italics in original). Ford also did not produce any sales information regarding vehicles sold outside the United States. *Id*. Moreover, in addition to deficient information, Ford produced business records "that are difficult for non-Ford employees to interpret." *Id*. at PageID.2198. InterMotive stated that its expert could not even "prepare a damages report based on incomplete sales, and unverifiable summaries." *Id*. InterMotive attempted to resolve the dispute with Ford prior to moving for sanctions, but was not successful. *Id*. at PageID.2192.

As a result, InterMotive requested, among other things, that Ford should be sanctioned by requiring the immediate production of

documents and answers to interrogatories relating to Ford's sales information, extensions to discovery in order to respond to such production, and attorneys' fees in enforcing the motion. *Id*. at PageID.2202.

Not to be outdone, Ford filed its own cross-motion for sanctions against InterMotive on April 3, 2020. ECF No. 87. Ford argued that InterMotive withheld information that would establish that InterMotive "published its alleged trade secret on the Internet potentially before [InterMotive] disclosed its purported trade secret to Ford." *Id*. at PageID.2432. Specifically, Ford argued that InterMotive's conduct in supplementing the answer of its president, Gregory Schafer, after the close of discovery amounted to sanctionable conduct. ECF No. 87, PageID.2449. Ford reasoned that it was prejudiced by this conduct because it was not afforded the opportunity to explore the supplemented disclosures during the discovery period.

Once again, on May 20, 2020, Magistrate Judge Patti held a hearing to resolve the parties' discovery disputes. *See* ECF No. 105. The Court dispensed with Ford's motion for sanctions, finding that although Ford was entitled to explore Schafer's supplementary disclosures, Ford wasted its opportunity to do so during the discovery period. *Id*. at PageID.3016. Magistrate Judge Patti admonished Ford, stating that "Ford could have been more diligent in discovery" and that "Ford could have explored more

9

robustly during the discovery period." *Id*. at PageID.3016-17. For instance, Ford "didn't even take Mr. Schafer's deposition until discovery was over." *Id*. In addition, Ford sought sanctions that would re-open discovery and effectively seek the dismissal of InterMotive's claims. But the Court found that Ford's wasted opportunity was of its own making. While denying most of the sanctions relief sought by Ford, the Court granted Ford's motion in part by requiring InterMotive to produce invoices related to Schafer's supplementary disclosures by June 22, 2020 and allowing Ford to re-depose Schafer by July 22, 2020. *Id*. at PageID.3023; *see also* Opinion and Order Granting in Part and Denying in Part Ford's Motion for Sanctions. ECF No. 104, PageID.2973.

Turning to InterMotive's motion for sanctions, much the hearing was devoted to discussing Ford's counsel's understanding of the scope of the order. *Id*. at PageID.3038. Ford argued that InterMotive did not ask for foreign sales in its motion to compel. And, even if InterMotive interpreted its request to include foreign sales, Ford could not produce vehicle sales outside the United States in part because Ford said it lacked control of sales information under the possession of foreign subsidiaries. *Id*. at PageID.3058. And in the case of Ford's German affiliate, Germany's privacy laws prevented Ford from disclosing sales information that would reveal private customer data. *Id*. at PageID.3043-44. Magistrate Judge Patti proceeded to question Ford's counsel as to whether, as the parent

10

of its foreign subsidiaries, Ford could demand sales information from its foreign subsidiaries as part of its various financial reporting obligations. *Id.* at PageID.3049. Ford's counsel was unable to provide a clear answer. *See id.* at PageID.3050.

In his written order, Magistrate Judge Patti granted in part and denied in part InterMotive's motion for sanctions. *See* ECF No. 106. As to InterMotive's requests for documents relating to Ford's worldwide vehicle sales with its UIM, the Court determined that although Ford had produced some of its sales information, "InterMotive is entitled to check the figures provided against actual sales figures invoices, *i.e.*, to test both the veracity and accuracy of these figures." *Id.* at PageID.3067. (italics in original). As such, no later than July 15, 2020, Ford was ordered to:

> (1) supplement its written response, under oath, to confirm that the documents already produced by Ford…are complete for North America…or update it to include such information;
>
> (2) supplement its document production to include sales invoices for all North American sales; and,
>
> (3) supplement its document production to include sales for invoices for non-North American jurisdictions, but only if Ford Motor company and/or Ford Global Technologies, L.L.C., has possession, custody or control over such documents (or a willingness to otherwise produce them) in accordance with the instructions provided below.

*Id.* at PageID.3065 (bold in original).

