UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY, et al.**, <br><br> Plaintiff, <br><br> v. <br><br> **INTERMOTIVE, INC. et al.**, <br><br> Defendant. | 4:17-cv-11584 <br><br> **ORDER** <br><br> **CLARIFYING SANCTIONS AND SCHEDULING ORDER (ECF NO. 130)** <br><br> **DIRECTING INTERMOTIVE TO RE-SUBMIT ITS APPLICATION FOR FEES (ECF NO. 134)** |

This Court previously issued an Order granting in part and denying in part Defendant InterMotive's Second Motion for Sanctions against Plaintiff Ford Motor Company. ECF No. 128. Defendant InterMotive has moved for clarification and reconsideration of that Order. ECF No. 130. Ford responded to Defendant's Motion for Clarification, stating its own view of the meaning of the Order. ECF No. 135. In addition, pursuant to the Court's Order, InterMotive petitions the Court for attorneys' fees and expert fees. ECF No. 134. Ford filed a response opposing some of the requested fees. ECF No. 136.

The Court addresses these issues below.

1

### A. InterMotive's Motion for Clarification of the Scheduling Order

InterMotive raises five issues as to which it seeks clarification. ECF No. 130, PageID.3242. First, whether the Court's Order sanctioning Ford and setting a new Scheduling Order also permits Ford to offer a technical expert. Second, supposing that Ford is able to offer a technical expert, InterMotive seeks guidance as to what evidence that technical expert may rely upon. Third, whether the Order requires Ford to pay attorneys' fees incurred by InterMotive in reviewing all of Ford's expert reports, preparing for and deposing all of Ford's experts, and any expert fees incurred by InterMotive in connection with its preparation of any Rebuttal Expert report. Fourth, whether the Order permits InterMotive to also use a technical expert. Finally, whether the Order requires Ford to respond to InterMotive's Fourth Request for Production of Documents and Things.

#### i. The Order permits Ford to use a technical expert.

Ford seeks to offer the testimony of a previously undisclosed technical expert, Scott Andrews, to "rebut InterMotive's trade secret allegations for which InterMotive bears the burden of proof." ECF No. 135, PageID.3565. Ford cites the Order, which set a new deadline for "Expert Reports." *Id.* (citing ECF No. 128, PageID.3425). Ford argues that according to the language of that Order, the Court contemplated that the parties are able offer multiple expert witnesses to address issues

other than the question of damages. Furthermore, Ford argues that its technical expert testimony is limited to two narrow issues. The first issue is that he will testify that "the alleged 'secret' was, in reality, a feature InterMotive's competitor (InPower) offered for sale in the upfitter industry" years before the events giving rise to the dispute here arose. *Id*. at PageID.3567. Second, the technical expert will "identify the portion of the at-issue upfitter module that practices the alleged trade secret, as distinct from the portion of the upfitter module that does not practice the alleged trade secret." *Id*.

InterMotive makes three arguments that Ford should not be allowed to offer a technical expert at this stage. InterMotive first contends that the new Scheduling Order is limited to permitting Ford to offer only a single expert reserved for the issue of damages because it uses "expert" in the singular form and because its Second Motion for Sanctions was limited to the issue of for Ford's "failure to produce damages information." ECF No. 130, PageID.3433. Second, InterMotive argues that, except for "special modifications ordered by Magistrate Judge Patti, the deadline for Ford to offer a technical expert closed with the scheduling order prior to the Court's March 16, 2021 Order. *Id*. at PageID.3434 (citing ECF No. 67). One special modification being that Magistrate Judge Patti ordered Ford to identify witnesses and trial documents "now known or anticipated," including all witnesses and

documents to be used at trial. *Id*. at PageID.3434. Because Ford has already been sanctioned and because it did not disclose its technical expert during the period of discovery outlined in ECF No. 67, "it is mandatory and automatic to exclude a witness." *Id*. at PageID.3435 (citing Fed R. Civ. P. 37(c)(1)). Finally, InterMotive asserts that Ford knew or should have known "about the technical aspects of this dispute for over five years" and so its "delay in disclosing experts is not substantially justified or harmless when it is based on information that was known before the report was due." *Id*. at PageID.3436.

