UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY, AND FORD GLOBAL TECHNOLOGIES, LLC,** | **4:17-CV-11584-TGB** |
| Plaintiffs, | |
| v. | |
| **INTERMOTIVE, INC., AND GREGORY E. SCHAFFER**, | **ORDER ADOPTING IN PART AND REJECTING IN PART DISCOVERY MASTER'S REPORTS AND RECOMMENDATIONS (ECF NOS. 177, 178)** |
| Defendants. | |

This matter is before the Court on two Reports and Recommendations ("R&Rs") filed on August 12, 2022 by Discovery Master Christopher G. Darrow (ECF Nos. 177, 178) addressing the admissibility of four experts' opinions. Discovery Master Darrow recommends denying in part and granting in part Plaintiffs/Counter-Defendants Ford Motor Company and Ford Global Technologies, LLC's (together, "Ford's") motions to exclude the opinions of Defendants/Counter-Plaintiffs InterMotive, Inc. and Gregory E. Schaffer's (together, "InterMotive's") damages expert, Mark Robinson ("Robinson"). ECF No. 177. Discovery Master Darrow recommends denying InterMotive's motion to exclude the opinions of Ford's damages expert, Sara Rinke ("Rinke"). *Id.* As to the parties' technical experts,

1

Discovery Master Darrow recommends denying in part and granting in part InterMotive's motion to exclude the opinions of Ford's technical expert, Scott Andrews ("Andrews"). ECF No. 178. Finally, Discovery Master Darrow recommends denying Ford's motion to exclude the opinions of InterMotive's technical expert, Juan Pimentel ("Pimentel"). *Id.*

On August 22, 2022, Ford filed timely objections to the R&Rs. ECF Nos. 180, 181. On the same day, InterMotive filed its timely objections to the R&Rs. ECF No. 179. After considering the parties' objections, the Court adopts in part and rejects in part the Discovery Master's reasoning set forth in the R&Rs for the reasons described below. To the extent that neither party objects to the R&Rs' findings and reasoning, the Court adopts those portions of the R&Rs in full.

## I.   BACKGROUND

The Court has previously set forth a detailed summary of background facts. ECF No. 65. In 2011 and early 2012, the parties worked together to design an Upfitter Interface Module ("UIM") for Ford vehicles. The UIM is a product that allows users to modify vehicles for special uses such as in the police, fire, and utility truck market. The UIM permits users to customize features to be activated under various circumstances. For example, the UIM can program a truck to flash a light if it exceeds 65 miles per hour, or program a police vehicle to automatically lock its doors unless certain conditions are met. The UIM

operates by "interfacing" with a vehicle's Controller Area Network bus ("CAN bus") to transmit information between modules in the vehicles. InterMotive claims that it had already developed and sold a commercial version of the UIM by the time it began working with Ford to develop a "special performance-enhanced" version of the UIM product specifically for Ford.

The parties' preliminary business discussions were governed by a Confidential Disclosure Agreement (the "NDA"). Although the parties now dispute the actual time period covered by the NDA, the text of the parties' initial written agreement governed only confidential information disclosed from November 29, 2011 to May 29, 2012. Furthermore, the NDA explicitly extended a recipient's duty to protect confidential information disclosed under the agreement to November 29, 2013. InterMotive alleges that the parties had an "implied contract" with "no specific end date" on maintaining confidentiality after November 29, 2013. Specifically, InterMotive claims by accepting a UIM prototype from InterMotive marked confidential in December 2012, Ford impliedly agreed to extend the NDA's end date. InterMotive also alleges that it continued its UIM business relationship with Ford into 2014. But Ford denies any extension of the NDA and alleges that it ended its relationship with InterMotive by May 2012.

In March 2016, Ford announced that several of its 2017 vehicles would include an "Upfitter Interface Module" that would better enable

"upfitters" to interact with the electrical system of Ford vehicles for upfitting modifications. InterMotive alleges that Ford gave InterMotive's December 2012 prototype and other confidential information that InterMotive shared to another supplier that developed the accused UIM. InterMotive claims that Ford infringed on InterMotive's "Upfitter Interface Module" trademark to describe Ford's product. Ford alleges that InterMotive infringed on Ford's trademark rights by using Ford's marks, including the Ford Oval and Ford's "Go Further" trademarks, on InterMotive products without Ford's consent.

To support their claims, both parties seek to offer opinions from damages experts and technical experts. As to damages, Ford offers Rinke, and InterMotive offers Robinson. Ford's damages expert Rinke and InterMotive's damages expert Robinson assume InterMotive's liability to quantify Ford's entitlement to damages from InterMotive's use of Ford's trademark. *See* Rinke Report (May 17, 2021), ECF No. 156 (sealed); Robinson Surrebuttal Report (July 30, 2021), ECF No. 154-3. Rinke and Robinson also assume Ford's liability to quantify InterMotive's damages on its counterclaims. *See* Rinke Rebuttal Report (May 17, 2021), ECF No. 157 (sealed); Robinson Report (May 17, 2021), ECF No. 154-2. As to liability, Ford offers Andrews, and InterMotive offers Pimentel as technical experts. Ford's technical expert Andrews and InterMotive's technical expert Pimentel address complex facets of InterMotive's trade secret misappropriation and breach of confidentiality counterclaims,

including elements of CAN data systems and the types of information InterMotive disclosed to Ford between November 29, 2011 and the NDA's disputed end dates. *See* Andrews Report (June 14, 2021), ECF No. 151-2; Andrews Reply Declaration (Aug. 13, 2021), ECF No. 151-3; Pimentel Rebuttal Report (July 30, 2021), ECF No. 163-5.

