UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY, AND FORD GLOBAL TECHNOLOGIES, LLC,**<br><br>Plaintiffs,<br><br>v.<br><br>**INTERMOTIVE, INC., AND GREGORY E. SCHAFFER**,<br><br>Defendants. | 4:17-CV-11584-TGB-APP<br><br>**ORDER DENYING DEFENDANTS/COUNTER-PLAINTIFFS' MOTION FOR RECONSIDERATION (ECF NO. 183)**<br><br>**AND GRANTING PLAINTIFFS/COUNTER-DEFENDANTS' MOTION FOR CLARIFICATION OR RECONSIDERATION (ECF NO. 184)** |

    This matter is before the Court on motions for reconsideration filed by Plaintiffs/Counter-Defendants Ford Motor Company and Ford Global Technologies, LLC (together, "Ford"), and Defendants/Counter-Plaintiffs InterMotive, Inc. and Gregory E. Schaffer (together, "InterMotive"). ECF Nos. 183, 184. The parties ask that the Court reconsider portions of its September 30, 2022 Order on the Reports and Recommendations ("R&Rs") of Discovery Master Christopher G. Darrow addressing the admissibility of the parties' experts' opinions. ECF No. 182. Ford also requests clarification as to whether Ford's expert Scott Andrews may rely on InterMotive's own documents that InterMotive provided to a third-party.

1

For the reasons explained below, the Court **DENIES** InterMotive's motion for reconsideration (ECF No. 183). The Court **GRANTS** Ford's motion for clarification (ECF No. 184).

## I.     LEGAL STANDARD

This District's Local Rule 7.1(h)(2) states that "[m]otions for reconsideration of non-final orders are disfavored." For non-final orders, a motion for reconsideration may be raised on only three grounds:

> (A)  The court made a mistake, correcting the mistake changes the outcome of the prior decision, and the mistake was based on the record and law before the court at the time of its prior decision;
>
> (B)  An intervening change in controlling law warrants a different outcome; or
>
> (C)  New facts warrant a different outcome and the new facts could not have been discovered with reasonable diligence before the prior decision.

E.D. Mich. LR 7.1(h)(2).

"A motion for reconsideration which presents the same issues already ruled upon by the court, either expressly or by reasonable implication, will not be granted." *Ford Motor Co. v. Greatdomains.com, Inc.*, 177 F. Supp. 2d 628, 632 (E.D. Mich. 2001). Similarly, "[a] motion for reconsideration is not an appropriate method to raise new issues" that were not clearly addressed or briefed by the parties. *United States v. Cordes*, No. 15-10040, 2015 WL 4540453, at *2 (E.D. Mich. July 7, 2015).

## II. DISCUSSION
### A. InterMotive's Request for Reconsideration on Excluding Mark Robinson's Opinions on Breach of Contract Damages

Through its damages expert witness Mark Robinson, InterMotive argues that the proper remedy for its breach of contract claim should be disgorgement of Ford's profits, particularly the entire profit Ford earned on the sale of all the vehicles equipped with the accused device. In response, Ford contends that disgorgement is a remedy for an unjust enrichment claim, but not for breach of contract under Michigan law.

In his R&R, the Discovery Master analyzed remedies for breach of contract damages and agreed with Ford that the proper remedy for a breach of contract claim is compensatory damages (i.e., damages to compensate InterMotive for what it lost, not the profits Ford gained on the sale of all equipped vehicles). The Discovery Master noted that "Michigan courts have rejected using the defendant's gain instead of the plaintiff's loss as the measure of damages for breach of contract." ECF No. 177, PageID.6586–87. The Discovery Master also summarized that "[t]he 'fundamental precept' is that 'the remedy for breach of contract focuses on making the nonbreaching party whole.'" *Id.* at PageID.6586 (quoting *Corl v. Huron Castings, Inc.*, 544 N.W.2d 278, 281 (Mich. 1996)).

InterMotive filed objections to the Discovery Master's R&R. Among other things, InterMotive argued that *B & M Die Co. v. Ford Motor Co.*, 421 N.W.2d 620 (Mich. Ct. App. 1988), supports its position that

3

Michigan law permits disgorgement of the breaching party's profits as a remedy for a breach of contract claim. ECF No. 179, PageID.6670–71. The Court issued an Order carefully considering and overruling InterMotive's objections, and specifically distinguished *B & M* because the plaintiff there proceeded to trial on an unjust enrichment claim, not a breach of contract claim. ECF No. 182, PageID.6802–03.

