UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY, AND FORD GLOBAL TECHNOLOGIES, LLC,**<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>**INTERMOTIVE, INC.,** and **GREGORY E. SCHAFER,**<br><br>Defendants/Counter-Plaintiffs. | **4:17-CV-11584-TGB-APP**<br><br>**ORDER ADDRESSING PRETRIAL ISSUES** |

Before the Court are a number of issues that the parties have raised through 11th – hour emails, motions and supplemental briefing. The Court will address each of these last-minute matters individually.

### 1. *Ford's Request to Present a New Theory of Damages*

On Wednesday, October 4, 2023, the Court held a hearing on the parties' motions *in limine*. ECF No. 218. InterMotive had moved to bar Ford from introducing damages evidence on its trademark claims. ECF No. 191. Ford sought to present a reasonable royalty theory of damages through its damages expert, Sara Rinke. In her Report, (ECF No. 156 *SEALED*), Ms. Rinke presents a reasonable royalty calculation derived from Ford's prior trademark licenses to other third parties. However, during fact discovery, Ford had not produced any of the trademark licenses that Ms. Rinke relied upon in her calculation. ECF No. 218, PageID.8183. Consequently, the Court granted InterMotive's motion,

(ECF No. 191), to bar Ford from introducing damages evidence on Ford's trademark claims. ECF No. 218, PageID.8181–8184.

As the October 18 trial date approached, on October 10, 2023, the parties developed additional disputes, and sent lengthy e-mails to the Court's case manager summarizing their positions and requesting a conference with the Court. The Court held a video-teleconference with the parties on October 13, 2023.  One of these disputes pertained to Ford's new position that it wished to introduce a different theory of damages in light of the fact that the Court had barred its evidence of a reasonable royalty.  Ford stated that it now wishes to seek damages on its trademark claims under a theory of unjust enrichment, rather than that of reasonable royalties.  Ford claimed that it had had previously disclosed this unjust enrichment theory through Ms. Rinke's report.

In support of its position, Ford cites two details from the "Summary of Opinions" section on page 12 of Ms. Rinke's Report. ECF No. 156 *SEALED*, PageID.5713. First, Ms. Rinke quotes the damages provision of the Lanham Act, 15 U.S.C. § 1117(a), to state that "Ford may be able to recover '(1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.' " Second, Ms. Rinke explains that she calculated InterMotive's revenues on sales of InterMotive UIMs [Upfitter Interface Modules] for Ford vehicles and mentions in passing that these sales "would have resulted in profits made by InterMotive." *Id.* Ford takes the position that by mentioning the "defendant's profits" category of damages and by referring to InterMotive's profits, it has adequately disclosed a theory of unjust enrichment. The Court must reject Ford's argument.

2

A fair reading of Ms. Rinke's Report is that it discloses a reasonable royalty theory of damages for Ford's trademark claims, nothing more.  In the "Summary of Opinions" section, cited by Ford, Ms. Rinke states that "it is my opinion that the appropriate damages recovery for InterMotive's use of the Ford Marks is a *reasonable royalty*." *Id.* (emphasis added). Indeed, on this very question of whether it intended to disclose  an unjust enrichment theory of damages, Ford explicitly disclaimed such a position in its response to one of InterMotive's motions *in limine*. On pages 3–5 of its brief, (ECF No. 205), Ford notes repeatedly that Ms. Rinke only made a reasonable royalty calculation and that the Report does not offer an opinion on Ford's lost profits or InterMotive's unjust enrichment. ECF No. 205, PageID.7594–7596. As Ford put it: "While Ms. Rinke references revenue numbers for Defendants' profits, her opinion concerns Ford's entitlement to a *reasonable royalty* [emphasis by Ford] based on those sales." ECF No. 205, PageID.7594.

Accordingly, the Court's prior ruling stands: Ford is barred from introducing damages evidence on its trademark claims. It may not now switch to an unjust enrichment theory.

