UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY, AND FORD GLOBAL TECHNOLOGIES, LLC,** | **4:17-CV-11584-TGB-APP** |
| Plaintiffs/Counter-Defendants, | HON. TERRENCE G. BERG |
| v. | **OPINION AND ORDER GRANTING INTERMOTIVE'S MOTION FOR INJUNCTIVE RELIEF (ECF NO. 256)** |
| **INTERMOTIVE, INC., AND GREGORY E. SCHAFFER,** | |
| Defendants/Counter-Plaintiffs. | |

Before the Court is Defendants/Counter-Plaintiffs InterMotive, Inc.'s and Gregory E. Schafer's (together, "InterMotive's") motion for injunctive relief against Plaintiffs/Counter-Defendants Ford Motor Company and Ford Global Technologies, LLC (together, "Ford").

Following a trial and jury verdict in InterMotive's favor, finding intentional trademark infringement by Ford, the parties have submitted written briefs arguing whether a permanent injunction is warranted. ECF Nos. 256, 271, 272. Under Local Rule 7.1(f)(2), the Court will decide InterMotive's motion for injunctive relief without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons stated in this opinion and order, the Court will **GRANT** InterMotive's motion for injunctive relief.

1

# I. BACKGROUND

A jury trial was held in this matter from October 18, 2023 to November 1, 2023. Concerning InterMotive's present motion for injunctive relief, the jury found for InterMotive on two of its Lanham Act counterclaims: (1) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114 and (2) unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As outlined in the verdict form, the jury found that InterMotive owns a valid trademark in the product name "Upfitter Interface Module." ECF No. 247, PageID.9408. The Court instructed the jury to find for InterMotive on validity if it proved that InterMotive's registered "Upfitter Interface Module" trademark is not generic (i.e., it is, at least, descriptive) and has acquired distinctiveness through secondary meaning. ECF No. 266, PageID.11142–45. Furthermore, the jury found that Ford's use of the "Upfitter Interface Module" name created a likelihood of confusion regarding the origin of Ford's module and, therefore, constituted trademark infringement and unfair competition under the Lanham Act. ECF No. 247, PageID.9408, 9413. Additionally, the jury found that Ford's infringement was willful, deliberate, and intentional. *Id.* at PageID.9408.

On November 28, 2023, InterMotive filed its present motion for injunctive relief, requesting a permanent injunction based on the jury's finding of liability under Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a). ECF No. 256. In compliance with the February 28, 2024

scheduling order, ECF No. 269, Ford filed its opposition brief on March 20, 2024, and InterMotive filed its reply brief on March 29, 2024. ECF Nos. 271, 272.

## II. LEGAL STANDARDS

The Lanham Act empowers district courts hearing trademark infringement and unfair competition actions "to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable." 15 U.S.C. § 1116. "It is widely recognized that injunctive relief is a customary remedy in actions for trademark infringement and unfair competition." RESTATEMENT (THIRD) OF UNFAIR COMPETITION § 35 cmt. a (AM. LAW INST. 1995). "The decision to grant or deny permanent injunctive relief is an act of equitable discretion by the district court, reviewable on appeal for abuse of discretion." *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006). A district court abuses its discretion when it relies on clearly erroneous findings of fact, improperly applies the governing law, or uses an erroneous legal standard. *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 379–80 (6th Cir. 2006).

## III. DISCUSSION

In its motion for injunctive relief, InterMotive requests a permanent injunction prohibiting Ford from further use of the "Upfitter Interface Module" name and the acronym "UIM" in connection with programmable CAN (Controller Area Network) modules.