In so ruling, the Court rejected Ford's objections that such requests were unduly burdensome or disproportionate because Ford generally waived such objections when it failed to explain "why it would be unduly burdened." *Id*. at PageID.3065-67. At bottom, InterMotive was entitled to the production of such information because "[w]orldwide sales information has been at issue from the start." *Id*. at PageID.3067.

The Court similarly granted InterMotive's request for answers to interrogatories detailing worldwide sales of Ford's vehicles equipped with its UIM. ECF No. 106, PageID.3068. Magistrate Judge Patti found that:

> "[I]f the trade secret was shared with Ford's domestic or international subsidiaries or affiliates and used in vehicles sold in commerce, InterMotive would be entitled to know how many such vehicles contained the allegedly secret technology, as well as the sales figures generated thereby, in order to calculate its damages."

*Id*. at PageID.3068.

The Court also rejected Ford's argument that it was unable to obtain information from its foreign subsidiaries. *Id*. at PageID.3068-69. That is because Ford "annually reports worldwide sales achieved through its international subsidiaries and affiliates and which admits to owning 100% of Ford European Holdings, L.L.C., which in turn is a 99.9995% shareholder" in Ford's German affiliate. *Id*. Because the Court concluded that Ford had the ability to produce invoices of its foreign sales, the Court ordered Ford:

[N]o later than Monday, July 6, 2020, Ford **SHALL** inform the Court whether it will voluntarily report worldwide sales (number of vehicles and monetary figures, as previously ordered) relating to the total number of units containing UIM worldwide for any subsidiary for which it reports sales in its SEC filings and to shareholders. *If Ford will voluntarily supply such information*, then it should supplement its answer no later than Monday, July 27, 2020. *If Ford will not do so*, then, no later than Thursday, August 27, 2020, InterMotive will be permitted to take Fed. R. Civ. P. 30(b)(6) deposition(s) related to the topic of Ford's relationship to its foreign…affiliates and subsidiaries…***and*** one deposition of a Ford executive-level official with responsibility for contributing the worldwide sales figures to Ford Motor Company's Annual Report and SEC filings.

*Id*. at PageID.3070-71. (emphasis in original).

In essence, the Court placed the burden on Ford "to either voluntarily produce the documentation (*sans* identifying information regarding customers, if need be) in support of its forthcoming, third supplemental answers…," or subject itself to more discovery outlined above. *Id*. at PageID.3074. (italics in original). The Court then denied the request for Ford to pay InterMotive's attorneys' fees because the motion for sanctions raised a substantial question of fact as to which documents Ford has control over.

Finally, the Court addressed the request to amend the scheduling order, "including 90 days for expert discovery, trial, a deadline for a joint final pretrial order, a deadline for motions in limine, and a date for the final pre-trial conference." *Id*. at PageID.3075. Magistrate Judge Patti

13

directed the parties to submit any agreed upon dates "to Judge Berg . . . as a proposed stipulated order, because it would amount to an amendment of one or more of dates" in the already-amended scheduling order. *Id*. at PageID.3075 (citing ECF No. 67). Magistrate Judge Patti then held InterMotive's motion for sanctions resolved in part, granted in part, and denied in part. *Id*.

After the Court issued its order, ECF No. 106, Ford offered to produce InterMotive's requested information in "spreadsheets in place of the invoices." ECF No. 106, PageID.3110. In response, the parties worked out an agreement as to an acceptable format for the production of the sales records. By the Magistrate Judge's deadline of July 15, 2020, according to InterMotive, "Ford produced one actual invoice and invoice information in spreadsheet form for around 4200 vehicles." ("the July Production"). ECF No. 108, PageID.3084. InterMotive further alleges that Ford's disclosures were incomprehensible, incomplete, and insufficient. *Id*. at PageID.3085. InterMotive's counsel attempted to reach Ford's counsel about the discrepancy, but Ford's counsel was on a family vacation and did not respond for about eight days. ECF No. 110, PageID.3111. After some further disclosures and additional back and forth, Ford produced further information on August 14, 2020 (the "August production"). ECF No. 111-1, PageID.3187. InterMotive alleges that this too was insufficient and incomprehensible, and too late. ECF

No. 111, PageID.3180. InterMotive's expert, Mark Robinson, attests in a declaration that he is unable to make sense of the Ford's disclosures for the purpose of assessing the issue of damages. ECF No. 108-1.