The Order may be read as containing two distinct, although not entirely separate, parts. *See* ECF No. 128. The first part of the Order addresses InterMotive's Second Motion For Sanctions, which included a request for (1) an award of attorneys' fees for enforcing the Court's order, (2) a finding that InterMotive's damages equal Ford's worldwide sales of vehicles equipped with the violative product, and (3) an order prohibiting Ford from introducing any evidence reducing InterMotive's damages as established by the records of the worldwide sales of Ford vehicles with the violative product. *Id*. at PageID.3421-22.

The second part is an updated Scheduling Order, which contemplates new deadlines in light of the Order on the Second Motion for Sanctions, and sets the case on a clear track toward a trial. *Id*. at PageID.3423. In the first part of the Order, the Court denied

4

InterMotive's request to preclude Ford from introducing evidence of costs, deductions, and offsets because of concerns "about the fundamental fairness of such a sanction." *Id*. at PageID.3420. Granting the full breadth of InterMotive's request "would dramatically tilt the playing field in InterMotive's favor." *Id*.

As to the question of whether in issuing the Scheduling Order the Court contemplated allowing Ford to offer a technical expert witness, the answer to that question is yes. In setting the new Scheduling Order, the Court stated that its purpose was to "establish a clear scheduling order to complete discovery" and "get the case on track for trial." ECF No. 128, PageID.3421. In so ruling, the Order aimed for consistency with the principles of fundamental fairness. Although Ford should have identified and offered a technical expert during the discovery period established in ECF No. 67, and has been sanctioned for not complying with Magistrate Judge Patti's orders, the proper goal now is to have ultimate issues resolved on the merits. That is best accomplished by allowing Ford to present evidence about the technical aspects at issue.

While it is true that in sanctioning Ford, the Court recognized that "Ford's conduct here might well deserve" the full extent of the sanctions that InterMotive asked for, it is also true that Magistrate Judge Patti ordered Ford to supplement its disclosures by identifying all witnesses and documents to be used at trial. The purpose of the new Scheduling

5

Order is to allow the parties to present expert witnesses that they should have, but did not produce, during the discovery period. It is worth repeating that "neither party came to the Court after Magistrate Judge Patti's initial compulsion order was issued to obtain an amended scheduling order." ECF No. 128, PageID.3421. InterMotive bears some responsibility for its own confusion about how the latest Scheduling Order alters the previous Scheduling Order under ECF No. 67.

As such, the Court concludes that Ford and InterMotive may each offer one technical expert pursuant to the terms in the Scheduling Order. *See* ECF No. 128.

> ii. **The kind of evidence Ford's technical expert consider and rely on.**

InterMotive argues that even if Ford is allowed to offer a technical expert, it claims that it would be unfair and prejudicial to allow that expert "to rely on anything new, not already of record, and as-of-yet-unproduced or undisclosed by Ford." ECF No. 130, PageID.3437. InterMotive claims that expert testimony relying on its technology as "not new, not secret, or not valuable" amounts to "late-in-the-game, post-discovery disclosure." *Id*.

Ford responds that InterMotive's position "is baseless" and "certainly not ripe for decision now." ECF No. 135, PageID.3574. That is because InterMotive does not state "the relief sought" and "the grounds"

6

for its motion. *Id*. (citing Fed. R. Civ. P. 7). Rather, Ford contends that its technical expert's opinions will be limited to "evaluat[ing] InterMotive's allegations in this lawsuit." *Id*.