The parties fully and extensively briefed their motions to exclude their opponents' respective expert reports. The Court appointed Discovery Master Darrow to issue R&Rs on the admissibility of the parties' expert reports. ECF No. 175. As both parties have filed Objections to the two R&R's, the Court will conduct a de novo review of their arguments in reviewing the R&Rs.

Ford objects to the R&Rs' findings adverse to its experts' opinions. Ford specifically objects to the R&Rs' findings that decline to exclude opinions from InterMotive's damages expert Robinson on the issues of post-NDA sales, trade secret apportionment, and vehicle revenues. Ford's Objection to the Special Master's R&R (ECF No. 177), ECF No. 180, PageID.6687. Ford also objects to the R&Rs' findings that exclude opinions from Ford's technical expert Andrews used to rebut InterMotive's trade secret claims and Andrews' opinions based on hearsay. Ford's Objections to the Special Master's R&R (ECF No. 178), ECF No. 181, PageID.6742–43. Ford further objects to the R&Rs' findings that decline to exclude opinions from InterMotive's technical expert Pimentel. *Id.* at PageID.6743–44.

5

For its part, InterMotive also objects to the R&Rs' findings adverse to its experts' opinions. InterMotive objects to the R&Rs' recommendations to exclude opinions on breach of contract damages from its damages expert Robinson. InterMotive's Objections to Discovery Master's Report, ECF No. 179, PageID.6670. InterMotive further objects to the R&Rs' findings that decline to exclude opinions from Ford's damages expert Rinke. *Id.* at PageID.6676. InterMotive also objects to the R&Rs' recommendations against excluding some opinions from Ford's technical expert Andrews. *Id.* at PageID.6680. Lastly, InterMotive objects to the R&Rs' discussion of burdens of proof for obtaining unjust enrichment damages from trade secret misappropriation. *Id.* at PageID.6675–76.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 53(f) governs review of a special master's reports and recommendations. Upon timely objection to a special master's report and recommendation, the district court "must decide de novo all objections to conclusions of law made or recommended by a master." Fed. R. Civ. P. 53(f)(4); *see also Hochstein v. Microsoft Corp.*, 730 F. Supp. 2d 714, 717 (E.D. Mich. 2010), *aff'd*, 430 F. App'x 898 (Fed. Cir. 2011) ("The Court reviews de novo factual findings and legal conclusions of the Special Master to which a specific objection has been made."). The reviewing Court may "adopt or affirm, modify, wholly or partly reject or reverse [the special master's report and

recommendations], or resubmit to the master with instructions." Fed. R. Civ. P. 53(f)(1).

## III.  DISCUSSION

As described above, the parties generally organize their objections around the R&Rs' impact on their experts' opinions. Consequently, for efficiency, the Court will proceed by discussing each experts' opinions and the parties' objections as they relate to that expert.

### A. Ford's Damages Expert—Sara Rinke

InterMotive moved to exclude the opinions of Ford's Damages Expert, Sara Rinke, in their entirety (ECF No. 155). In his R&R on the Damages Experts (ECF No. 177), Discovery Master Darrow recommends denying that motion. ECF No. 177, PageID.6570. InterMotive objects on three primary grounds. First, InterMotive contends that Ford failed to support its entitlement to damages for trademark infringement based on willful infringement, and the R&R errs by suggesting the need for additional briefing rather than excluding or striking Rinke's opinions. ECF No. 179, PageID.6676–77. Second, InterMotive argues that the R&R should have excluded Rinke's opinions on Ford's vehicle profits because Ford failed to comply with this Court's Sanctions Order (ECF No. 128) in disclosing profits evidence. *Id.* at PageID.6677–79. And third, InterMotive claims that the R&R impermissibly admits Rinke's "legal opinions" that will confuse the trier of fact. *Id.* at PageID.6679–80.

7

### i. InterMotive's Objection Seeking to Exclude Rinke's Opinions on Ford's Entitlement to Trademark Infringement Damages

InterMotive's objection requesting exclusion of Rinke's opinions based on its contention that Ford cannot show entitlement to trademark infringement damages is overruled.

"An expert's opinion, where based on assumed facts, must find some support for those assumptions in the record." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000). But claims of "weaknesses in the factual basis of an expert witness' opinion . . . bear on the weight of the evidence rather than on its admissibility." *Id.* (quoting *United States v. L.E. Cooke Co.*, 991 F.2d 336, 342 (6th Cir. 1993)); *see also Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 729 (6th Cir. 2012). Moreover, "in deciding whether an expert's opinion is reliable," the Court does not "determine whether it is correct, but rather [] determine[s] whether it rests upon a reliable foundation." *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529–30 (6th Cir. 2008). In short, the Court only determines the admissibility of expert evidence, while the jury determines its weight. *See Best v. Lowe's Home Ctrs., Inc.*, 563 F.3d 171, 182 (6th Cir. 2009).

In its Summary Judgment Order, the Court identified record evidence that InterMotive used Ford's trademarks in InterMotive's brochures, splash screen, and "Competitive Advantage" advertisement. ECF No. 65, PageID.1768–69. Nonetheless, before the Court could even consider the likelihood of confusion factors, the Court concluded that a

8

genuine issue of material fact remained as to whether "InterMotive only used Ford marks to show that its UIM was compatible with Ford vehicles." *Id.* at PageID.1774–75. Relatedly, a factfinder must decide "whether Ford encouraged or aided InterMotive in using Ford's marks," and whether to accept InterMotive's affirmative defenses to trademark infringement. *Id.* at PageID.1775, PageID.1775 n.15.