In its present motion for reconsideration, InterMotive makes five (largely duplicative) arguments as to why the Court erred in concluding that disgorgement of the breaching party's profits is not the proper remedy for a breach of contract claim. None of these arguments warrant altering the Court's decision as to the inadmissibility of Robinson's breach of contract damages opinions.

First, InterMotive argues that in *Structural Dynamics Research Group v. Engineering Mechanics Research Corp.*, 401 F. Supp. 1102 (E.D. Mich. 1975) (Feikens, J.), the Court awarded "disgorgement damages for breach of a written non-disclosure agreement." ECF No. 183, PageID.6824. But in actuality, the *Structural Dynamics* court permitted the plaintiff to recover a reasonable royalty, not complete disgorgement of the defendant's profits. 401 F. Supp. at 1119. Indeed, in that case, the defendant did not have any profits attributable to the breach of the NDA. *Id*. at 1119. Moreover, the court specifically described the reasonable royalty as "compensatory damages." *Id*. at 1120. In other words, because

4

the plaintiff lost the value of a license and the defendant gained the value of a license, the plaintiff was compensated for its loss.

Second, InterMotive argues that Justice Markman's concurring opinion in *Wright v. Genesee County*, 934 N.W.2d 805 (Mich. 2019), identifies disgorgement of the defendant's profits as a remedy for breach contract. Setting aside that the concurrence in *Wright* is not the controlling opinion, the *Wright* majority clearly articulated the differences between breach of contract and unjust enrichment claims, including the respective remedies available for those claims. For example, the *Wright* court stated:

> In a breach-of-contract action, an injured party may seek damages for an injury caused by another party's breach of contractual obligation. As in tort, the remedy for breach may be compensatory damages. That is, remedies are those that arise naturally from the breach or those that were in the contemplation of the parties at the time the contract was made.
>
> Unjust enrichment, by contrast, doesn't seek to compensate for an injury but to correct against one party's retention of a benefit at another expense. And the correction, or remedy, is therefore not compensatory damages, but restitution. Restitution restores a party who yielded excessive and unjust benefits to his or her right rightful position.
>
> Beyond the differences in remedy, unjust enrichment is a cause of action independent of tort and contract liability.

*Id.* at 810 (quotations and citations omitted). InterMotive's reliance on the *Wright* concurrence is thus misplaced, and undermined by the

5

distinction between compensatory and restitution-type damages outlined by the *Wright* majority.

Third, InterMotive rehashes its unpersuasive argument that *B & M* supports disgorgement as a remedy for breach of contract claims. InterMotive argues that although the claim in *B & M* was an unjust enrichment claim, it was a "contract type of claim, albeit a claim based on quasi-contract or contract-in-law." ECF No. 183, PageID.6825. Accordingly, because the *B & M* court allowed a disgorgement remedy on a quasi-contract unjust enrichment claim, InterMotive urges this Court to permit a disgorgement remedy for InterMotive's breach of contract claim. But as the Michigan Supreme Court made clear in *Wright*, quasi-contract claims are not contract claims at all, but rather, unjust enrichment claims: "[q]uasi-contract doctrine is itself a subset of the law of unjust enrichment." 934 N.W.2d at 811. And as noted above, the *Wright* court emphasized that compensatory damages are the appropriate remedy for breach of contract claims, while disgorgement of the breaching party's profits is the appropriate remedy for unjust enrichment claims. *Id.* at 810. Therefore, while the *B & M* court allowed a disgorgement remedy for an unjust enrichment claim, it did not allow a disgorgement remedy for a breach of contract claim.

Fourth, InterMotive argues that none of the cases cited by the Discovery Master and the Court "deal with breaches of non-disclosure agreements," which InterMotive claims "present a special case because

6

there is often no monetary relief for the disclosing party." ECF No. 183, PageID.6826. But InterMotive cites no caselaw for the proposition that Michigan permits alternative remedies for NDAs that are not available for other types of breach of contract claims. Moreover, the fact that the parties' NDA does not specify a remedy in the event of breach merely means that InterMotive may seek compensation for its injuries or the value of what was taken—just as in any other breach of contract case. But the lack of specified remedy alone does not entitle InterMotive to disgorgement of all of Ford's profits on sales of every vehicle equipped with the accused device. *See Wright*, 934 N.W.2d at 810.