### 2.    *Threshold Showing and Standard of Proof Required for InterMotive's Trade Secret Misappropriation Counterclaim*

During the hearing on the parties' Motions *in Limine*, (ECF No. 218), the Court deferred a ruling on a portion of Ford's motion, (ECF No. 199), to exclude certain damages evidence on InterMotive's counterclaims. Specifically, as to InterMotive's trade secret misappropriation counterclaim, the Court requested additional briefing

regarding Ford's request to exclude evidence of Ford's vehicle profits until InterMotive makes a threshold showing that vehicles were sold because of the trade secret in the accused UIM. ECF No. 218, PageID.8202–8203. In the additional briefing, the Court requested parties address two questions.

The Court's first inquiry was: "Whether disgorgement of profits is a proper measure of damages for the theft of a trade secret claim when the trade secret is only a feature of a component of a larger product and the damages sought are for the profits of the larger product." ECF No. 218, PageID.8202–8203. Both parties cite the damages provision of the Michigan Uniform Trade Secrets Act, (M.C.L. § 445.1904), which provides that a plaintiff may recover "unjust enrichment caused by misappropriation." In its brief, (ECF No. 220), InterMotive argues that a plaintiff can seek a defendant's profits on sales of the larger product "because that is the full way in which the wrongdoer (Ford) profited." ECF No. 220, PageID.8228. In response, Ford argues that a plaintiff can seek a defendant's profits on sales of the larger product "but only when profits are apportioned only to those 'caused by' the misappropriation." ECF No. 222, PageID.8265.

The Court's second question was: "Whether InterMotive is required to make a threshold showing that the trade secret caused customer demand for vehicle sales and, if so, what threshold standard of proof must be met." ECF No. 218, PageID.8203. InterMotive answers this question by saying that it is not required to make a special threshold showing. ECF No. 220. Rather, InterMotive argues that "it is only required to make a showing during its proofs at trial by a preponderance of the

evidence that the UIM contributed to the vehicle sales." ECF No. 220, PageID.8228. Ford argues that InterMotive must satisfy the "entire market value rule" from patent law, (ECF No. 222), and that "the required threshold showing" is "market evidence demonstrating that UIM programmable inputs was the sole reason Ford made vehicle sales." ECF No. 222, PageID.8273-8274.

The parties presented  supplemental briefs on these questions and the Court has carefully considered the cases cited therein. In addition, the Court has considered the damages sections of other authorities—including Section 15.02, subsection [3][c], of 4 Milgrim on Trade Secrets, and Section 45 of the Third Restatement of Unfair Competition—as well as the Discovery Master's Report & Recommendation, (ECF No. 177), from the *Daubert* proceedings, which accurately noted that "the parties have competing views on an area of law that tends to lack consensus bright line rules." ECF No. 177, PageID.6591.

In the event that Ford were to be found liable for misappropriation, the starting point in determining damages must be the damages provision of the Michigan Uniform Trade Secrets Act (M.C.L. § 445.1904). As discussed above, the damages provision provides that a plaintiff may recover "unjust enrichment caused by the misappropriation." This statutory language clearly requires causation between misappropriation and unjust enrichment.  Under InterMotive's unjust enrichment theory, this means causation between Ford's use of the trade secret and Ford's sales of vehicles equipped with the accused UIM. Given the clarity of MUTSA's statutory language, the Court declines to adopt Ford's proposal to apply the rules from  patent law. If it can  be  shown  that  Ford's

misappropriation of the trade secret did, in fact, "cause" Ford to make additional vehicle sales, the Court does not see anything fundamentally incorrect with the conclusion that Ford's vehicle profits represent "unjust enrichment caused by misappropriation."

In addition to the statutory language, the general rule is that the plaintiff has the burden of proving unjust enrichment caused by misappropriation with a reasonable certainty.  A damages award cannot be based on mere speculation. As applied to InterMotive's theory of unjust enrichment, this general rule would require InterMotive to present evidence showing  both the fact that Ford's use of the trade secret enabled Ford to make additional vehicle sales, and a reasonable estimation of the actual amount of additional vehicle sales.