## A. Arguments of the Parties

InterMotive argues that a permanent injunction is warranted based on the jury verdict, particularly given the jury's findings that InterMotive's trademark is protectable and Ford's infringement was willful, deliberate, and intentional. In its opposition brief, Ford does not contest InterMotive's position that the jury verdict and the trial record provide a basis of support for injunctive relief. Ford's position is that  it has since changed the name of the at-issue module from "Upfitter Interface Module" to "Vehicle Integration System." A permanent injunction is therefore unwarranted because Ford has stopped using the "Upfitter Interface Module" name, and as such, there is nothing to enjoin.[1]

---

[1] Ford also argues that the Court should defer a ruling on InterMotive's motion for injunctive relief until after deciding Ford's future renewed motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b). To address Ford's argument, the Court directs Ford to the February 28, 2024 scheduling order. ECF No. 269. In the scheduling order, which Ford does not address, the Court informed the parties when it will take up which post-trial motions and why, including that the Court would not, as Ford had proposed, delay ruling on InterMotive's motion for injunctive relief. *Id.* at PageID.11194–96. In its opposition brief, Ford merely string cites cases where district courts exercised their discretion over docket management to defer such a ruling until after deciding other post-trial motions. ECF No. 271, PageID.11308–09. Ford does not cite any authority for the proposition that district courts cannot issue a permanent injunction based on a jury verdict for the plaintiff just because the defendant intends to dispute the jury's finding of liability in a future Rule 50(b) motion.

## B. Analysis

A permanent injunction does not automatically follow from a Lanham Act violation. "According to well-established principles of equity," the Supreme Court has held that "a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief." *eBay*, 547 U.S. at 391. Specifically, the plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Id.*

Below, the Court will consider the four factors in light of the jury verdict, the record at trial, and the current information provided related to the subsequent name change and determine whether the principles of equity support the issuance of a permanent injunction in this case.

### 1. Irreparable Injury

As to the first factor, the Court must consider whether InterMotive will suffer an irreparable injury in the absence of a permanent injunction. As of December 27, 2020, the Lanham Act provides that a plaintiff seeking a permanent injunction "shall be entitled to a rebuttable presumption of irreparable harm" upon proving a violation. 15 U.S.C. § 1116. Even before the statutory presumption was adopted, the Sixth

Circuit held that "no specific finding [regarding] irreparable injury" is necessary for injunctive relief. *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 608 (6th Cir. 1991). As the Sixth Circuit explains, "a finding of irreparable injury ordinarily follows when a likelihood of confusion or possible risk to reputation appears" from trademark infringement or unfair competition. *Id.* (quotation and alteration omitted). "The irreparable injury flows both from the potential difficulty of proof of plaintiff's damages and also from the impairment of intangible values." *Id.* (quotation and alteration omitted). For instance, "irreparable harm exists in a trademark case when the party seeking the injunction shows that it will lose control over the reputation of its trademark because loss of control over one's reputation is neither calculable nor precisely compensable." *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 596 (6th Cir. 2015) (quotations and alterations omitted).

Here, InterMotive does not rest on the statutory presumption of irreparable harm. Instead, InterMotive argues that it suffers irreparable harm through ongoing confusion and reputational and competitive harms. As to ongoing confusion, InterMotive points out that the jury's finding of infringement shows that InterMotive proved a likelihood of confusion between Ford's module and InterMotive's module. InterMotive also maintains that the jury's finding—that Ford's infringement was willful, deliberate, and intentional—shows that Ford intended to cause confusion. Furthermore, InterMotive points to its presentation at trial of evidence

6

of actual confusion. In addition to immediate instances of actual confusion, InterMotive witnesses testified about continuing instances of actual confusion, including an instance in 2023 that resulted in InterMotive losing sales to Ford. ECF No. 255, PageID.10298–99. Together with the fact that the modules are similar and the names identical, InterMotive argues that the evidence of *actual* confusion shows a likelihood of *ongoing* confusion. As to reputational and competitive harms, InterMotive points to Ford's considerable market reach in the upfitter marketplace, as demonstrated by Ford's extensive advertising and tens of thousands of sales. InterMotive argues that Ford's use of the "Upfitter Interface Module" name has "swamped" InterMotive's use of its trademark and resulted in the loss of control over its reputation and the loss of its competitive position.

Based on this evidence, the Court finds that InterMotive will suffer an irreparable injury in the absence of a permanent injunction. Besides relying on the name change, addressed below, Ford does not rebut the statutory presumption of irreparable harm. Likewise, Ford does not rebut InterMotive's above arguments of specific irreparable harm. The Court finds that, in connection with a likelihood of ongoing confusion, particularly given Ford's reach in the upfitter marketplace, InterMotive is being irreparably harmed by losing control over its reputation and competitive position.