As a result of these insufficiencies, on August 7, 2020 InterMotive moved for a second time for sanctions against Ford for its dilatory conduct and further failure to cooperate in discovery. ECF No. 108. Ford took the position that the problems were merely the result of innocent mistakes and oversights. ECF No. 110. In addition, Ford moves to strike portions of InterMotive's reply because it alleges that the reply contains new allegations inappropriate for the Court to consider. ECF No. 113.

The Court initially held a hearing on the second motion for sanctions on October 9, 2020. ECF No. 118. At that hearing, the parties expressed interest in mediation or facilitation, so the Court ordered them to facilitation. After being notified that the facilitation was unsuccessful, the Court set a hearing on the second motion for sanctions which was held on February 19, 2021. ECF No. 123.

At the hearing, InterMotive clarified its request for sanctions. Although InterMotive's briefings focused on the proposed sanction of asking the Court to find that InterMotive's damages should be taken as established in the amount of $1.5-1.6 billion—the figure representing Ford's total sales revenues from the offending trucks—at the hearing InterMotive requested instead that Ford should be prevented from

"introducing any evidence that they haven't already produced." *Id*. at PageID.3311.[6] This would exclude expert testimony because Ford has not yet identified any experts, and also would prohibit Ford from presenting evidence "about costs of sales, setoffs, deductions and so forth." *Id*. InterMotive reasoned that during the discovery period it had requested this information and the Court had ordered its production. Magistrate Judge Patti also had already put Ford on notice that it was required to disclose all materials it intended to use at trial. Despite having many opportunities to do so, Ford failed to produce such evidence. *Id*. During the hearing on the motion, the Court also pointed out that Ford would not be permitted to present evidence at trial in any event if it had not disclosed that evidence during discovery, but InterMotive nonetheless stated that it merely desired for the Court to recognize and order the exclusion of such evidence.[7] *Id*. at PageID.3313-14. The Court concluded the February 19, 2021 hearing by taking the pending motions under advisement.

---

[6] InterMotive moved the Court to impose sanctions by taking as established that "if InterMotive proves liability at trial, InterMotive's damages for breach of contract and misappropriation of trade secrets are at least Ford's total worldwide sales of vehicles equipped with an UIM, where Ford is foreclosed from introducing any evidence to reduce that amount." ECF No. 108, PageID.3091.

[7] Defendant also reaffirmed its request that the Court impose sanctions by ordering Plaintiff to reimburse Defendant's costs in attorneys' fees for having to enforce the Court's order as of July 15, 2020. *Id*. at PageID.3310.

## II.   Legal Standard

A party may move for sanctions for the opposing party's failure to comply with a discovery order. Fed. R. Civ. P. 37(b)(2)(A). In turn, courts may issue a sanction by "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims[.]" Fed. R. Civ. P. 37(b)(2)(A)(i). Courts may also prohibit the "disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." *Id*. at 37(b)(2)(A)(ii).

In the Sixth Circuit, courts consider four factors when deciding whether to impose Rule 37 sanctions. *Reg'l Refuse Sys., Inc. v. Inland Reclamation Co.*, 842 F.2d 150 (6th Cir. 1988) [hereinafter, the "*Regional Refuse* test"]. First, whether "the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Id*. Second, "whether the adversary was prejudiced by the party's failure to cooperate in discovery." *Id*. Third, "whether the party was warned that failure to cooperate could lead to the sanction." *Id*. Finally, and not relevant here because dismissal is not at issue, "whether less drastic sanctions were first imposed or considered" before issuing a sanction by dismissing the case. *Id*.

In *Freeland v. Amigo*, the Sixth Circuit applied the *Regional Refuse* test. 103 F.3d 1271, 1277 (6th Cir. 1997). There, the court determined whether the district court abused its discretion in issuing sanctions by

17

precluding the testimony of plaintiffs' expert witnesses and exhibits. *Id.* at 1274. Plaintiffs failed to schedule depositions with the experts and provide a timely final pretrial statement by the discovery cutoff date. *Id.* Because plaintiffs would not be able to present a case without expert testimony, the district court granted summary judgment in favor of the defendant. *Id.* at 1275.