There is some merit in the contention that this issue may not be fully ripe for decision. It is not yet clear exactly what kind of evidence Ford's technical expert will rely upon, though Ford's response briefing suggests that the expert will use evidence already produced in discovery. *See* ECF No. 135. As stated above, Ford claims that its technical expert will attest to three issues in response to InterMotive's allegations. *Id*. at PageID.3567. First, Ford asserts that its expert will explain that InterMotive's alleged secret was actually a feature in one of InterMotive's competitor products years before InterMotive shared its technology with Ford. Ford states that its expert will rely on a "2010 brochure Ford produced in discovery." ECF No. 135, PageID.3567, fn. 1. Second, the expert will offer his opinion that "Ford's upfitter does not use the circuitry" that InterMotive alleges is a trade secret. Finally, the technical expert "will apportion the technology inside the accused upfitter interface module for Ford's damages rebuttal expert." *Id*. at PageID.3567-68.

These appear to be issues relating to evidence that should have already been disclosed during the initial discovery period. Furthermore, at the hearing on the Second Motion for Sanctions, the Court made clear its position on the likelihood of granting any further extensions: "There

7

will be no extensions of any kind…we're not giving any extensions at all." ECF No. 132, PageID.3491. Thus, while InterMotive is right to highlight the Court's concern about the risk of increasing further the amount of time expended litigating discovery disputes here, the parties are on notice that the remaining period of discovery is limited. There *should* be little risk that this case will encounter any further delays because of discovery.

Although the Court cannot define with precision what evidence the technical experts may rely upon without the Court having knowledge of the substance of their expert reports, InterMotive's basic position is correct that experts on both sides will need to base their opinions on evidence already produced in discovery or otherwise available to both parties in the public sphere. As such, the Court is inclined to state that InterMotive's point about further discovery delays is well-taken.

### iii. Ford's obligations under the fees-as-sanction scheme.

In its previous Order, the Court sanctioned Ford "for its delay in identifying its expert or producing expert discovery." ECF No. 128, PageID.3422-23. As a penalty, the Court directed Ford to pay attorneys' fees incurred by InterMotive in reviewing Ford's expert report, preparing for and deposing Ford's expert, and "**ANY EXPERT FEES**" to be incurred by InterMotive in connection with its preparation of any Rebuttal Expert report. *Id*. The Court intended to impose a far-reaching

penalty in the form of fees because it deemed it appropriate to have Ford bear most of the cost of any remaining discovery, as opposed to the sanction of taking as established InterMotive's damages as equal to Ford's worldwide sales of vehicles with the violative conduct. That is because Ford was the most responsible party in causing the discovery delays thus far and for the tortured posture of this case. And it is worth noting that the Court only learned of Ford's intent to offer a technical expert two days *after* it issued its previous Order, ECF No. 128, and only through informal correspondence via e-mail.

Ford argues that its penalty for being sanctioned for its dilatory conduct should not apply to fees in connection with its technical expert because it "is unrelated to the motion for sanctions." ECF No. 135, PageID.3566. Ford cites case law for the proposition that "there must be a 'specific nexus' between the discovery violation and the sanction." *Id*. (citations omitted).

For its part, InterMotive argues that if the Court's March 16, 2021 Order "allows more than one expert," then the language ordering Ford to pay any attorneys' fees "incurred by InterMotive in reviewing Ford's expert report" applies to all experts. ECF No. 128, PageID.3422-23.

The Court agrees with InterMotive's reading. Ford shall be responsible for any of InterMotive's attorneys' fees and expert fees in connection with addressing Ford's damages expert, technical expert, and

9

any other expert that Ford now intends to offer. The prefatory clause of the subsection ordering Ford to pay attorneys' fees and expert fees states that its purpose is to sanction Ford "for its delay in identifying its expert or producing expert discovery." *Id*. While the Order does refer to expert witnesses in the singular, that does not mean that the Court intended its fees-as-penalty sanctions to apply to only a single expert offered by Ford.