Rinke's first report notes that her opinions assume "that Ford will be able to prove that it is entitled to damages recovery" for InterMotive's alleged trademark infringement. ECF No. 156 (sealed), PageID.5713. Essentially, InterMotive's objection is that this assumption will not be proved, making Rinke's opinions irrelevant. At trial, InterMotive will certainly point to factual weaknesses underlying Ford's trademark infringement claims, and will challenge Ford's entitlement to infringement damages, particularly on a willful infringement theory. *See* ECF No. 177, PageID.6614.

And InterMotive is correct that Ford may not attempt to introduce previously undisclosed evidence to support any of its claims, including a willful infringement theory. But InterMotive has not provided a basis for excluding or striking Rinke's opinions. InterMotive is asking the Court to conclude that Ford will undoubtedly fail to prove its trademark infringement claims, which the Court has already declined to do in denying summary judgment. InterMotive does not dispute that it intentionally used Ford's trademarks in its materials, but factual

9

disputes remain over whether InterMotive's use constitutes trademark infringement entitling Ford to damages. If at trial Ford fails to adduce evidence of willful trademark infringement, then Rinke's assumption of InterMotive's liability and resulting damages theory may become inadmissible. In any event, InterMotive can challenge the strength of Rinke's factual foundations on cross-examination, as well as whether Rinke's assumptions are adequately based on record evidence. The Court declines to order further briefing on this issue, but reiterates what should be obvious: neither party may use previously undisclosed evidence to support any of its claims. *See* Fed. R. Civ. P. 37(c); ECF No. 128, PageID.3420.

### ii. InterMotive's Objection Seeking to Exclude Rinke's Opinions Because of Ford's Alleged Discovery Misconduct

InterMotive objects that the R&R did not exclude Rinke's opinions on the ground that Ford's production of a 12-page summary document on vehicle profits allegedly violated the Court's Sanctions Order. ECF No. 179, PageID.6677–78. InterMotive claims that Ford produced this single summary document instead of producing profit and cost information "in full" as ordered by the Court. *Id*. The Court overrules this objection because Rinke's reliance on the 12-page summary document does not necessarily render her opinions unreliable—even if that summary in and of itself contained arguably less comprehensive information than what the Court had ordered.

10

Although it overrules InterMotive's objection, the Court declines to adopt the R&R's reasoning pertaining to whether Ford's disclosure constituted compliance with the Court's Sanctions Order (ECF No. 128). In its Sanctions Order, the Court instructed Ford to disclose "IN FULL" evidence of "profits, setoffs, or deductions relating to the sale of the vehicles equipped with the alleged violative products." ECF No. 128, PageID.3424.

If, as InterMotive seems now to suggest, Ford's response to the Court's Order merely consisted of a 12-page summary document on vehicle profits, ECF No. 155, PageID.5418, and nothing more, InterMotive should have raised Ford's noncompliance with the Court's Sanctions Order long before now. Indeed, that 12-page document, bears an Exhibit sticker dated April 22, 2021, and the witness name "James Tuton," indicating that it was presented during the deposition of Mr. Tuton on that date. ECF No. 160 (sealed), PageID.5986–97. The Sanctions Order was issued on March 16, 2021, and it ordered Ford to make its production "IN FULL" by April 13, 2021. The Court held a hearing on May 7, 2021 in which it asked whether Ford had met the April 13 deadline. Tr. of Hearing of May 7, 2021, ECF No. 143, PageID.3815–16. In response, counsel for InterMotive essentially confirmed that he was satisfied with Ford's production. *Id.* at PageID.38156. At this stage in the case, it is unnecessary to make any finding as to whether this 12-page exhibit represents a violation of the Court's Sanctions Order. If Ford

11

missed the April 13, 2021 production deadline, InterMotive should have raised that issue immediately. The question is whether Rinke's opinion should be excluded for relying in part on this information, and here, InterMotive has not set forth sufficient grounds in support of exclusion.

### iii. InterMotive's Objection Seeking to Exclude Rinke's Legal Opinions

The Court sustains in part InterMotive's objections to the Discovery Master's recommendation to deny exclusion of Rinke's opinions pertaining to legal conclusions. The Court will specifically exclude Rinke's opinions as they relate to InterMotive's alleged breach of confidentiality damages after November 29, 2013. ECF No. 157 (sealed), PageID.5784. The Court also agrees with the Discovery Master that further objections to expert testimony on legal conclusions are appropriately addressed at trial.

The R&R recognized that "[a]t least for some instances, the Discovery Master cannot agree with Ford's argument that Ms. Rinke simply states undisputed facts and general principles of law." ECF No. 177, PageID.6622. But the Discovery Master did not recommend exclusion because "InterMotive does not raise any issues that the alleged legal opinions . . . are germane to the *Daubert* analysis." *Id.* Provided that the expert does not actually attempt to offer testimony as to any of these legal conclusions, the Court agrees.

12

But generally, the Court should address the admissibility of expert reports that include improper legal conclusions as part of their *Daubert* "gatekeeping" functions. *See Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 592 (6th Cir. 2014) (affirming district court's exclusion of expert report containing "recitation of legal principles, which is not appropriate expert testimony" and "impermissible legal conclusions" under *Daubert* and Rule 702); *Henry v. City of Flint*, No. 17-CV-11061, 2019 WL 2207669, at *6 (E.D. Mich. Apr. 19, 2019), *report and recommendation adopted*, No. 17-CV-11061, 2019 WL 2211847 (E.D. Mich. May 21, 2019) (recommending granting *Daubert* motion to exclude expert testimony that "is tantamount to instructing the jury on the law"); *McGuffey v. Neil*, No. 1:18-CV-322, 2020 WL 509416, at *4 (S.D. Ohio Jan. 15, 2020) (excluding expert testimony that "both instructs the jury on the law and then informs them of the result to reach").