Fifth, InterMotive claims that it is now without remedy for Ford's breach of the NDA, meaning the Court's decision effectively permits parties to "breach non-disclosure agreements with impunity in Michigan." ECF No. 183, PageID.6827. But again, in the event of an NDA breach, a plaintiff is entitled to seek compensatory damages for what it lost or the value of what has been misappropriated. For example, as in *Structural Dynamics*, a plaintiff can seek a reasonable royalty even if the defendant did not make any profit. InterMotive's policy-based arguments are without merit.

Because InterMotive has not identified an error in the Court's September 30, 2022 Order, the Court denies InterMotive's motion for reconsideration with prejudice.

## B. Ford's Motion for Clarification or Reconsideration

Ford also requests clarification that the Court's Order does not preclude its technical expert witness Scott Andrews "from relying on InterMotive's own documents that it provided to third-party Kerr Industries but withheld during discovery." ECF No. 184, PageID.6831.

As part of a previous discovery sanction, the Court ordered that the parties' experts "will need to base their opinions on evidence already produced in discovery or otherwise available to both parties in the public sphere." ECF No. 142, PageID.3782. In its *Daubert* motion as to Andrews, InterMotive explained that Andrews relied upon new evidence in his expert report and hearsay testimony from witnesses that Ford did not disclose during the initial discovery period. In response, Ford did not dispute that it relied upon new evidence. Instead, Ford argued that exclusion of Andrews's testimony is not warranted because he relies on evidence "otherwise available to both parties in the public sphere."

The Discovery Master recommended excluding Andrews's opinions based on new evidence that was not publicly available to both parties. The Court overruled Ford's objections and adopted the R&R as to Andrews. Ford now seeks clarification on whether it may introduce evidence of InterMotive's own communications with Kerr Industries, including emails and documents showing that InterMotive presented a device called the "PRPC" to Kerr Industries as early as January 2014. ECF No. 184, PageID.6834–35. Ford contends that "[t]here is no surprise,

8

let alone any unfair surprise" to InterMotive because "these are InterMotive's own documents and knowledge." *Id.* at PageID.6840.

The Court notes that this issue was not clearly identified and argued by the parties to the Discovery Master or the Court in the parties' *Daubert* briefing. In its motion for clarification, unlike in its prior briefing, Ford focuses more narrowly on InterMotive's communications with Kerr Industries, pointing out that (1) it had directed interrogatories to InterMotive on InterMotive's earliest disclosure of the PRPC, but only learned from Kerr Industries after discovery that InterMotive's answers appeared to be incorrect; and (2) when this issue was previously raised in a status conference, Ford understood that the Court would permit Ford to use the information. ECF No. 184, PageID.6834–36; May 7, 2021 Status Conference Tr., ECF No. 143, PageID.3814. In ruling on InterMotive's *Daubert* motion as to Andrews, the Discovery Master and the Court focused on the most apparent dispute between the parties: whether the purportedly "new" evidence upon which Andrews relied was "otherwise available in the public sphere."

The Court now **CLARIFIES** that its Order does not preclude Ford from offering at trial documents or other exhibits that can be shown to have originated from InterMotive and does not prevent Andrews from offering an opinion regarding such materials if they are found to be admissible. InterMotive may of course raise objections at trial to any particular testimony or evidence that Ford may offer, and if such

9

materials are excluded, they may not be the subject of Andrews' expert testimony. If an objection is properly raised, the Court will make a ruling on whether the evidence will be allowed at that time.

### III. CONCLUSION

For the foregoing reasons, the Court **DENIES** InterMotive's motion for limited reconsideration (ECF No. 183) and **GRANTS** Ford's motion for clarification (ECF No. 184).

**IT IS SO ORDERED.**

Dated: January 31, 2023   s/Terrence G. Berg
           TERRENCE G. BERG
           UNITED STATES DISTRICT JUDGE