The Court concludes that this general rule governs the issue of burden shifting in this case. InterMotive bears the burden of proving a reasonable estimate of the number of additional vehicles sold because of Ford's use of the trade secret. If InterMotive presents such evidence as to the amount of additional vehicle sales, only then will the burden shift to Ford to prove its setoffs and deductions to arrive at the vehicle profits from sales that were actually caused by the misappropriation of the trade secret. For example, if InterMotive seeks a damages award based on one hundred percent of Ford's vehicle profits, then InterMotive must prove that the trade secret drove one hundred percent of vehicle sales. Likewise, if InterMotive seeks a damages award based on twenty percent of Ford's vehicle profits, then it must prove that the trade secret drove twenty percent of vehicle sales. Unless InterMotive meets its burden of proof in showing that Ford's unjust enrichment was "caused by" the

misappropriation, a damages award based on Ford's vehicle profits would necessarily be speculative and therefore impermissible.

Based on the foregoing, the Court will allow the normal presentation of evidence at trial. However, if InterMotive does not present sufficient evidence to support a damages award based on Ford's vehicle profits, then evidence of Ford's vehicle profits will be excluded as irrelevant. If warranted, Ford may challenge the sufficiency of InterMotive's evidence, and seek to exclude evidence of Ford's vehicle profits, by moving for judgment as a matter of law at the appropriate time.

### 3. *Whether Parties' Remaining Claims and Counterclaims Require Resolution by Jury Trial or by Bench Trial*

On October 11, 2023, Ford—interpreting the Court's request for supplemental briefing as an invitation to submit other unrelated motions—filed a request asking, "all issues in this case be tried to the Court, sitting without a jury." ECF No. 221, PageID.8260. Predictably, this submission induced InterMotive to file a response the next day, opposing Ford's motion. ECF No. 224.

At a status conference held on October 13, 2023, the Court directed the parties to meet and confer to discuss whether they could agree upon the request for a bench trial. The parties could not agree, and so the Court will decide the issue.

In its Motion, Ford argues that "with the Court's [Oct. 4] ruling eliminating Ford's trademark damages…, no legal remedies remain[.]" ECF No. 221, PageID.8256. Ford notes that the Seventh Amendment

right to a jury trial "hinges on whether the underlying claim is considered legal or equitable," and that the jury right exists "when a party seeks legal remedies," but not "when *only* equitable remedies are sought." *Id.* (citing *Chauffeurs, Teamsters & Helpers, Loc. No. 391 v. Terry*, 494 U.S. 558, 564–65 (1990)) (emphasis added). Ford contends that InterMotive "seeks only disgorgement of Ford's profits,"[1] in its counterclaims, and that all of its claims are equitable claims that do not entitle InterMotive to a jury trial.

InterMotive protests such a portrayal of its counterclaims. Specifically, InterMotive points towards its claim of trade secret misappropriation under the Michigan Uniform Trade Secrets Act (MUTSA) to counter Ford's contention that all of its counterclaims sound in equity. ECF No. 220, PageID.8227. The Uniform Trade Secret Act (UTSA), InterMotive notes, was "enacted to preserve trade secret misappropriation as a single tort cause of action." ECF. No 224, PageID.8283 (citing *Newark Grp., Inc.*, 2004 WL 5782100, at *2 (S.D. Ohio April 6, 2004). "Actions in tort are the quintessential actions at law to which the right to a jury trial attaches. From this, it is logical to conclude that seeking statutory damages pursuant to [a State's] Trade Secret[] Act…is a legal cause of action to which the right to a jury trial attaches." *Id.* at *1.

The Court recognizes that, again, the parties have competing views on an area of law that not only lacks any bright line rules, but also

---

[1] Ford provides a table in its Motion, (ECF No. 221, PageID.8258), wherein it lays out each of InterMotive's counterclaims and what Ford believes the respective remedy requested by InterMotive to be.

includes caselaw with contrary, if not wholly contradictory, readings and results.