As noted above, Ford represents that it has changed the name of the at-issue module to "Vehicle Integration System." Ford represents that it has replaced "Upfitter Interface Module" with "Vehicle Integration System" on its website, in its advertising, and in the manufacturing of the module. Ford argues that because it stopped using the "Upfitter Interface Module" name, there is no existing harm to InterMotive at all—much less irreparable harm. Having considered the record, the Court finds that Ford's efforts related to its product's name change are better directed to a report on Ford's compliance with a permanent injunction, not an argument that there is nothing to enjoin in the first place. 15 U.S.C. § 1116(a) ("Any such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff…a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction.").

Ford's much-ballyhooed name change was only just disclosed to InterMotive and the Court for the first time in its opposition brief. ECF No. 271. As proof of the name change, Ford attached two exhibits, one directed to its website and one directed to the module. ECF Nos. 271-2, 271-3. As to its website, Ford submits a printout of one webpage, where Ford advertises that the 2024 Ford Super Duty has the "Ford Pro Vehicle Integration System 2.0." ECF No. 271-2, PageID.11318. As to the module, Ford submits a document called a "design change request" addressed to Magna, its supplier for the module. ECF No. 271-3. According to the

8

document, on March 11, 2024—nine days before Ford's Response to the Request for an Injunction was filed—Ford submitted a request to Magna to implement the name change on the label attached to the module and in the programming software, user manual, and example materials provided to customers. *Id.* at PageID.11326.[2] Beyond these two exhibits, Ford relies predominately on attorney argument. As InterMotive notes, Ford has not submitted any declarations or other testimony from Ford employees attesting to the sweeping representations that "Ford is not using the term in any ongoing fashion" and "there is no conduct to enjoin." ECF No. 271, PageID.11302, 11307.

---

[2] The Design Change Request contains the following Change Request Information:

**Change Request Information:**

***The name change is from "Upfitter Interface Module" or "UIM" to "Vehicle Integration System" (without any acronym).*** This name change should be made as soon as possible *everywhere* the terms "Upfitter Interface Module" or "UIM" are currently used. We're currently familiar with four places the name must be changed:

1. The sticker on the module
2. The splash screen and programming screens for the module programming software made available to the customer.
3. User Manual for the module programming software
4. The "Examples" paperwork that is provided with the module and related programming software.
5. Any other place where the UIM is being mentioned.

After InterMotive filed its reply brief, Ford submitted a status notice and a supporting declaration of counsel, wherein Ford generally repeats or updates the attorney argument from its opposition brief. ECF Nos. 276, 277. InterMotive, in turn, submitted an objection, arguing that Ford's efforts toward proving the name change are untimely, prejudicial, and insufficient to moot its permanent injunction request. ECF No. 278. Additionally, InterMotive submitted a supporting declaration of counsel, in which InterMotive rebuts Ford's representations about its website. ECF No. 278-1. A search for "Upfitter Interface Module" in the internal search box of Ford's website, InterMotive states, returns results for at least ten and up to seventy places where Ford still uses the name. *Id.* at PageID.11571–72. As an example, InterMotive includes a printout of another vehicle webpage, where Ford advertises that the 2025 Ford F-650 and F-750 have the "available Upfitter Interface Module (UIM)." *Id.* at PageID.11583.

Although the record reflects that Ford has taken steps to implement the name change, Ford's efforts in regard to the name change do not persuade the Court that injunctive relief is not necessary. At the very least, the Court cannot make a factual finding that Ford stopped using the "Upfitter Interface Module" name.

In the case that Ford cites as its leading authority, the district court was reversed on appeal for erroneously finding that the defendant *had ceased* the alleged infringement. *Toys "R" Us, Inc. v. Feinberg*, 26 F. Supp.

2d 639, 642 (S.D.N.Y. 1998) (granting summary judgment of no injunctive relief against the plaintiff after finding that the defendant changed its accused trade names and was unlikely to change them back), *rev'd*, 1999 U.S. App. LEXIS 298330, at *4–*5 (2d Cir. Nov. 10, 1999) (citing evidence of record and reversing because the district court failed to draw all reasonable inferences in the plaintiff's favor).