On appeal, the Sixth Circuit reversed, determining that the district court abused its discretion by "imposing the most drastic sanction possible upon plaintiffs, who were blameless, and as result, lost their day in court." *Id.* at 1277. As to the first factor—willfulness, bad faith, or fault, the court weighed the dismissal of plaintiffs' case against the culpability of the conduct of plaintiffs' counsel. The court concluded that even though plaintiff's counsel's behavior suggested a lack of good faith on their part, it was unfair to deprive the plaintiffs of their day in court for the negligence of their counsel. The court gave the second factor— whether the delay prejudiced the defendants, less weight because defendant's counsel failed to notify the district court of a potential Rule 37 problem before the cutoff date and did not confer in good faith with plaintiffs beforehand. The court also found that defendant's counsel also engaged in dilatory conduct. *Id.* at 1278. Third, regarding notice, the district court's previous order "was not firm and definite, but allowed the attorneys to violate the discovery cutoff by agreement." *Id.* at 1280.

18

Routine language in a standard order warning counsel of a possible type of sanction is not always enough notice to warrant extreme sanctions like dismissal. *Id*. at 1279. Finally, as to the fourth factor, the record showed that the district court failed to consider less drastic sanctions. As a result, the court in *Amigo* reversed the district court's dismissal. *Id*. at 1281.

## III.    Discussion

InterMotive moves to sanction Ford for failing to comply with the Court's previous orders. ECF No. 108, PageID.3084 (citing ECF Nos. 76 and 106). InterMotive's allegations fall into three categories. First, that Ford's production of requested discovery materials is neither complete nor understandable. *Id*. at 3085. Second, that Ford's production is not what the Court ordered. ECF No. 111, PageID.3177-78. Finally, that Ford's conduct in the discovery stage has made it challenging and expensive for InterMotive to litigate the case. *Id*. at PageID.3177.

As sanction for the above conduct, InterMotive's motion the Court for an order that would:

> (1) award InterMotive attorneys' fees for enforcing the Court's order;
>
> (2) take as established that InterMotive's "damages equal at least the worldwide sales of Ford vehicles that are equipped with" the violative products; and
>
> (3) foreclose Ford, provided that InterMotive proves liability at trial, from introducing any evidence reducing InterMotive's damages as established in subsection (2) above.

19

*Id*. at PageID.3085-86. For its part, Ford responds that the allegations were the result of "innocent oversight" and has "offered to pay InterMotive's attorney's fees incurred in bringing the motion." ECF No. 110, PageID.3109.

### a. Ford's motion to strike portions of InterMotive's reply, or in the alternative, grant leave to file a sur-reply.

Before addressing the merits of InterMotive's motion for sanctions, the Court must address Ford's motion that seeks in the alternative either to strike portions of InterMotive's reply or to be given leave to file a sur-reply. Ford seeks to strike InterMotive's reply because it relies on the declaration of Mark Robinson, an expert witness that InterMotive intends to use to interpret Ford's sales data. *See* ECF No. 113. Ford argues that Robinson's declaration "alleges five *new* alleged deficiencies in Ford's production." *Id*. at PageID.3201 (italics in original). Alternatively, Ford argues that should the Court rely on Robinson's Second Declaration, Ford should be allowed to file a sur-reply to respond to the new allegations. In support of its motion, Ford cites the proposition "that new arguments and evidence matter raised for the first time in a reply must not be considered." *Id*. (citing ECF No. 111-1).

Specifically, Ford argues that the following allegations in Robinson's Second Declaration should be stricken: (1) that Ford redacted vehicle identification numbers from its August production; (2) that Ford

20

omitted a spreadsheet from its August production; (3) that Ford is concealing sales outside the United States; (4) that data included in the July production is not included in the August production; and (5) that the August production includes data regarding vehicle models that were not requested by InterMotive nor ordered by the Court.

The Court will deny both the motion to strike and for leave to file a sur-reply. Robinson's declaration is a response to Ford's argument that its discovery production is complete, and that InterMotive has received the materials it requested. ECF No. 110, PageID.3116-17. As such, Robinson's second declaration does not raise new allegations. Rather, the allegations support InterMotive's original argument that the Court should impose sanctions because Ford's discovery production was incomplete and inaccessible. *See* ECF No. 111-1. There is no ground to strike and no need for a sur-reply.

### b. Ford's conduct shows that the failure to cooperate is the result of willfulness, bad faith, or fault.

Turning to the main issue, the Court will review the record to assess whether Rule 37 sanctions against Ford are appropriate. The first factor under *Regional Refuse* is "whether the party's failure to cooperate in discovery is due to willfulness, bad faith, or fault." *Amigo*, 103 F.3d at 1277. Here, InterMotive submits that Ford's conduct is the result of disrespect of the Court's orders. ECF No. 108, PageID.3084 (citing ECF Nos. 76 and 106). Furthermore, InterMotive accuses Ford of "stalling and