Rather, the Court described expert fees in singular terms because at the time the Order was issued, Ford had identified only a single expert—for the issue of damages. Indeed, Ford was sanctioned for failing to identify *any* expert. So, InterMotive could not have raised the issue about a technical expert then, nor was the Court aware of Ford's intent to offer a technical expert. It is consistent with the purpose of the Order, and in no way unfair, for Ford to pay for fees for an expert that it did not disclose at the time InterMotive raised the issue. Ford could have avoided these fee-shifting sanctions if it had abided by Magistrate Judge Patti's order to make ongoing disclosures in identifying all witnesses it intended to use at trial. *See* ECF No. 76, PageID.2028-2030.

Ford argues that the fees-as-penalty sanction is required to have a "specific nexus" with the issues raised in InterMotive's Second Motion for Sanctions. The "specific nexus" of the discovery sanction centers on the issue of Ford's failing to offer any expert witness during the original discovery period. The Scheduling Order is not independent of

InterMotive's Second Motion for Sanctions. Rather, the necessity for and form of the new Scheduling Order is a direct and proximate consequence of Ford's actions in discovery. The sanctions were designed to get the case back on track and ready for jury trial. This includes allowing Ford to offer experts to testify on the merits of this case, while attaching fee-shifting penalties on such experts Ford intends to offer because of its dilatory conduct in discovery.

Moreover, Ford's purported theory of the case blurs the distinction between the issues that its technical expert will opine upon and those that will be explained by its damages expert. Ford states that its technical expert, Andrews, will testify about the nature of the upfitter technology as designed by another competitor, as well as how Ford's upfitter is distinct from InterMotive's technology. ECF No. 135, PageID.3567. But Ford also argues that there cannot be an accurate analysis of InterMotive's damages without apportioning the profits and costs associated with the violative product from the vehicle itself. Indeed, Ford admits that Andrews will offer opinions about apportionment of technology, and this will be used by Ford's financial damages expert to calculate the damages. InterMotive too will likely have to address the technical expert's opinions in order to address the issue of damages. This means that Andrews' opinions as a technical expert appear to be inextricably intertwined with the damages aspects of this case. The Court

thus finds that the opinion of Ford's technical expert has a "specific nexus" with the issue of Ford's costs, offsets, and deductions.

For these reasons, Ford is ordered pay for the attorneys' fees and expert fees incurred by InterMotive in connection with reviewing any of Ford's expert reports, preparing for and deposing any of Ford's expert witnesses, and any other fees resulting from its preparation of any Rebuttal Expert report in response to any of Ford's expert witnesses. *See* ECF No. 128, PageID.3421-23.

### iv. The Order permits InterMotive to use a technical expert.

The Court addressed and answered this issue above. InterMotive may offer a technical expert of its own pursuant to the directives in the Scheduling Order. And as stated in Section A subsection (iii) of this Order, such costs incurred by InterMotive, including attorneys' fees and expert fees, are subject to the fee-shifting scheme in the same manner as the costs incurred by InterMotive in addressing Ford's damages expert.

### v. InterMotive's Fourth Request for Production of Documents and Things.

In its motion, InterMotive asks the Court to clarify that Ford is required to answer InterMotive's Fourth Request for Production of Documents and Things. ECF No. 130, PageID.3438-39. The information InterMotive seeks "relates directly to the issue of set-offs and deductions." *Id*. InterMotive claims that it has raised this issue several

times. *Id.* (citing ECF No. 123, PageID.3342; ECF No. 108, PageID.3089; and ECF No. 79, PageID.2201). InterMotive states that Ford has failed to produce information in response to this request despite having promised to do so. ECF No. 130, PageID.3439.

In its response, Ford claimed that InterMotive's Fourth Request for Production "were not properly served." ECF No. 135, PageID.3574. In addition, Ford stated that InterMotive's Fourth Request for Production "will be provided on April 13, 2021 along with Ford's production in accordance with the Court's March 16 Order." *Id.* at PageID.3574. Ford's response suggests that it does not dispute that the Order requires Ford to submit a response to InterMotive's request.