Although an expert opinion that embraces the ultimate issue is not per se inadmissible, there is a "subtle" but "important" distinction between expert testimony stating facts to support a certain finding and impermissible legal conclusions on the ultimate issue. *Berry v. City of Detroit*, 25 F.3d 1342, 1353 (6th Cir. 1994). Even so, courts "generally exclude[] expert testimony for stating a 'legal conclusion' only when the witness explicitly testifies, in 'specialized' legal terminology, that a defendant violated (or did not violate) the law." *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 317 (6th Cir. 2019).

13

Here, Rinke's testimony as it relates to Ford's liability based on the alleged breach of confidentiality and InterMotive's entitlement to damages for breach of contract after November 29, 2013 intrudes on the jury's factfinding province and amounts to a legal conclusion. In her rebuttal report, Rinke claims that "InterMotive is entitled to $0 in damages for its breach of contract claim because Ford's obligation to maintain confidentiality of InterMotive's information expired on November 29, 2013, approximately three years ***before*** Ford's first sale of a UIM-equipped vehicle." ECF No.157 (sealed), PageID.5784. The question of whether the parties extended their confidentiality agreement is part of the what the jury must decide. Similarly, Rinke concludes that "under a scenario where it is determined that Ford's confidentiality obligations under the 2011 NDA expired on November 29, 2013, Ford's unjust enrichment is $0." *Id.* at PageID.5787. This type of conjecture claiming "if there was no violation, there are no damages" does not require expert testimony; it is a rhetorical argument to make to the jury.

In the latter statement, Rinke couches her conclusion in an assumed "scenario" where the NDA is determined to require confidentiality only until November 29, 2013. This may not be an improper legal opinion, but it still embraces the ultimate factual issue. And in the first statement, Rinke opines that InterMotive is not entitled to damages "***because***" Ford's confidentiality obligations ended on November 29, 2013. This is plainly a factual question for the jury. The

14

Court denied summary judgment on InterMotive's breach of contract counterclaims because genuine disputes remain over whether Ford's confidentiality obligations extended beyond November 29, 2013. Specifically, these disputes involve intertwined factual and legal issues on waiver, implied contract, and restrictive amendment clauses. ECF No. 65, PageID.1793–94. As such, Rinke may not offer an opinion that InterMotive is not entitled to breach of contract damages (or that Ford is not liable for damages) based on the NDA's disputed end date.

InterMotive points to several other instances where Rinke purportedly provides inadmissible legal opinions. Although the Court will not rule on each of the challenged opinions at this juncture, it should be enough to state that questions of law are for the Court. If Rinke or any expert offers improper legal conclusions, they may be challenged by objection at trial.

### B. InterMotive's Damages Expert—Mark A. Robinson

The Damages Experts R&R recommends partially excluding Robinson's damage calculations that use disgorgement as a measure for InterMotive's breach of contract damages. ECF No. 177, PageID.6580. The R&R declined to recommend excluding Robinson's opinions on the other grounds raised by Ford. *Id.* at PageID.6579–80. Accordingly, InterMotive objects that the R&R failed to consider cases that support using disgorgement as a breach of contract remedy under Michigan law. ECF No. 179, PageID.6670. InterMotive also objects to the R&R's

discussion of burdens of proof "suggesting that InterMotive or its expert have a burden to show how many vehicles Ford sold because of the misappropriated technology." *Id.* at PageID.6675.

Meanwhile, Ford argues that the R&R wrongfully recommends admitting Robinson's opinions on Ford's vehicle sales and profits, as well as opinions on sales between 2017 and 2022—a period that Ford contends is far outside the NDA end date. ECF No. 180, PageID.6687. More fundamentally, Ford claims that R&R should have excluded Robinson's testimony after the Discovery Master noted that Robinson's opinions may end up being "unreliable and unhelpful." *Id.* at PageID.6688.

### i. InterMotive's Objection to the Exclusion of Robinson's Opinions Applying Disgorgement Damages to Its Breach of Contract Claim

The Court overrules InterMotive's objection to the R&R's recommendation to exclude Robinson's opinions that apply disgorgement as a measure of damages for breach of contract.

It is undisputed that Michigan law "does recognize and enforce covenants not to use or disclose confidential information." *Structural Dynamics Rsch. Corp. v. Eng'g Mechs. Rsch. Corp.*, 401 F. Supp. 1102, 1114 (E.D. Mich. 1975); *see also Viking Grp., Inc. v. Bruckman*, No. 347778, 2020 WL 2296903, at *4 (Mich. Ct. App. May 7, 2020) (affirming trial court's findings that the defendant breached the parties' confidentiality agreement and finding "no basis for concluding that such a contractual provision violates Michigan law or public policy"). And the

16

Court has reviewed InterMotive's case authority suggesting that disgorgement may be awarded where a party improperly uses confidential information to their benefit. *See B & M Die Co. v. Ford Motor Co.*, 421 N.W.2d 620, 622, 624 (Mich. Ct. App. 1988). But ultimately, the Court accepts the R&R's legal analysis explaining that for a breach of contract claim under Michigan law, the prevailing rule holds that damages are usually compensatory and measured by the plaintiff's loss rather than the defendant's gain. ECF No. 177, PageID.6586–87.