For instance, in *MSC Software Corp. v. Altair Engineering, Inc.*, Judge Avern Cohn was presented with a motion by the Defendant contending that the Plaintiff's unjust enrichment theory of trade secret misappropriation—the same theory that InterMotive presents here— "cannot be tried to the jury because it is a claim which sounds in equity," therefore, "the court instead must rule on unjust enrichment damages." 2016 WL 1714873 (E.D. Mich. Jan. 7, 2016). The Plaintiff "contend[ed] that it [was] entitled to a jury trial on all aspects of its misappropriation claim, including all of its theories of damages" (i.e., both reasonable royalty and unjust enrichments theories). *Id.* The *MSC* court agreed that Plaintiff was entitled to a jury determination of its unjust enrichment damages for its trade secret misappropriation claim.

The *MSC* court came to this conclusion following consideration of the Seventh Amendment:[2] Claims for "misappropriation of trade secrets historically have been tried to juries, including liability and damages." *Id.* at *2. *Citing Mike's Train House v. Lionel L.L.C.*, 472 F.3d 398 (6th

---

[2] In determining whether a party has a right to a jury trial on a statutory claim, a court must first ascertain whether the statute can be fairly interpreted to provide for a jury trial. If so, the party is entitled to a trial by jury on this statutory claim. If the pertinent statute denies the right to a jury or is silent on the issue, the court must then look to whether the Seventh Amendment grants the party a jury trial. *Id.* at *1 (citing *Feltner v. Columbia Pictures Television, Inc.* 523 U.S. 340 (1998)). "Because MUTSA is silent on the issue of a statutory right to a jury trial, the Court must look to the Seventh Amendment to determine whether [Plaintiff] is entitled to a jury trial on its statutory claim." *Id.*

Cir.2006); *Avery Dennison Corp. v. Four Pillars Entertainment Co.*, 45 Fed.Appx. 479 (6th Cir.2002) (affirming jury verdict for misappropriation where jury was presented with multiple theories of damages); *Mid–Michigan Computer Sys., Inc. v. Marc Glassman, Inc.*, 416 F.3d 505 (6th Cir.2005) (affirming jury verdict based on a reasonable royalty after jury was instructed to consider lost profits, unjust enrichment and reasonable royalty as possible measures of damages). Moreover, the *MSC* court added, "courts considering the issue have concluded that actions seeking damages for the misappropriation of trade secrets are legal in nature for which a right to a jury trial exists." *Id.* at *2 (collecting cases). Hence, the Plaintiff's claim for trade secret misappropriation under the Michigan Uniform Trade Secret Act was a tort action at law and "entitled [Plaintiff] to a jury trial on all aspects of the claim, including damages under an unjust enrichment theory." *Id.*

Taking a completely contrary position, the Federal Circuit—conducting its own historical survey of the development of Seventh Amendment law in *Texas Advanced Optoelectronic Solutions, Inc. v. Renesas, Inc.*—deemed claims for unjust enrichment and disgorgement of profits for trade secret misappropriation to be equitable; and, as such, found the Plaintiff to "ha[ve] no constitutional right to a jury to decide the disgorgement question." 895 F.3d 1304 (Fed. Cir. 2018). Rather, the Defendant was "entitled to a decision on disgorgement by the trial court, with findings of fact and conclusions of law duly entered in accordance with Rule 52." *Id.* at 1319; Fed. R. Civ. P. 52(a)(1).

Claims for trade secret misappropriation, the Federal Circuit elaborated, "were first recognized in the American and English equity courts in the nineteenth century." *TAOS* at 1322. As these types of claims became accepted, "several decisions quickly recognized that a plaintiff properly asserting jurisdiction in equity could also request incidental monetary relief in the form of disgorgement of the defendant's profits based on the defendant's past use of the trade secret." *Id.* at 1323; *E.g., Green v. Folgham*, 57 Eng. Rep. 159, 162-63 (Ch. 1823). The *TAOS* court, however, had not "been pointed to [any] sound basis for concluding that, for this wrong, the law courts would have awarded disgorgement of the defendant's profits[.]" *Id.*