Ford's additional case citations are likewise unconvincing. In both, the district courts made factual findings that the respective defendants had ceased the alleged infringement on a developed record. *Tenneco Auto. Operating Co. Inc. v. Kingdom Auto Parts*, No. 08-CV-10467, 2008 WL 4388899 (E.D. Mich. Sept. 25, 2008), *aff'd,* 410 F. App'x 841 (6th Cir. 2010) (denying the plaintiff's motion for a preliminary injunction because the defendant produced evidence and witnesses at a hearing to show that it stopped stamping the plaintiff's unique part numbers on its struts, and made particular changes to its marketing policy, packaging, price sheet, and installation instructions intending to prevent confusion); *Tokidoki, LLC v. Fortune Dynamic, Inc.*, 2009 U.S. Dist. LEXIS 65665, at *25, *43 (C.D. Cal. July 28, 2009) (awarding no injunctive relief after a bench trial based on finding of fact that the defendant stopped decorating its shoes with the accused designs and did not intend to use them again).

Even assuming that Ford, as of March of this year, has begun making efforts to stop using the "Upfitter Interface Module" name, there are two reasons that still support a permanent injunction as an

appropriate remedy in this case. First, a permanent injunction is warranted to prevent *future* Lanham Act violations. The Supreme Court has held that "the court's power to grant injunctive relief survives discontinuance of the illegal conduct." *United States v. W. T. Grant Co.*, 345 U.S. 629, 633 (1953). "The purpose of an injunction is to prevent future violations," and "the moving party must satisfy the court that relief is needed." *Id.* "The necessary determination" for granting injunctive relief is that "there exists some cognizable danger of recurrent violation." *Id.* "To be considered are the bona fides of the expressed intent to comply, the effectiveness of the discontinuance and, in some cases, the character of the past violations." *Id.*

Ford surely knows that in trademark cases where the defendant has ceased infringement, denial of injunctive relief often turns on the defendant's showing that it has no intention of returning to its infringing ways. Nonetheless, while representing that it stopped using the "Upfitter Interface Module" name, Ford offers no assurances that it will refrain from using the name in the future for the at-issue module or new versions. Indeed, Ford has firmly stated that it "disputes" the jury's verdict. Ford does not accept that its use of the Upfitter Interface Module name infringes InterMotive's trademark—or even that InterMotive has a valid trademark. In representing that it has replaced "Upfitter Interface Module" with "Vehicle Integration System," Ford speaks pointedly and repeatedly in the past (e.g., "Ford has stopped …") and present (e.g.,

"Today, Ford") tenses. ECF No. 271, PageID.11302. Ford does not warrant that it will not use that name in the future. Nor does Ford offer any details about its internal decision to implement the name change— implying that the reason was to avoid a permanent injunction against Ford using InterMotive's trademark again. Accordingly, the Court cannot make a factual finding that Ford does not intend to resume infringement. Further, against the background where the jury deemed Ford's infringement willful, deliberate, and intentional, the Court finds that "relief is needed" because "there exists some cognizable danger of recurrent violation." *W. T. Grant*, 345 U.S. at 633.

Second, a permanent injunction is warranted to protect InterMotive's trademark rights fully. Just as it offers no guarantee against using "Upfitter Interface Module" in the future, Ford offers no assurances that it will avoid adopting other confusingly similar names as time goes on. Instead, Ford reiterates that any voluntary compliance on its part with InterMotive's trademark rights will be strictly limited to the "Upfitter Interface Module" name. Ford even asserts that it possesses the right to use the acronym "UIM" because "InterMotive's trademark claims have been exclusively directed to 'Upfitter Interface Module.'" ECF No. 271, PageID.11305. According to Ford, "there is no basis for InterMotive's request to enjoin Ford from using 'UIM.'" *Id.* However, as the Sixth Circuit has explained, "an injunctive command that one cease using a word that is 'confusingly similar' to an existing trademark is common in

13

trademark case injunctions." *Wynn Oil Co.*, 943 F.2d at 608. "In fact, against the party bold enough to engage in willful infringement, such a command is necessary to prevent the infringer from making an insignificant change in the mark to avoid the injunction and then using the altered mark in a confusingly similar manner." *Id.* at 609.