delaying, and otherwise not complying with the Court's clear order" for the purpose of wearing down InterMotive's ability to continue to litigate this case. *Id*. at PageID.3088. As evidence that Ford is not disputing discovery materials in good faith, InterMotive cites to how Ford "fought all efforts to discover its customer names," only to "just voluntarily disclose them" later in the invoice material. ECF No. 111, PageID.3178. In the past fifteen months before filing the second motion for sanctions, ECF No. 108, InterMotive had to file a motion to compel damages discovery, ECF No. 70, a previous motion for sanctions, ECF No. 79, and generally persist in obtaining scheduling orders and other required discovery production from Ford. ECF No. 108, PageID.3089. Taking these actions cumulatively, InterMotive argues that Ford's conduct is the product of willfulness, bad faith, or fault because its objective is to delay and obstruct the proceedings.

Ford responds that the omission and delay in the July production was the result of an innocent oversight. ECF No. 110, PageID.3109. Ford states the delay in correspondence after InterMotive pointed out the incompleteness of the production was attributed to the fact that Ford's counsel was on a family vacation and so he was unable to provide an immediate response. *Id*. at PageID.3111. Ford's counsel contends that once he became apprised of the omissions, he had taken prompt measures to correct them. Although InterMotive alleges that the corrections were

still inadequate because the data was illegible due to the way it was coded in a spreadsheet, Ford responds that this discrepancy was unintentional and the result of the complicated nature having to compile and produce vast amounts of invoice data. *Id.* at PageID.3113-14. For its part, Ford has apologized for the allegedly unintentional omission and offered to pay InterMotive's expenses in bringing this motion even though it maintains it was justified in the delay. *Id.* at PageID.3124.

In reviewing the totality of the record, the Court finds it supports the conclusion that Ford's failure to cooperate in discovery is due to willfulness, bad faith, or fault. *See Amigo*, 103 F.3d at 1277. There is a record of delay on the part of Ford that suggests contumacious conduct intended to obstruct discovery and prevent the case from moving forward. *See id.* InterMotive had to file a motion to compel, a motion for sanctions, and now, a second motion for sanctions, all for the same reason: to get Ford to disclose information regarding worldwide sales of its vehicles sold with the violative product. ECF No. 76, PageID.2028-29, ECF No. 106, PageID.3064-68. And in a previous order, Magistrate Judge Patti granted in part InterMotive's first motion for sanctions against Ford for failing to produce documents related to the sales of vehicles and information regarding vehicle sales outside the United States. ECF No. 106, PageID.3063. This Court ordered that Ford "either voluntarily produce

the documentation[8]…in support of its forthcoming, third supplemental answers…or subject itself to the additional discovery." PageID.3073-74. This order, coupled with the litany of delays and insufficient production of discovery materials related the issue of sales and damages, suggests willfulness on the part of Ford.

Given the record of non-compliance by Ford in responding to these discovery requests, the bar is high for Ford to now claim that the delay is a product of an innocent mistake or oversight. Ford was put on notice on numerous occasions that it was on thin ice about its failure to cooperate in discovery. After having already been warned and even sanctioned, Ford had every reason to abide by the Court's latest order and disclose the materials accurately, comprehensively, and promptly. A review of the transcript of the sanctions hearing before Magistrate Judge Patti shows that he had little patience with the arguments presented by Ford. *See, e.g.,* ECF No. 105, PageID.3015-23. Indeed, as noted by Magistrate Judge Patti, InterMotive's allegations regarding the extent of the damages it is owed by Ford, if proven, create a substantial incentive for Ford to not disclose materials establishing the full extent of its violative conduct. ECF No. 106, PageID.3066. ("[D]amages or royalties could be substantial,

---

[8] Documentation here being worldwide sales (number of vehicles and monetary figures) relating to the total number of units containing the UIM product worldwide for any subsidiary for which Plaintiff reports sales in its SEC filings and to shareholders. ECF No. 106, PageID.3070.

particularly if worldwide sales of the allegedly offending vehicles are exponentially larger."). The incentive to delay and obstruct is great here. Accordingly, the most reasonable inference after such long delays and obstructive conduct is that Ford's actions are the result of willfulness and not for any good faith reason.