Furthermore, on May 7, 2021, the Court held a status conference with the parties to address various discovery issues. The Court raised this issue at the status conference and Ford confirmed that it made the production on April 13, 2021. Accordingly, this issue is moot.

### B. InterMotive's Application for Attorneys' Fees and Expert Fees

InterMotive requests fees in the amount of $124,340.25 for the reasonable attorneys' fees and expert fees related to enforcing the Court's prior Order. ECF No. 134, PageID.3518-19. InterMotive states that $88,879.50 is for attorneys' fees incurred by InterMotive since July 2020.

The remainder, $35,360.75 is for fees for worked performed by its Mark A. Robinson, InterMotive's expert, and his firm. *Id*.

Ford opposes being required to pay $29,424.00 of the $88,879.50 in attorneys' fees. ECF No. 136, PageID.3590. Ford asserts that this amount stems from entries incurred after the Court's hearing on InterMotive's Second Motion for Sanction, including InterMotive's attempt to prevent Ford from using expert witnesses in the present Motion for Clarification. These entries, Ford maintains, do not involve matters related to "enforcing the Court's order." *Id*. at PageID.3589-90; *see also* ECF No. 128, PageID.3421.

Ford submitted an exhibit detailing an e-mail exchange between counsel about the issue. *See* ECF No. 136-3. In the exchange, InterMotive's counsel, Mr. Andrew Grove, asserts that all of the submissions are appropriate, including the entries incurred after the Court's February 19, 2021 hearing, because they relate to ongoing efforts to enforce the Court's order and to InterMotive's preparation for deposing Ford's expert. *Id*. at PageID.3599.

The Court sanctioned Ford by imposing a fees-as-penalty scheme. *See* ECF NO. 128. The breadth of the scheme intended to award InterMotive "attorneys' fees for enforcing the Court's order." *Id*. at PageID.3421. Ford was also ordered to pay fees incurred by InterMotive "in connection with compensating InterMotive's expert witness, Mark

Robinson, in bringing the second motion for sanctions and supporting the same." *Id.* at PageID.3422. Furthermore, the penalty required Ford to pay additional attorneys' fees incurred by InterMotive in connection with the following activities: reviewing Ford's expert report, preparing for and deposing Ford's expert, and preparing for and conducting any depositions of any witnesses designated by Ford in the Notification required pursuant to this Order. *Id.* at PageID.3422-23. As to expert fees, the scheme required Ford to pay any expert fees incurred by InterMotive with its preparation of any Rebuttal Expert report. *Id.*

In light of the foregoing, the Court finds that the fees-as-penalty scheme does not contemplate matters related to activities that attempt to clarify this Court's Orders or to exclude Ford from offering expert witnesses. The fee-shifting would therefore not apply to InterMotive's motion for clarification of the Scheduling Order. Instead, the fee-shifting sanction focuses on the costs associated with reviewing expert reports, preparing for and deposing Ford's expert witnesses, and preparation of any Rebuttal Expert reports. In addition, in order to avoid additional follow-on motions seeking additional clarification, let it be known that such motions for clarification or reconsideration, and also any motions by InterMotive to exclude Ford's expert witnesses or reports, such as *Daubert* motions and motions in limine, similarly do not fall within the fees-as-penalty scheme.

As such, the Court orders InterMotive to re-submit its application for attorneys' fees and expert fees consistent with the clarification outlined here.

**CONCLUSION**

In summary, both parties are permitted to offer technical experts. Ford must pay for attorneys' fees and expert fees incurred by InterMotive in connection with Ford's experts, pursuant to the directives outlined in the previous Order, ECF No. 128, and as clarified above. InterMotive is further ordered to re-submit its application for attorneys' fees and expert fees in a manner consistent with this Order.

**IT IS SO ORDERED.**

Dated: May 13, 2021         s/Terrence G. Berg
                            TERRENCE G. BERG
                            UNITED STATES DISTRICT JUDGE