Moreover, the R&R correctly highlights the differences between breach of contract and unjust enrichment claims. For example, in *B&M Die Co. v. Ford Motor Co.*, the plaintiff sought disgorgement of profits derived from "the technical information it provided to the defendant," and the court permitted the jury to "consider the value of the benefit resulting to defendant from the technical information in determining the value of the benefit provided by plaintiff." 421 N.W. at 622, 624. But importantly, the *B&M Die* plaintiff proceeded on an unjust enrichment claim, not a breach of contract claim. *Id.* at 621 (summarizing that the plaintiff withdrew its breach of oral contract claim before trial, but "two separate counts based on a claim of unjust enrichment" were presented to the jury).

Similarly, in *Wright v. Genesee County*, the Michigan Supreme Court made clear that "unjust enrichment is a cause of action independent of tort and contract liability." 934 N.W.2d 805, 810 (Mich.

2019). The *Wright* court emphasized that compensatory damages are the appropriate remedy for a breach of contract claim, while disgorgement is available only under an unjust enrichment claim because unjust enrichment "doesn't seek to compensate for an injury[,] but to correct against one party's retention of a benefit at another's expense." *Id.*

Here, InterMotive brings a breach of contract claim based on the NDA, a written agreement between the parties. And under Michigan law, "the existence of the express contract" bars pursuing an equitable claim of unjust enrichment. *Morris Pumps v. Centerline Piping, Inc.*, 729 N.W.2d 898, 906 (Mich. Ct. App. 2006). Therefore, the Court overrules InterMotive's objection. The Court adopts the R&R's reasoning and recommendation to exclude Robinson's opinions on disgorgement damages for InterMotive's breach of contract claims.

### ii. Ford's Various Objections Seeking to Exclude Robinson's Opinions

The Court overrules Ford's objections seeking to exclude Robinson's testimony. Ford's arguments are more a challenge to InterMotive's ability to prove its claims than to the admissibility of expert testimony. But the Court agrees with the R&R's concerns that if InterMotive has difficulty proving its trade secret claims, Robinson's testimony could prove unhelpful and unreliable, particularly on additional vehicle sales. ECF No. 177, PageID.6601–03. At such a point, the Court will certainly entertain exclusion, but presently finds exclusion inappropriate.

18

As noted above, an expert's opinion may rely on assumed facts, but "must find some support for those assumptions in the record." *McLean*, 224 F.3d at 801. In *Avery Dennison Corp. v. Four Pillars Enterprise Co.*, the Sixth Circuit found no abuse of discretion where the district court permitted the plaintiff's damages expert to testify on misappropriation of trade secret damages, including a theory based on the defendant's profits. 45 F. App'x 479, 486–87 (6th Cir. 2002). The defendant argued for exclusion under *Daubert* because the expert's opinion relied on "several assumptions" about the defendant's misappropriation. *Id.* at 487. For example, the expert assumed that the defendant misappropriated the plaintiff's trade secrets, used and modified the technology, and saved money by using stolen trade secrets. *Id.* The Court rejected these arguments by pointing out that "[t]he 'facts' challenged by [the defendant] here are not scientific facts to be evaluated under *Daubert*, but are rather the central questions of liability in the case." *Id.*

In *Expeditors International v. Vastera, Inc.*, the court declined to exclude the plaintiff's damages expert who "did not identify a specific value for each individual trade secret in the case," but calculated damages based on the alleged misappropriation of the plaintiff's "Business Process as a whole." No. 01-CV-71000, 2004 WL 6047124, at *7 (E.D. Mich. June 29, 2004). Even so, the court emphasized that the plaintiff has the burden to "provide some correlation between the damages it seeks and the trade secrets misappropriated." *Id.* Moreover,

the court made clear that the expert's opinions on "misappropriation of the Business process as a whole[] will not suffice as proof of the value for each individually misappropriated trade secret," as required to show causation under the Michigan Uniform Trade Secrets Act. *Id.*

Similarly here, Robinson's report assumes Ford's liability to InterMotive for trade secret misappropriation. Robinson also explains the underlying bases for his opinion that Ford's sales of vehicles containing the UIM are a proper measure for unjust enrichment. As the Court found at summary judgment, there are genuine disputes over whether Ford used an actual trade secret in its UIM. ECF No. 65, PageID.1799. Likewise, factual disputes remain over the end date for the parties' confidentiality obligations and the existence of an implied contract. *Id.* at PageID.1793–94. But the burden of proving entitlement to damages (including disputed issues of causation) lies with the parties, "not their individual expert witnesses." *Innovation Ventures, L.L.C. v. Custom Nutrition Lab'ys, L.L.C.*, 520 F. Supp. 3d 872, 884 (E.D. Mich. 2021). In sum, InterMotive must prove every element of its trade secret misappropriation claim and cannot do so by merely relying on Robinson's unjust enrichment analysis. Even so, Ford's concern that InterMotive will fail to meet its burden does not justify exclusion. Consequently, Ford's objections to the R&R's recommendation to allow Robinson's testimony regarding damages is overruled.

### iii. Ford's Objection Seeking to Exclude Robinson's Opinions Based on Unfair Prejudice

The Court overrules Ford's objection based on the allegedly prejudicial nature of presenting evidence of Ford's profits. The Court fails to see how evidence of Ford's profits are substantially more prejudicial than probative under Federal Rule of Evidence 403. Ford cannot "seek to exclude any evidence related to [InterMotive's] damages claims on a theory that there is no evidence of 'actual damages.'" *Cook v. Greenleaf Twp.*, No. 16-14060, 2018 WL 8803937, at *3 (E.D. Mich. Dec. 10, 2018). If necessary, the Court can address admissibility of this evidence as the issue arises in context, but presently declines to exclude Robinson's testimony on prejudice grounds. *See Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975) ("Orders in limine which exclude broad categories of evidence should rarely be employed. A better practice is to deal with questions of admissibility of evidence as they arise.").