Further proceeding with its Seventh Amendment historical inquiry, the Federal Circuit considered other "appropriate analogues." *Id.* The *TAOS* court acknowledged that, "as a general matter, a tort plaintiff could bring a quasi-contract action in the law courts…and seek monetary restitution." *Id.* "But trade secret misappropriation," the court stated, "is a particular kind of tort—for improper use of intellectual property—and for that kind of tort, the legal quasi-contract restitutionary remedy does not appear to have included awarding disgorgement of the defendant's profits[.]" *Id.*

The *TAOS* court then contemplated the analogues of patent, copyright, and trademark infringement: "Congress never authorized quasi-contract (legal) actions based on patent infringement," and "[n]o legal action for disgorgement of profits was recognized." *Id.* at 1324. The Supreme Court even "observed that 'recovery of profits…had been

allowed in equity both in copyright and patent cases as appropriate equitable relief[.]" *Id.* (citing *Sheldon v. Metro-Goldwyn Pictures Corp.*, 309 U.S. 390, 399 (1940)). And trademark cases soon followed patent cases to "recognize that equity could award disgorgement of profits where equity jurisdiction otherwise would attach[.] *Id.*

Ultimately, the "apparent fact is that for patent infringement, disgorgement of profits was not historically available at law. As for copyright and trademark infringement, [the *TAOS* court] see[s] no support for concluding that disgorgement of profits was available at law for those wrongs." It followed, therefore, that there exists no basis for the court to draw a different conclusion for a request of disgorgement predicated on trade secret misappropriation. *Id.* at 1325.

Notwithstanding the *TAOS* court's in-depth historical analysis and resultant conclusions, other courts have nevertheless concluded, as Judge Cohn did, that a trade secret misappropriation claimant has the right to a jury trial for both the determination of liability[3] and the determination of any unjust enrichment (or disgorgement) award.

Most recently, the Southern District of New York faced a dilemma similar to the one the Court now considers. There, in *Medidata Solutions, Inc. v. Veeva Systems, Inc.,* the Defendant argued that unjust enrichment is an equitable remedy; therefore, "evidence related solely to the question

---

[3] Even in *TAOS v. Renasas*, all parties agreed that the question of liability for trade secret misappropriation was properly tried to the jury. *Id.* at 1319. ("[T]his case, which focuses on the remedy of disgorgement for a wrong (trade secret misappropriation)[,] undisputedly had to be adjudicated by a jury[.]").

of unjust enrichment is irrelevant to the jury and should be excluded at trial." 2022 WL 585726, at *1 (S.D.N.Y. Feb. 25, 2022). The court denied the Defendant's corresponding motion *in limine*. *Id.* Monetary awards for unjust enrichment under the Defend Trade Secrets Act or its state law counterparts derived from the Uniform Trade Secrets Act, the *Medidata* court stated, have consistently been determined by a jury and not the court. *Id.*[4]

In response to the Defendant's citation of *TAOS v. Renasas*, the *Medidata* court remarked:

> *TAOS* is not binding authority, and its conclusion about judge versus jury is dicta and does not discuss the relevant federal statute. Instead, the court posed the constitutional question of whether the plaintiff had a Seventh Amendment right to have the disgorgement award determined by a jury[.] Further, in *TAOS*, the misappropriation claim was based on Texas law, and the court did not address the federal statute.

*Id.* As the issue was one of first impression in the Second Circuit, and "in an abundance of caution," the court resolved to "seek the jury's view of the amount of any unjust enrichment award on the verdict sheet with the

---

[4] As support for this point, the *Medidata* court provides the following examples: "See, e.g., *Epic Sys. Corp. v. Tata Consultancy Servs. Ltd.*, 980 F.3d 1117, 1130 (7th Cir. 2020) (affirming jury award of avoided cost damages under the Wisconsin UTSA as "head start" unjust enrichment damages); *Children's Broad. Corp. v. Walt Disney Co.*, 357 F.3d 860, 865-66 (8th Cir. 2004) (same, construing identical language under the Minnesota UTSA); *Syntel Sterling Best Shores Mauritius Ltd. v. TriZetto Grp., Inc.*, No. 15 Civ. 211, 2021 WL 1553926, at *7 (S.D.N.Y. Apr. 20, 2021) (upholding jury award of avoided costs as unjust enrichment under the DTSA); *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, 495 F. Supp. 3d 687, 709–10 (N.D. Ill. 2020) (same)."

option of determining later whether that verdict [would be] merely advisory." *Id.* at *2.