### 2. Adequacy of Legal Remedies

As to the second factor, the Court must consider whether remedies available at law, such as monetary damages, would provide insufficient compensation. The Court finds that legal remedies are inadequate to compensate InterMotive for the loss of control over its reputation and the loss of its competitive position. As InterMotive stresses, reputational and competitive harms are difficult to compensate with monetary damages. *Wynn Oil Co.*, 943 F.2d at 608; *CFE Racing Products, Inc.*, 793 F.3d at 596. Moreover, InterMotive's damages expert testified at trial that the complexity of the upfitter marketplace makes it difficult to prove the amount of InterMotive's marketplace damages, such as lost sales. ECF No. 264, PageID.10862–63. The Court finds this testimony persuasive.

### 3. Balance of Hardships

Under the third factor, the Court must determine whether a remedy in equity is warranted, considering the balance of hardships between InterMotive and Ford. When the Court is balancing the parties' respective hardships, the Sixth Circuit has explained that the defendant

cannot claim hardship in refraining from conduct that violates the Lanham Act. *Lorillard Tobacco Co.*, 453 F.3d at 382.

Balancing the hardships between the parties, the Court finds that they tip substantially toward InterMotive and warrant a permanent injunction. If Ford continues using the "Upfitter Interface Module" name, InterMotive will continue to face hardship through ongoing confusion and reputational and competitive harms. InterMotive argues, and Ford does not dispute, that Ford will not face hardship in adopting a different name. As Ford explains, from the beginning, its denials of InterMotive's trademark rights have centered on its position that the "Upfitter Interface Module" name is merely descriptive. To the extent Ford sincerely believes the UIM name is too descriptive, it ought to prefer a more distinctive name that would make a better trademark. Ford has already shown its willingness to adopt different names: in addition to recently changing the name of the at-issue module to "Vehicle Integration System," Ford also used the name "Upfit Integration System" ("UIS") for another newly announced version of the module.

Relevant to the balance of hardships factor, Ford raises the issue of a sell-off period for its current inventory. If the Court issues a permanent injunction, Ford requests a reasonable period to sell the modules already labeled with the "Upfitter Interface Module" name. While acknowledging that it has not yet determined the exact number of modules, Ford represents that its current inventory is limited. Ford argues that

equitable considerations support a sell-off period in this case. As explained below, Ford's arguments are unpersuasive. The Court does not deny the abstract proposition that a sell-off period might be equitable under the right circumstances. But the Court cannot accept Ford's arguments here because Ford does not address them to the particular facts at hand.

Initially, Ford maintains that it acted "proactively and equitably" to implement the name change "[u]pon receiving the verdict." ECF No. 271, PageID.11311. However, according to Ford's submissions, Ford began the design change request for the module on March 11, 2024. ECF No. 271-3. Similarly, the webpage printout is dated March 20, 2024—the same day Ford filed its opposition brief. ECF No. 271-2. Rather than implementing a name-change immediately following the November 1, 2023 jury verdict, Ford's action taken here to change the name appears more likely to have been a response to the Court's scheduling order of February 28, 2024, which made clear that—contrary to Ford's request-- the Court would not delay its ruling on InterMotive's motion for injunctive relief. ECF No. 269, PageID.11194–96. And as noted above, save for its reliance on the name change, Ford does not provide substantive grounds contesting InterMotive's motion for injunctive relief. Ford's timing looks more like a litigation strategy to make arguments available for its opposition brief and avoid an otherwise likely permanent

injunction, not respectful regard for the jury verdict or an immediate desire to avoid consumer confusion.

As to the hardship Ford would face from an immediate permanent injunction, Ford argues that allowing it to sell its current inventory would "avoid wasteful and costly destruction." ECF No. 271, PageID.11310. Yet, again, Ford does not explain why it would face such hardship. Rather than destroying its current inventory, it appears that Ford could simply relabel the modules. Ford does not address the feasibility, or any other aspect, of relabeling the modules. In any event, Ford assumed the risk of such hardship by continuing its infringement for months after receiving the jury verdict.