### c. Ford's failure to cooperate in discovery has prejudiced InterMotive.

InterMotive argues that it has suffered prejudice because of Ford's delays and obstruction. For instance, even after Ford claims that it has produced the requested discovery materials, Robinson, InterMotive's expert witness, still cannot summarize the number of vehicles sold or the dollar amounts, verify the accuracy of Ford's interrogatory responses, or schedule a deposition of a Rule 30(b)(6) witness. ECF No. 108, PageID.3088. InterMotive further argues that the August production "omitted thousands of vehicles that were included in the July production" and is inconsistent with the Court's orders because it includes new vehicle models "not reflected in Ford's responses to Interrogatories 10-13." *Id*. at PageID.3177-78. Ford's August production also does not come with a "declaration from a knowledgeable person explaining what [Plaintiff] did, where it searched, and how its production is now complete and coherent." *Id*. at PageID.3178. Finally, InterMotive argues that it suffered prejudice because it has had to continually press Ford on various

discovery issues, increasing the cost of litigation and delaying justice. *Id.* at PageID.3180-81.

In response, Ford asserts that the prejudice InterMotive suffered was minimal because Ford remedied the deficiency in a prompt manner. ECF No. 110, PageID.3118. In addition, Ford maintains that InterMotive's requested sanction of taking as established that its "damages equal at least the worldwide sales of Ford vehicles that are equipped with" the violative products would yield "a sanction of over a *billion and a half* dollars if InterMotive proves liability on its claims." *Id.* at PageID.3122. (italics in original). Such a sanction, Ford argues, lacks a "connection between any actual prejudice and the relief InterMotive seeks." *Id.*

The record weighs in favor of finding that Ford's dilatory conduct and failure to cooperate in discovery has prejudiced InterMotive. Following the process established in *Amigo*, InterMotive alerted the Court of a potential Rule 37 problem before the discovery deadline, InterMotive conferred with Ford in an attempt to resolve the discrepancy, and InterMotive did not engage in its own dilatory and obstructive discovery. Moreover, this episode is not isolated. Taking into account the totality of Ford's conduct, the prejudice accruing to InterMotive is even greater. The record shows that InterMotive has been thwarted at nearly every turn as it has attempted to support its theory for damages by

obtaining the relevant sales information from Ford. This Court has ordered Ford to produce these materials on multiple occasions, but Ford has not done so in a satisfactory manner. *See* ECF No. 77, PageID.2081; *see also* ECF No. 106, PageID.3064-65.

Moreover, Ford's characterization that the delay amounted to no more than several business days is misleading because this is InterMotive's second motion for sanctions regarding essentially the same disputed discovery materials. InterMotive has already moved this Court for sanctions due to the failure to produce this same evidence, Ford's worldwide sales of vehicles fitted with its UIM. The period for fact discovery terminated on December 9, 2019 and the period for expert discovery closed on February 21, 2020. More than a year has passed due to the wasteful litigation made necessary by the failure to produce this evidence. ECF No. 67, PageID.1808.

Ford's failure to cooperate in discovery caused InterMotive to wait over a year after the close of discovery for this case to move forward. This delay has led to a great disadvantage in time and cost to InterMotive. *Peltz v. Moretti*, 292 Fed. App'x 475, 480 (6th Cir. 2008) (finding that prejudice occurs where the failure to cooperate in discovery results in many months of costly delays). As such, the Court finds that Ford's conduct has led InterMotive to suffer prejudice.

### d. Whether Ford's misconduct justifies the sanction of taking as established the issue of damages.

Rule 37(b) sets out the available sanctions that a court may impose for failure to comply with a court's discovery order. Fed. R. Civ. Proc. 37(b)(2)(A)(i)-(vii). The authorized forms of sanctions encompass a wide spectrum, from minor reprimands (staying the proceedings until the order is obeyed) to devastating punishments (dismissing the action in whole or in part). Specifically, the Rule provides as follows:

(2) *Sanctions Sought in the District Where the Action Is Pending.*

(A) *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;

(iii) striking pleadings in whole or in part;

(iv) staying further proceedings until the order is obeyed;

(v) dismissing the action or proceeding in whole or in part;

(vi) rendering a default judgment against the disobedient party; or

28

(vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

As to whether the Court should sanction Ford by taking as established InterMotive's damages, the record fails to establish that Ford was put on notice that a failure to cooperate would lead to such harsh sanctions. *See Amigo*, 103 F.3d at 1279-80 (holding that stringent sanctions were inappropriate where the district court never gave notice that further delay would lead to dismissal). Moreover, InterMotive does not allege nor does it cite to any evidence supporting such a conclusion.

Instead, in its previous order, this Court ordered Ford to supply information relating to "worldwide sales…relating to the total number of units containing UIM worldwide for any subsidiary for which it reports sales in its SEC filings and to shareholders." *See* ECF No. 106, PageID.3070-71. This Court then warned Ford that if it failed to cooperate by the deadline, InterMotive would be permitted to take depositions "related to the topic of Ford's relationship to its foreign…affiliates and subsidiaries," and one deposition of a Ford executive-level official with responsibility for contributing the worldwide sales figures to Ford Motor Company's Annual Report and SEC filings. *See id*. Accordingly, under Sixth Circuit case law and this Court's previous rulings, it would not be appropriate to sanction Ford by taking its world-wide sales as the established amount of damages.

InterMotive also seeks the sanction of foreclosing Ford from introducing any evidence that would tend to reduce the amount of damages that InterMotive can establish at trial. It is well-established that parties may not introduce evidence at trial if it did not disclose such evidence during discovery. Fed. R. Civ. P. 26(e). Magistrate Judge Patti put Ford on notice, at a hearing and in a written order, that it had an ongoing duty to produce any evidence it intended to use at trial, specifically evidence relating to the profits, costs, deductions, and offsets of its vehicles equipped with the violative product. ECF No. 76, PageID.2029; ECF No. 77, PageID.2051-52. Indeed, it appears that this information, if Ford intended to use it at trial, should have been produced as ordered by Magistrate Judge Patti by February 28, 2020. ECF No. 76, PageID.2030.

But the reality is that Ford never produced any evidence regarding its profits, never offered proof of deductions, set-offs, or costs, against the sales figures that InterMotive would like to use to establish damages. Ford never identified an expert, not did it produce any expert report. It simply devoted its considerable resources to litigating the issue, for over a year, of its obligation to produce complete and comprehensive sales information. The parties have been consumed by this discovery dispute for some 16 months.

At the February 19, 2021 hearing on the pending motion, the Court reiterated that parties who failed to disclose evidence in discovery would not be permitted to present such evidence at trial. ECF No. 123, PageID.3313-14. The Court further noted that Ford's opportunity to disclose evidence upon which expert testimony could rely to draw conclusions about profits, costs, deductions, and offsets closed with the end of discovery. *Id.* at PageID.3332-33. The record thus shows that Ford was aware that a potential sanction might include prohibiting Ford from presenting evidence at trial (not already disclosed in discovery) that would be offered to reduce the amount of damages that InterMotive can establish at trial. The Court would therefore be fully justified, under Rule 37(b)(2)(A)(ii), in prohibiting Ford from "introducing designated matters in evidence" such as evidence of its profits, costs, deductions and set-offs.

But to do so would dramatically tilt the playing field in InterMotive's favor, to the point where, if it prevails in establishing liability, it could point to Ford's total sales revenues of some $1.5-1.6 billion as the amount of ill-gotten gains it is seeking in damages. Ford, on the other hand, would be left unable to offer any evidence in rebuttal. While Ford's conduct here might well deserve such a penalty, the Court is concerned about the fundamental fairness of such a sanction where the value of the alleged stolen technology and the value of the total worldwide sales of Ford trucks with that technology are so out of balance. Moreover,

neither party came to the Court after Magistrate Judge Patti's initial compulsion order was issued to obtain an amended scheduling order that would have set new dates for expert discovery completion, even though he told them to do so. ECF No. 76, Page.ID 2030.

Consequently, the Court will adopt a course intended to punish Ford adequately for its abusive conduct during discovery, establish a clear scheduling order to complete discovery, and get the case on track for trial. Should it be necessary to consider another request for sanctions for non-compliance with this Order, the parties are on notice that the Court will consider barring claims or dismissal of the action as appropriate remedies.

## CONCLUSION

For all the reasons stated above, InterMotive's second motion for sanctions is **GRANTED IN PART** and **DENIED IN PART**. ECF No. 108.

In particular, the Court hereby **ORDERS** the following:

As to InterMotive's request for an award of attorneys' fees for enforcing the Court's order, the request is **GRANTED** and InterMotive shall submit a bill therefore within 14 days of the date of this Order;

As to InterMotive's request to take as established that InterMotive's "damages equal at least the worldwide sales of Ford vehicles that are equipped with" the violative products, this request is **DENIED**;

As to InterMotive's request to foreclose Ford, provided that InterMotive proves liability at trial, from introducing any evidence reducing InterMotive's damages as established by the records of the worldwide sales of Ford vehicles that are equipped with the alleged violative products, that request is **HELD IN ABEYANCE**, pending Ford's compliance with this Order;

And it is **FURTHER ORDERED**:

- Ford **SHALL PAY ANY FEES** already incurred by InterMotive in connection with compensating InterMotive's expert witness, Mark Robinson, in bringing the second motion for sanctions and supporting the same, and InterMotive shall submit an appropriate bill to the Court therefore within 14 days of the date of this Order;

- As sanction for its delay in identifying its expert or producing expert discovery, Ford **SHALL PAY ANY ATTORNEYS' FEES** incurred by InterMotive in reviewing Ford's expert report, preparing for and deposing Ford's expert, and **SHALL FURTHER PAY ANY EXPERT FEES** to be incurred by

InterMotive in connection with its preparation of any Rebuttal Expert report. Moreover, Ford **SHALL PAY ANY ATTORNEYS' FEES** incurred by InterMotive in preparing for and conducting any depositions of any witnesses designated by Ford in the Notification required pursuant to this Order. InterMotive shall submit an appropriate bill or bills pertaining to these fees to the Court.

- The following **SCHEDULING ORDER** shall govern the remainder of this case:

  - Within **7 days** of the date of this order, or by March 23, 2021, Ford **SHALL FILE WITH THE COURT A NOTIFICATION** stating whether or not Ford intends to offer at trial any evidence of profits, set-offs, or deductions relating to the sales of the vehicles equipped with the alleged violative products. Such Notification shall include the identification of a witness or witnesses (no more than two) with knowledge of how the evidence of profits, set-offs or deductions was or will be gathered, calculated, compiled and presented. If no such Notification is filed in compliance with this Order, Ford **SHALL BE FORECLOSED** from presenting such evidence or witness(es) in any manner, including in the form of any expert opinion;

34

o Within **28 days** of the date of this Order, or by April 13, 2021, provided that Ford has filed a Notification stating its intention to offer at trial any evidence of profits, set-offs, or deductions relating to the sales of the vehicles equipped with the alleged violative products and identifying any witnesses with knowledge thereof, such **EVIDENCE OF PROFITS, SET-OFFS, OR DEDUCTIONS MUST BE PRODUCED IN FULL TO INTERMOTIVE**. If not produced in full by that date, InterMotive's request, held in abeyance above, that Ford be foreclosed from introducing any evidence reducing InterMotive's damages as established by the records of the worldwide sales of Ford vehicles that are equipped with the alleged violative products will be **GRANTED**.

o Within **45 days** of the date of this Order, or by April 30, 2021, InterMotive **IS AUTHORIZED TO CONDUCT A DEPOSITION OR DEPOSITIONS** of any Ford witness or witnesses (no more than two) that may have been identified by Ford in the Notification required under this Order;

o With **14 days** of the date of this Order, or by March 30, 2021, if Ford wishes to submit an expert report, Ford

**MUST IDENTIFY BY NAME AND DISCLOSE ITS EXPERT TO INTERMOTIVE**; if Ford does not identify and disclose its expert to InterMotive by that date, InterMotive shall so notify the Court and Ford shall not be permitted to present any expert testimony or report;

o Within **62 days** of the date of this Order, or by May 17, 2021, any **EXPERT REPORTS FOR THE PARTY BEARING THE BURDEN OF PROOF SHALL BE PRODUCED AND EXCHANGED**. If any party does not produce and exchange its expert report by this date, it shall be foreclosed from presenting such at trial;

o Within **90 days** of the date of this Order, or by June 14, 2021, **REBUTTAL EXPERT REPORTS BY PARTIES NOT BEARING THE BURDEN OF PROOF SHALL BE PRODUCED AND EXCHANGED.** If any party does not produce and exchange its rebuttal expert report by this date, it shall be foreclosed from presenting such at trial;

o Within **120** days of the date of this Order, or by July 14, 2021, **EXPERT DISCOVERY SHALL CLOSE**;

o Within **150** days of the date of this Order, or by August 13, 2021, *DAUBERT* **MOTIONS SHALL BE DUE**,

36

with the time for response to be governed by the Local
Rules;

   o  The Court will set further dates to be set by the Court
after ruling on *Daubert* motions.

Finally, Ford's motion to strike is **DENIED**. ECF No. 113.

**IT IS FURTHER ORDERED**, that neither party may file any
motion not specifically authorized in this Order except by leave of the
Court.

**IT IS SO ORDERED.**

Dated: March 16, 2021      s/Terrence G. Berg
                          TERRENCE G. BERG
                          UNITED STATES DISTRICT JUDGE

**Certificate of Service**

I hereby certify that this Order was electronically filed, and the
parties and/or counsel of record were served on March 16, 2021.

                          s/A. Chubb
                          Case Manager