### iv. InterMotive's Objection to the R&R's Discussion of Burdens of Proof

The Court overrules InterMotive's objection to the R&R's discussion on assigning burdens of proof for damages from misappropriation from trade secrets. As InterMotive concedes, although it discussed burdens of proof in some detail, the R&R "did not exclude any testimony of Mr. Robinson" based on the Discovery Master's burden-shifting analysis. ECF No. 179, PageID.6676. Therefore, the Court need not adopt or reject

the R&R's recommendations on assigning burdens of proof as dispositive of whether Robinson's testimony is admissible.

### C. Ford's Technical Expert—Scott Andrews

In his Technical Experts R&R (ECF No. 178), Discovery Master Darrow recommends partially excluding Ford's Technical Expert Andrews' opinions on two main grounds. First, the R&R concludes that Ford violated the Court's Clarification Order (ECF No. 142) by using Andrews to conduct a new investigation yielding new evidence that was not disclosed during the initial discovery period. ECF No. 178, PageID.6635–36. The Discovery Master therefore recommends excluding Andrews' opinions that rely on new evidence not disclosed to InterMotive during initial discovery. *Id.* at PageID.6640–41. Second, the R&R recommends excluding Andrews' opinions that rely on hearsay testimony from two individuals he interviewed because Andrews' testimony would impermissibly introduce otherwise inadmissible evidence. *Id.* at PageID.6643–45.

Ford objects to the Discovery Master's grounds for recommending exclusion of Andrews' opinions. Ford argues that it complied with the Clarification Order because Andrews' opinions were based on publicly available information and Ford eventually disclosed the evidence to InterMotive. ECF No. 181, PageID.6742–43. Ford also contends that Rule 703 permits Andrews to rely on hearsay testimony to form his opinions, while affirming that Andrews will not "parrot the statements

22

to the jury." *Id.* at PageID.6743. InterMotive raises a "continuing objection" that the R&R should have excluded Andrews' "legal opinions" that InterMotive claims will confuse a jury. ECF No. 179, PageID.6680.

### i. Ford's Objection to the Exclusion of Andrews' Opinions Based on Newly Discovered Evidence

The Court overrules Ford's objection to the R&R's finding that Ford's failure to comply with the Court's Sanctions and Clarification Orders warrants partial exclusion of Andrews' opinions. Rule 26(a)(1)(A)(ii) makes unequivocally clear that a party must disclose all documents "that [it] has in its possession, custody, or control and may use to support its claims or defenses" even "without awaiting a discovery request." Unless the party in violation of Rule 26(a) can show that its failure to disclose was "substantially justified" or "harmless," the Court may prohibit the party from using the evidence at trial. Fed. R. Civ. P. 37(c)(1); *see also Howe v. City of Akron*, 801 F.3d 718, 747 (6th Cir. 2015) (explaining that "exclusion of late or undisclosed evidence is the usual remedy for noncompliance with Rule 26(a)").

The Sixth Circuit has adopted five primary factors for determining whether exclusion is warranted:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

23

*Howe*, 801 F.3d at 748 (quoting *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396–97 (4th Cir. 2014) (citation omitted)).

Here, the Court's analysis is also influenced by the Sanctions and Clarification Orders it issued to address Ford's prior discovery misconduct. In its Clarification Order, the Court explained that the parties' experts "will need to base their opinions on evidence ***already produced*** in discovery or otherwise available to both parties in the parties in the public sphere." ECF No. 142, PageID.3782 (emphasis added). When the Court issued the Clarification Order in May 2021, it also placed the parties "on notice that the remaining period of discovery is limited." *Id.*

As the R&R recognizes, "the issue is not that Ford withheld the new evidence in discovery." ECF No. 178, PageID.6636. Indeed, the parties agree that Ford produced the new evidence Andrews relied on between April 2021 and June 2021. *Id.* But in describing the documents as those that "torpedo InterMotive's 'trade secret' case," ECF No. 167, PageID.6401, Ford had an obligation to disclose these documents without request under Rule 26(a)(1)(A)(ii). Therefore, regardless of whether the documents were responsive to InterMotive's requests for production issued in March 2021, Ford plainly had a duty to disclose them even without InterMotive's request.

Nevertheless, Ford argues that it was "unaware" of this new evidence until after the initial discovery period, and it had no obligation

24

to produce documents not in its possession at that time. ECF No. 181, PageID.6749–50. But the Court's Sanctions and Clarification Orders did not contemplate the parties conducting additional third-party discovery to gather new evidence that was not previously produced nor publicly available (as material typically relied upon by experts in the field).

Ford objects that these documents did exist in the "public sphere" and it had until June 14, 2021 to produce them. Neither of these arguments are availing. First, while InterMotive could have obtained the documents from the pertinent third parties just as Ford did, InterMotive had no meaningful way of knowing that Ford intended to rely on these types of documents or from which parties Ford might seek them. InterMotive alleges that it does not even consider the third parties at issue to be its competitors and would not have known to rebut Ford's defenses in this way. ECF No. 169, PageID.6449. This type of litigation by surprise is exactly what Rule 26(a) seeks to avoid. With fact discovery long closed, InterMotive could not fairly cure the prejudice caused by Ford's inappropriate tactics.

Second, Rule 26(a)(2)(D) makes explicit that the default timelines for expert disclosures only apply "[a]bsent a stipulation or a court order." The Court's Sanctions and Clarification Orders made clear that the parties' experts could only rely upon documents already disclosed during discovery. These Orders did not authorize an unwarranted extension for

additional discovery and production under the guise of expert disclosures. ECF No. 142, PageID.3781–82.

Therefore, under Rule 37, the Court adopts the R&R's recommendation for excluding those portions of Andrews' opinions that rely on documents not already produced in discovery nor otherwise available to both parties in the public sphere. ECF No. 178, PageID.6640–41. Ford's objection to this part of the R&R is overruled.

### ii. Ford's Objection to the Exclusion of Andrews' Opinions that Rely on Inadmissible Hearsay

The Court sustains Ford's objection to the R&R's recommendation to exclude Andrews' opinions based on hearsay evidence from John Melvin ("Melvin") and Tom Spence ("Spence"). But the Court excludes Andrews' hearsay-based opinions because evidence from these interviews was not already produced in discovery nor publicly available to both parties under the Court's Clarification Order.

Federal Rule of Evidence 703 permits experts to rely on otherwise inadmissible evidence in forming their opinions. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 595 (1993). Although the Sixth Circuit in *Killion v. KeHE Distributors* affirmed excluding an expert report in part because the report contained inadmissible "discussion of interviews," the Court grounded its conclusion in finding "that the expert's analysis is not the kind of specialized knowledge that would assist the jury." 761 F.3d at 593. But even where an expert can rely on otherwise inadmissible

evidence to form their opinions, Rules 702 and 703 "do not, however, permit the admission of materials, relied on by an expert witness, for the truth of the matters they contain if the materials are otherwise inadmissible." *Engebretsen v. Fairchild Aircraft Corp.*, 21 F.3d 721, 728 (6th Cir. 1994).

Here, Andrews' opinions that rely on hearsay are based on specialized, technical knowledge of trade secrets. InterMotive has not shown that experts like Andrews do not reasonably rely upon similar hearsay testimony in forming their opinions. *See Babcock Power, Inc. v. Kapsalis*, 854 F. App'x 1, 8 (6th Cir. 2021). But in line with the Court's exclusion of Andrews' opinions that use documents not already produced in discovery nor publicly available, these hearsay-based opinions must also be excluded. Andrews' report notes that he spoke with Melvin on June 9, 2021. ECF No. 151-2, PageID.4038. And Andrews indicates that he talked to Spence on June 14, 2021, the same day that his expert report was submitted. *Id.* at PageID.4100. For the reasons discussed above, these opinions are based on evidence outside the scope of what the Court's prior Orders contemplated. As such, the Court adopts the R&R's exclusions listed in ECF No. 178, PageID.6645, and Ford's objections are sustained in part and overruled in part.

### iii. InterMotive's Objection Seeking to Exclude Andrews' Legal Opinions

The Court sustains in part InterMotive's objection to the R&R's findings against excluding Andrews' purported legal opinions. For the same reasons discussed above with respect to Rinke's impermissible legal opinions, the Court excludes Andrews' opinions that purport to conclusively recognize Ford's lack of confidentiality obligation under the NDA after November 29, 2013. *See, e.g.*, ECF No. 151-2, PageID.4077–78, ¶¶127–28, PageID.4117, ¶193.

The Court finds Andrews' discussion of the "alleged trade secret" interspersed throughout the report to be a closer question. Ultimately, the Court agrees with the Discovery Master that at this juncture, exclusion is unwarranted. Andrews is permitted to rely on the undisputed legal definitions of "trade secret" and to use the term as he understands its applicability to the technical elements of InterMotive's putative trade secret. The Court reiterates that expert witnesses may not "define legal terms, especially terms that carry a considerable amount of legal baggage." *Woods v. Lecureux*, 110 F.3d 1215, 1220 (6th Cir. 1997). Nor may Andrews definitively state that InterMotive's putative trade secret is not covered by the legal definition. *See Contour Design, Inc. v. Chance Mold Steel Co.*, 794 F. Supp. 2d 315, 321 (D.N.H. 2011) (excluding expert testimony opining "one of [the plaintiff's] claimed trade secrets is not in fact a trade secret"). As with Rinke's purported legal opinions, the

Court does not find it necessary to exclude Andrews' report based on the alleged legal opinions it contains, but will allow the InterMotive to object to the admissibility of such opinions should they be offered at trial.

### D. InterMotive's Technical Expert—Juan Pimentel

The Technical Experts R&R (ECF No. 178) recommends denying Ford's motion to exclude the opinions of InterMotive's Technical Expert Pimentel. ECF No. 178, PageID.6652–53. Ford objects to this conclusion and argues that the R&R "redefined" and "broadened" the scope of InterMotive's trade secret claims in declining to recommend exclusion. ECF No. 181, PageID.6758–59. Similarly, Ford argues that the R&R improperly supports Pimentel's use of a "double standard" for his trade secret and misappropriation opinions. *Id.* at PageID.6759–60. Ford also generally objects to Pimentel's "liability testimony" that the R&R declined to exclude. *Id.* at PageID.6761.

### i. Ford's Objection to the R&R's Summary of Pimentel's Trade Secret Definition

The Court overrules Ford's objections to the R&R's alleged "broadening" of InterMotive's trade secret definition. The Court has carefully reviewed the portions of the Discovery Master's Report where Ford claims that the R&R improperly states the trade secret definition, but finds no instances of the problem Ford identifies. At all times when referring to the trade secret definition, the R&R notes that "***Professor Pimentel*** testifies that the trade secret definition is limited to MS CAN

29

and HS CAN interfaces." ECF No. 178, PageID.6658 (emphasis added). The R&R does not purport to redefine the alleged trade secret itself nor on behalf of the Court; it merely summarizes Pimentel's opinions in the context of Ford's objections on this exact issue. Although Ford claims that the R&R's summaries of Pimentel's testimony are "highly prejudicial to Ford," ECF No. 181, PageID.6759, InterMotive bears the burden of defining its trade secret, and its expert testimony is offered in support of carrying that burden.

Moreover, the Court agrees with the R&R's findings that inconsistencies in the trade secret definition Ford identifies are based exclusively on testimony Ford elicited at Pimentel's deposition. *See id.* at PageID.6655–57. The Court finds that Pimentel's rebuttal report sufficiently demonstrates the factual bases of his opinion and the reliability of the methods and reasoning he applies. To the extent Ford disputes the accuracy of Pimentel's trade secret definition, Ford may impeach Pimentel's credibility and knowledge through cross-examination. *See Morales v. Am. Honda Motor Co.*, 151 F.3d 500, 516 (6th Cir. 1998) (affirming the district court's decision permitting an expert to testify "particularly in light of Defendants' cross-examination exposing [the expert's] lack of familiarity with the given topics"); *Avery Dennison Corp.*, 45 F. App'x at 484 ("[V]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the

30

traditional and appropriate means of attacking shaky but admissible evidence.").

Therefore, the Court will not exclude Pimentel's testimony on these grounds, and Ford's objection is overruled.

### ii. Ford's Objection to the R&R's Summary of Pimentel's "Double Standard" for Trade Secret Status and Misappropriation

For reasons similar to those discussed above, the Court overrules Ford's objections to the R&R's statements that allegedly support Pimentel's improper use of a "double standard" for trade secret status and misappropriation. Again, this purported "double standard" is derived from Pimentel's deposition testimony that Ford elicited. Specifically, Ford asked Pimentel to make a legal conclusion on whether Ford misappropriated a trade secret if it did not use the J1939 capability. ECF No. 181, PageID.6759–60. In summarizing Ford's double standard argument, the R&R identifies Pimentel's deposition testimony and compares it to his rebuttal report. ECF No. 178, PageID.6655–61.

Furthermore, Pimentel's rebuttal report does not even use the term "misappropriate" in any form, and inconsistencies from Pimentel's deposition testimony are not valid grounds for exclusion here. The Court agrees with the R&R's observation that "read in context, it is apparent that any perceived issues [with respect to the alleged double standard] go to legal opinions that Ford elicited, not the trade secret issues in this case." *Id.* at PageID.6657.

31

If Pimentel's deposition testimony or other rebuttal report opinions present inconsistencies on the appropriate trade secret definition and the standard for finding misappropriation, Ford can certainly cross-examine Pimentel on such issues. But the Court declines to exclude Pimentel's testimony on these weight over admissibility grounds.

### iii. Ford's General Objection Seeking to Exclude Pimentel's "Liability Opinions"

In the last sentence of its legal argument section on objections to the R&R, Ford generally objects to the R&R's recommendation against excluding Pimentel's "improper liability opinions." ECF No. 181, PageID.6761. But general objections do not satisfy the party's obligation to make specific objections to the Discovery Master's report under Rule 53. *See Hochstein*, 730 F. Supp. 2d at 717; *Wolverine World Wide, Inc. v. Am. Ins. Co.*, No. 1:19-CV-10, 2022 WL 1222656, at *1 (W.D. Mich. Apr. 26, 2022) ("General objections do not satisfy the objection requirement." (citation omitted)).

In any event, the Court agrees with the Discovery Master's recommendation to deny exclusion. Ford's arguments for excluding Pimentel's "liability opinions" merely reveal its belief that InterMotive cannot prevail on its trade secret counterclaims. The Court finds that Pimentel's testimony is sufficiently reliable and relevant to assist the factfinder in resolving the numerous factual disputes at issue on these claims and defenses. As previously stated, should Pimentel testify in the

form of an improper legal opinion at trial, Ford may re-raise objections at that point.

## IV.   CONCLUSION

For the foregoing reasons, the Court **ADOPTS IN PART and REJECTS IN PART** the Discovery Master's reasoning set forth in the R&Rs (ECF Nos. 177, 178). To the extent that neither party objects to the R&Rs' findings and reasoning, the Court **ADOPTS** unobjected portions of the R&Rs in full. In sum, the Court:

1. **DENIES IN PART and GRANTS IN PART** InterMotive's Motion to Exclude Testimony of **Scott Andrews** (ECF No. 151). The Court excludes Andrews' opinions identified by the R&R in ECF No. 178, PageID.6640–41, PageID.6645. The Court also excludes Andrews' improper legal opinions contained in ECF No. 151-2, PageID.4077–78, ¶¶127–28, PageID.4117, ¶193;

2. **DENIES IN PART and GRANTS IN PART** Ford's Motion to Exclude Testimony of **Mark A. Robinson** (ECF Nos. 152, 154 (sealed)) as to Robinson's opinions on InterMotive's entitlement to disgorgement damages for its breach of contract claims;

3. **DENIES IN PART and GRANTS IN PART** InterMotive's Motion to Exclude Testimony of **Sara Rinke** (ECF No. 155). The Court excludes Rinke's improper legal opinions contained in ECF No. 157 (sealed), PageID.5784; and

4. **DENIES** Ford's Motion to Exclude Testimony of **Juan Pimentel** (ECF No. 163).

**IT IS SO ORDERED.**

Dated:   September   30, 2022

s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE

## Certificate of Service

I hereby certify that this Order was electronically filed, and the parties and/or counsel of record were served on September 30, 2022.

s/A. Chubb
Case Manager