As the above discussion demonstrates, the law is unsettled on the question of whether a plaintiff seeking unjust enrichment damages for misappropriation of a trade secret is entitled to a jury trial or whether such a remedy is strictly equitable and should be determined by the Court. With such uncertainty, the Court sees wisdom in the approach taken by Judge Schofield in *Medidata.* At trial, subject to the provisions of this Order, the parties may present to the jury evidence relating to unjust enrichment and disgorgement of profits. The Court will retain the option of determining later whether the jury's verdict should be advisory.

### 4.   *Whether the Sequence of Parties' Arguments at Trial should be rearranged.*

In another informal e-mail "brief" submitted a week before trial, InterMotive petitioned the Court's Case Manager as to whether the Court would kindly reverse the order of presentation of evidence so that Defendant InterMotive could go first:

> As you know…InterMotive requested that Ford drop its Lanham Act claims because there are no damages available and an injunction is moot. This would permit a realignment of the parties so InterMotive is the plaintiff. Alternatively, if Ford persists in pressing its Lanham Act claims, InterMotive requested concurrence to an order of proof whereby Ford presents their Lanham Act claims, InterMotive responds and raises its counterclaims, and then Ford responds to the counterclaims. Ford refused[.] Reordering prevents the counterclaim defendant (Ford) from attacking the substance of the counterclaims before they are introduced by the claim proponent as a matter of fundamental fairness and is

consistent with FRE 611(a). InterMotive's counterclaims are unrelated to Ford's claims of trademark infringement and dilution of its Blue Oval trademark. Ford's trial witness list with anticipated timings shows Ford intends to call its engineers and technical expert in its case-in-chief. This demonstrates the need to reorder the proofs if Ford persists in its Lanham Act claims because Ford would be permitted to attack InterMotive's claims prior to InterMotive raising them affirmatively.

Email to Case Manager, re: Case 4:17-cv-11584-TGB-APP – *Ford Motor Company et al v. InterMotive, Inc.* et al, on Tuesday, October 10, 2023, at 9:43 am.

InterMotive attached two cases to support its argument: *Rimini Street Inc. v. Oracle International Corp.*, 2021 WL 4037482 (D. Nev., Sep. 2, 2021) and *Weber Manufacturing Technologies, Inc. v. Plasan Carbon Composites, Inc.*, 2016 WL 4073545 (E.D. Mich., Aug. 1, 2016).

Those cases attest that "the district court has broad discretion in deciding orders of proof." *Weber Manufacturing,* at \*1. (citing *Anheuser-Busch, Inc. v. John Labatt Ltd.*, 89 F.3d 1339, 1344 (8th Cir. 1996); see also *Martin v. Weaver*, 666 F.2d 10113, 1020 (6th Cir. 1981) ("As the 'governor of the trial for assuring its proper conduct,' the district court exercises broad powers to 'determine generally the order in which parties will adduce proof.'").

Using this broad discretion, the Court declines InterMotive's request to realign the order of proof and arguments at trial. This case has been pending since 2017. The Court will not reverse the order of the parties only days before trial is set to begin.

### III. Conclusion

To summarize the Court's decisions regarding the parties' last-minute requests:

(1) Ford may not offer unjust enrichment damages as to its trademark-type claims;

(2) InterMotive bears the burden of showing that the misappropriation of the trade secret caused sales of Ford vehicles and Ford must show any costs or set-offs;

(3) The jury will decide both liability and damages (with the Court retaining the option of making the damage award advisory); and,

(4) InterMotive's request to realign the order of the parties is denied.

**IT IS SO ORDERED.**

Dated: October 17, 2023          s/Terrence G. Berg
                                 TERRENCE G. BERG
                                 UNITED STATES DISTRICT JUDGE