As to the alleged hardship InterMotive would face from a sell-off period, Ford argues that use of the "Upfitter Interface Module" name on its label is harmless. According to Ford, InterMotive has presented no evidence of actual confusion directed at using the name on the modules alone. Ford argues there is no likelihood of confusing Ford's module with InterMotive's module because a customer would have to buy a module from Ford first—before ever seeing the UIM trademark on the label. While it may be unlikely that an initial vehicle customer would be confused, Ford does not address the likelihood that the same customer's end-user would or would not be confused. But, in any event, because Ford does not address its own hardship, the hardship that InterMotive would face through ongoing end-user confusion cannot be balanced away.

### 4. Public Interest

Under the fourth factor, the Court must consider whether a permanent injunction would disserve the public interest. The Sixth Circuit has described trademark law as "pursu[ing] two related goals — the prevention of deception and consumer confusion, and, more fundamentally, the protection of property interests in trademarks." *Ameritech, Inc. v. Am. Info. Techs. Corp.*, 811 F.2d 960, 964 (6th Cir. 1987). As the Sixth Circuit noted, Judge Lawson of this District "well articulated" a plaintiff's interest in its trademark rights "in stating that the remedial purpose of the injunction must be 'to restore to the plaintiff the rightful control over its mark and eliminate the likelihood of confusion of the defendants' products with those of the plaintiff.'" *CFE Racing Products, Inc.*, 793 F.3d at 596 (quoting district court).

Applying these principles, the Court finds that a permanent injunction would not be against the public interest. A permanent injunction will benefit the public interest by preventing further confusion between Ford's module and InterMotive's and restoring InterMotive's rightful control over its registered "Upfitter Interface Module" trademark.

### C. Summary

Principles of equity support the issuance of a permanent injunction in this case barring continuing infringement. The jury found that InterMotive owns a valid trademark in the product name "Upfitter Interface Module" and that Ford's use of the "Upfitter Interface Module"

name created a likelihood of confusion as to the origin of Ford's module. Among other equitable factors, InterMotive has established that it continues to suffer irreparable harm by losing control over its reputation and its competitive position. Along with preventing further confusion of Ford's module with InterMotive's, a permanent injunction will restore InterMotive's rightful control over its registered "Upfitter Interface Module" trademark. Although Ford represents that it has stopped using the "Upfitter Interface Module" name, Ford does not guarantee that it will not use the name again or that it will not adopt confusingly similar names. Therefore, a permanent injunction is an appropriate remedy to prevent future Lanham Act violations and fully protect InterMotive's trademark rights.

For these and other reasons stated in this opinion and order, the Court will **GRANT** InterMotive's motion for injunctive relief.

### D. Proposed Order

In its motion for injunctive relief, InterMotive requests a permanent injunction prohibiting Ford from further use of the "Upfitter Interface Module" name and the acronym "UIM" in connection with programmable CAN (Controller Area Network) modules. However, InterMotive has not submitted a proposed order and does not otherwise address the specific terms of its requested permanent injunction. The Court will not attempt to define the specific terms of a permanent injunction in the first instance.

Accordingly, the Court hereby **ORDERS** the parties to confer and submit a proposed order or orders according to the following procedure:

1. Within a reasonable time, but no later than fourteen (14) days of this opinion and order:

   - The parties **SHALL MEET AND CONFER** and make reasonable efforts to agree upon the terms of a permanent injunction. The parties may turn to the Court's Discovery Master, Christopher G. Darrow, to facilitate the resolution of any disputes that arise over their proposed terms.

2. Within twenty-one (21) days of this opinion and order:

   - If the parties reach an agreement on the terms of a permanent injunction, InterMotive **SHALL SUBMIT** a stipulated proposed order containing the agreed-upon terms through the Court's proposed order utility.

   - If the parties are unable to agree on the terms of a jointly stipulated permanent injunction, each party **SHALL FILE a** proposed order containing its proposed terms. In their proposed orders, the parties must provide citations to legal authority supporting their proposed terms (to be removed by the Court before entry). Unless the Court orders otherwise, no objections may be filed opposing the other party's proposed order.

## IV. CONCLUSION

For the reasons stated in this opinion and order, InterMotive's motion for injunctive relief is hereby **GRANTED**.

**SO ORDERED.**

Dated: August 15, 2024 s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE