UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY, AND FORD GLOBAL TECHNOLOGIES, LLC,**<br><br>Plaintiffs/Counter-Defendants,<br><br>v.<br><br>**INTERMOTIVE, INC., AND GREGORY E. SCHAFFER,**<br><br>Defendants/Counter-Plaintiffs. | **4:17-CV-11584-TGB-APP**<br><br>HON. TERRENCE G. BERG<br><br>**OPINION AND ORDER DENYING INTERMOTIVE'S MOTION FOR AN INCREASED PROFITS AWARD (ECF NO. 257)** |

Ford Motor Company has been suing, and been sued by, InterMotive, the maker of a device called the "Upfitter Interface Module" or "UIM," for nearly seven years. Ford initially claimed that InterMotive was using the Ford blue oval trademark without permission, but they dropped that claim before the jury could decide it. InterMotive claimed Ford stole its trade secrets connected to the UIM and violated its trademark. InterMotive sought hundreds of millions of dollars in damages on the theory that Ford should fork over the total profits it earned on every Ford truck sold with a suspect UIM device installed. A jury heard these claims in October 2023, and InterMotive won over $10 million in damages. InterMotive wants more, however, and has filed a motion asking the Court to increase the award of profits. In a separate

motion, Ford wants the Court to ignore the jury's verdict and find in favor of Ford on everything. Neither party fully respects or is satisfied with the jury's verdict.

Putting this in more formal language, following a jury trial between Plaintiffs/Counter-Defendants Ford Motor Company and Ford Global Technologies, LLC (together, "Ford") and Defendants/Counter-Plaintiffs InterMotive, Inc. and Gregory E. Schafer (together, "InterMotive"), the jury rendered a verdict for InterMotive on two of its Lanham Act counterclaims and assessed the amount of Ford's profits that InterMotive is entitled to recover as damages.

InterMotive now moves for an increased award of profits under § 35(a) of the Lanham Act. 15 U.S.C. § 1117(a). The parties have submitted written briefs arguing whether an increase to the jury's profits award is warranted. ECF Nos. 257, 270, 273. The Court will decide InterMotive's motion for an increased profits award without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons stated in this opinion and order, the Court will **DENY** InterMotive's motion for an increased profits award.

## I.   PROCEDURAL HISTORY

A jury trial was held from October 18, 2023 to November 1, 2023. With respect to InterMotive's present motion for injunctive relief, the jury found for InterMotive on two of its Lanham Act counterclaims: (1) trademark infringement under § 32 of the Lanham Act, 15 U.S.C. §

2

1114; and (2) unfair competition under § 43(a) of the Lanham Act, 15
U.S.C. § 1125(a).

As set forth in the verdict form, the jury found that InterMotive
owns a valid trademark in the product name "Upfitter Interface Module."
ECF No. 247, PageID.9408. The Court instructed the jury to find for
InterMotive on validity if it proved that InterMotive's registered
"Upfitter Interface Module" trademark is not generic (i.e., is, at least,
descriptive) and has acquired distinctiveness through secondary
meaning. ECF No. 266, PageID.11142–45. Furthermore, the jury found
that Ford's use of the "Upfitter Interface Module" name created a
likelihood of confusion as to the origin of Ford's module and, therefore,
constituted trademark infringement and unfair competition under the
Lanham Act. ECF No. 247, PageID.9408, 9413. Additionally, the jury
determined that Ford's infringement was willful, deliberate, and
intentional. Id. at PageID.9408. Based on its assessment of the amount
of Ford's profits caused by Ford's Lanham Act violations, the jury
awarded InterMotive $0.00 for trademark infringement and $349,867 for
unfair competition. *Id.* at PageID.9408, 9413.

On November 28, 2023, InterMotive filed the present motion,
requesting that the Court increase the jury's total profits award to $15
million under § 35(a) of the Lanham Act, 15 U.S.C. § 1117(a). ECF No.
257. Per the February 28, 2024 scheduling order, ECF No. 269, Ford filed

its opposition brief on March 20, 2024; InterMotive filed its reply brief on April 1, 2024. ECF Nos. 270, 273.

## II.    LEGAL STANDARDS

In cases of trademark infringement and unfair competition, § 1117(a) of the Lanham Act provides that "the plaintiff shall be entitled[,]…subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). The Sixth Circuit has held that "§ 1117(a) grants a district court a great deal of discretion in fashioning an appropriate remedy in cases of trademark infringement." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1191 (6th Cir. 1997). Various rationales, including unjust enrichment, compensation, and deterrence, may support an award of the defendant's profits. *La Bamba Licensing, LLC v. La Bamba Authentic Mexican Cuisine, Inc.*, 75 F.4th 607, 613 (6th Cir. 2023).

The Sixth Circuit has instructed district courts to consider a "wide range of factors" in assessing the equities of a case to determine whether a plaintiff is entitled to an award of a defendant's profits. *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 343 (6th Cir. 2010). These factors include the defendant's intent to deceive, whether sales were diverted, the adequacy of other remedies, any unreasonable delay by the plaintiff in asserting its rights, the public interest in making the misconduct unprofitable, and "palming off" (i.e., whether the defendant

4

used its infringement of the plaintiff's mark to sell its products to the public through misrepresentation). *La Quinta Corp.*, 603 F.3d 327. "The equities may weigh in favor of an award of profits without a showing of willful infringement, but the 'defendant's mental state is a highly important consideration in determining whether an award of profits is appropriate.'" *La Bamba Licensing, LLC*, 75 F.4th at 610 (quoting *Romag Fasteners, Inc v. Fossil, Inc.*, 140 S. Ct. 1492, 1497 (2020)).

The Lanham Act adopts a burden-shifting framework for proving the defendant's profits: "In assessing profits[,] the plaintiff shall be required to prove defendant's sales only[;] defendant must prove all elements of cost or deduction claimed." 15 U.S.C. § 1117(a). The Sixth Circuit has described that the statutory language places a "modest" burden on the plaintiff to prove the defendant's "sales" and then flips the burden to the defendant to identify "any deductions from this number." *Max Rack, Inc. v. Core Health & Fitness, LLC*, 40 F.4th 454, 471 (6th Cir. 2022), *reh'g denied,* No. 20-3598, 2022 WL 3237492 (6th Cir. Aug. 10, 2022). "Both the statute and controlling case law make clear that the burden of apportioning the profits is on the defendant." *House v. Player's Dugout, Inc.*, No. 22-5843, 2024 WL 495998, at *7 (6th Cir. Feb. 8, 2024) (citing *Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 606 (6th Cir. 1991)). "The burden is the infringer's to prove that his infringement had no cash value in sales made by him. If he does not do so, the profits made on sales of goods bearing the infringing mark properly belong to the

5

owner of the mark." *Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co.*, 316 U.S. 203, 206–07 (1942). "There may well be a windfall to the trade-mark owner where it is impossible to isolate the profits which are attributable to the use of the infringing mark. But to hold otherwise would give the windfall to the wrongdoer." *Id.* at 207.

Section 1117(a) provides that a district court "shall assess such profits…or cause the same to be assessed under its direction." 15 U.S.C. § 1117(a). "If the court shall find that the amount of the recovery based on profits is either inadequate or excessive the court may in its discretion enter judgment for such sum as the court shall find to be just, according to the circumstances of the case." *Id.* Section 1117(a) limits a district court's discretionary power to enhance a jury's profits award: "Such sum…shall constitute compensation and not a penalty." *Id.* "This language distinguishes between two types of adjustments." *Max Rack, Inc.*, 40 F.4th at 473. "On the one hand, the court may increase a profits award for a compensatory reason, such as a concern that the award does not encompass the defendant's full profits." *Id.* "On the other hand, the court may not increase a jury's profits award for a punitive reason." *Id.* Such an "improper purpose" might exist, for example, where a court "highlighted the defendant's bad faith as the basis for the increase" or "increased the profits to penalize the defendant for discovery violations, something that other laws and court rules are better equipped to handle." *Id.*

6

### III.   DAMAGES

As to InterMotive's counterclaims, the damages issues in this case have centered on Ford's profits. InterMotive did not seek any actual damages; it only sought disgorgement of Ford's profits under unjust enrichment theories. Ford offers the at-issue module as an option for vehicles on the upfit marketplace. The parties and their damages experts have identified over 90,000 sales where customers have "taken" the option and purchased the at-issue module when buying vehicles. Depending on the counterclaim, InterMotive sought to recover either Ford's "vehicle profits" (i.e., profits on sales of vehicles with the at-issue module) or Ford's "module profits" (i.e., profits on sales of the at-issue module itself).

### A.   Damages Expert Testimony at Trial

At trial, the parties followed the Court's suggestion to stipulate to Ford's vehicle sales and Ford's vehicle profits before calling their damages experts. ECF No. 264, PageID.10846–47. Along with a stipulation that Ford's average per-unit vehicle profit was $8,790, the parties stipulated before the jury that: "From model year 2017 to the present, Ford has sold 92,365 vehicles worldwide with the Ford Upfitter Interface Module installed on the vehicle." ECF No. 265, PageID.10924. On Ford's module profits, the jury heard testimony from InterMotive's damages expert, Mr. Mark A. Robinson, and Ford's damages expert, Ms. Sara D. Rinke. Robinson testified for InterMotive that Ford's profits on

7

sales of 90,488 modules in North America were $15,913,350, meaning that Ford's average per-unit module profit was $176. ECF No. 264, PageID.10869–71. Rinke testified for Ford that Ford's profits on sales of 92,360 modules worldwide were $13,209,300, meaning that Ford's average per-unit module profit was $143. ECF No. 265, PageID.10930.

For InterMotive's trademark infringement and unfair competition counterclaims, Rinke further testified on the portion of Ford's module profits attributable to Ford's use of the "Upfitter Interface Module" name. She explained that neither party had conducted confusion surveys in this case. *Id.* at PageID.10938. Accordingly, Rinke analyzed InterMotive's reach in the upfit marketplace to estimate the portion of Ford's module profits that might have been attributable to confusion. *Id.* at PageID.10938–42. Based on her analysis, Rinke testified that InterMotive spent $60,630 in advertising and made $300,000 in sales. *Id.* at PageID.10937, 10941. Moreover, Rinke testified that InterMotive sold its module to 63 customers out of the 2,000 companies in the upfit marketplace. *Id.* at PageID.10941. After explaining that she used these numbers to determine that InterMotive's market reach was three percent, Rinke testified that Ford's profits on three percent of sales of 81,554 modules in the United States were $349,867—the amount the jury ultimately awarded InterMotive for unfair competition. *Id.* at PageID.10942. Additionally, to illustrate that InterMotive, not Ford, benefited from any confusion, Rinke explained that InterMotive

8

experienced an "uplift" in sales when Ford introduced the at-issue module. *Id.* at PageID.10944. Specifically, Rinke testified that InterMotive's average per-year sales were 867 from 2012–2015 and 7,000 from 2016–2023. *Id.*

## B.   No Previous Challenges to Rinke's Analysis

InterMotive did not challenge Rinke's market reach apportionment analysis at any point before, during, or after the trial.

Ford disclosed Rinke's testimony through her June 14, 2021 rebuttal expert report. ECF No. 157 *SEALED*. In its September 30, 2021 *Daubert* motion, InterMotive moved to exclude Rinke's testimony on several grounds under Federal Rule of Evidence 702 but did *not* raise any issues concerning Rinke's market reach apportionment analysis. ECF No. 155. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589, 592–93 (1993) (holding that Rule 702 requires district courts to act as gatekeepers to protect juries from misleading or unreliable expert testimony by assessing the reliability of the underlying reasoning and methodologies). The same is true of InterMotive's three September 12, 2023 motions in limine to bar Ford from introducing various evidence, exhibits, and witnesses. ECF Nos. 191, 192, 193. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984) (describing that a motion in limine is "any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered").

9

At trial, InterMotive did not object to Ford offering Rinke as a damages expert. ECF No. 265, PageID.10929. When Rinke took the stand, InterMotive neither raised objections to her testimony nor cross-examined her    *Id.* at PageID.10929–49. Instead, InterMotive called Robinson again but did not elicit rebuttal testimony directed to Rinke's market reach apportionment analysis.  *Id.* at PageID.10954–59. Nor did InterMotive address Rinke's testimony in closing arguments.  *Id.* at PageID.11017–47; ECF No. 266, PageID.11116–31.

Before this case was submitted to the jury, InterMotive did not move for judgment as a matter of law on any ground under Federal Rule of Civil Procedure 50(a). *See* Fed. R. Civ. P. 50(a)(1) (authorizing a district court to grant JMOL against a party who "has been fully heard on an issue during a jury trial" when "a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue"), (a)(2) (requiring a party to move for JMOL "before the case is submitted to the jury" and "specify the judgment sought and the law and facts that entitle the movant to the judgment").

## IV.   INTERMOTIVE'S MOTION

In its motion for an increased profits award, InterMotive requests that the Court exercise its discretion to increase the jury's total profits award of $0 for trademark infringement and $349,867 for unfair competition to $15 million. InterMotive relies on the jury's finding that

Ford's infringement was willful, deliberate, and intentional as the foundation for increasing the jury's profits award.

The parties agree that the jury's profits award rests on Rinke's testimony. The jury's verdict shows that it both adopted Rinke's profits calculation and accepted Rinke's market reach apportionment analysis. Likewise, the jury presumably found that Ford met its burden of proving apportionment, that is, that only a portion of Ford's module sales (and therefore profits) were attributable to Ford's use of the "Upfitter Interface Module" name.[1] Moreover, the jury presumably found Rinke's testimony more credible for their profits calculations than Robinson's. The jury also adopted Rinke's profits calculation over Robinson's profits calculation in its unjust enrichment award of $13,209,300 for trade secret misappropriation.

In essence, InterMotive asks the Court to uphold the jury's finding that Ford's infringement was willful but otherwise overturn the jury's profits award and its underlying findings. Among other requests,

---

[1] In addition to an "apportionment," the parties refer to the application of InterMotive's market reach as an "offset" or a "deduction" to Ford's module sales. *See* 15 U.S.C. § 1117(a) (providing that the defendant's burden includes "all elements of cost *or deduction* claimed") (emphasis added).

InterMotive asks the Court to award it all of Ford's module profits.[2] In doing so, InterMotive asks the Court to reject Rinke's market reach apportionment analysis and make its own finding that Ford did not meet its burden of proving apportionment. Moreover, InterMotive asks the Court to adopt Robinson's profits calculation over Rinke's profits calculation. While InterMotive does not address this point, InterMotive also implicitly asks the Court to adopt Robinson's inclusion of all North American sales instead of Rinke's inclusion of only United States sales.

## A.   InterMotive's Arguments

InterMotive moves to increase the jury's profits award on two grounds.

First, InterMotive argues that, under the Lanham Act's burden-shifting framework, the jury's profits award is "inappropriate" because

---

[2] The Court notes that, in this respect, InterMotive is not asking for a multiplier-type enhancement typical of double or treble damages awards. Although InterMotive's requested profits award is forty-three times more than the jury's profits award, the Court disagrees with Ford's contention that InterMotive is seeking an "unprecedented" multiplication. The Sixth Circuit has held that, for purposes of the plaintiff's "modest" burden, "the sale of any unit bearing the infringing mark would have a sufficient connection between the infringement and the sale." *Max Rack, Inc.*, 40 F.4th at 471–72 (quotation omitted). At bottom, InterMotive is seeking to disgorge all of Ford's module profits instead of an apportioned amount corresponding to InterMotive's market reach. In the context of this case, numerical comparisons can cut both ways. Ford's contention that a forty-three times multiplier produces an excessive profits award is simply the inverse of InterMotive's contention that a three percent multiplier produces an inadequate profits award.

Ford did not meet its burden of proving apportionment. As to why Ford did not meet its burden, InterMotive contends that Rinke's market-reach apportionment analysis is "incorrect [and] unsupported." Yet, as noted above, the jury accepted Rinke's analysis and found that Ford met its burden. Even so, InterMotive appeals to the Court's discretionary power under § 1117(a) and urges the Court to make its own finding that Ford did not meet its burden. If the Court finds that Ford did not meet its burden of proving apportionment, InterMotive maintains that—because InterMotive met its burden of proving Ford's module sales—it is entitled to recover all of Ford's module profits.

Second, InterMotive argues that the jury's profits award is "inadequate" in three respects: one directed to Ford's financial data and two directed to the parties. Specifically, InterMotive argues that (i) the jury's profits award is inadequate because Ford underreported its module sales (and therefore profits); (ii) an award of three percent of Ford's module profits is insufficient to compensate for the damage to InterMotive's brand; and (iii) an award of less than all of Ford's module profits is inadequate to deter future misconduct.

### B. Ford's Arguments

Ford reasons that InterMotive waived an argument that Rinke's market reach apportionment analysis did not satisfy Ford's burden of proving apportionment for two reasons: First, Ford argues that InterMotive waived a challenge to the sufficiency of Ford's evidence by

13

not making a Rule 50(a) motion for judgment as a matter of law before this case was submitted to the jury. Second, Ford argues that InterMotive waived a challenge to the substance of Rinke's testimony by not moving to exclude her market reach apportionment analysis under Rule 702 in its *Daubert* motion or at trial.

Ford also asserts that InterMotive's challenges fail on the merits even if they are not waived. To the extent InterMotive is bringing a functional Rule 50 motion, Ford argues that Rinke's testimony satisfied Ford's burden. Specifically, Ford argues that Rinke's market-reach apportionment analysis reliably ties Ford's unjust enrichment to InterMotive's market reach. The premise, Ford explains, is that "the only customers Ford could 'unjustly' gain from using the UIM name are customers InterMotive already reached." ECF No. 270, PageID.11213. Moreover, as a further evidentiary basis for the jury's $349,867 profits award, Ford cites Rinke's testimony that InterMotive spent $60,630 in advertising and made $300,000 in sales. Ford argues that the jury was entitled to believe this evidence and award an amount of Ford's profits consistent with the original value of InterMotive's "Upfitter Interface Module" brand. To the extent InterMotive is bringing a functional *Daubert* motion, Ford argues that InterMotive is improperly asking the Court to pass on matters going to the weight of Rinke's testimony that InterMotive should have addressed on cross-examination.

14

Additionally, Ford disagrees with InterMotive's arguments that the jury's profits award is inadequate. Among other things, Ford argues that the stipulation to Ford's vehicle sales at trial precludes InterMotive from contesting Ford's module sales. Ford also argues that InterMotive is asking the Court to increase the jury's profits award for a punitive reason based on unsupported speculation about future misconduct.

## V.   ANALYSIS

InterMotive's motion presents four questions:

(1) whether to overturn the jury's finding that Ford met its burden of proving apportionment;

(2) whether the jury's profits award is inadequate because Ford underreported its sales;

(3) whether the jury's profits award is inadequate to compensate InterMotive; and

(4) whether the jury's profits award is inadequate to deter Ford.

For the reasons set forth below, to the extent that InterMotive has not waived challenges to the sufficiency of Ford's evidence and the substance of Rinke's testimony, in the interest of fundamental fairness to Ford, the Court will exercise its discretion to uphold the jury's finding that Ford met its burden of proving apportionment. Additionally, because it is bound by the stipulation at trial, the Court declines to increase the jury's profits award on the basis that Ford underreported its module sales. Finding InterMotive's arguments unpersuasive, the Court declines to

increase the jury's profits award on the basis that it is inadequate to compensate InterMotive or to deter Ford. Accordingly, the Court finds that an increase to the jury's profits award is not warranted.

### A. Whether to Overturn The Jury's Finding That Ford Met Its Burden of Proving Apportionment

At trial, Rinke explained that she analyzed InterMotive's reach in the upfit marketplace to measure the portion of Ford's module profits that might have been attributable to confusion. ECF No. 265, PageID.10938–42. Based on her analysis, Rinke testified that InterMotive's market reach was three percent, and Ford's profits on three percent of sales of 81,554 modules in the United States were $349,867. *Id.* at PageID.10941–42. The jury was instructed to consider whether the parties met their burdens under the Lanham Act's burden-shifting framework and assess the amount of Ford's profits caused by Ford's Lanham Act violations. ECF No. 247, PageID.9408, 9413; ECF No. 266, PageID.11146–48, 11163–64. In awarding InterMotive $349,867 for unfair competition, the exact amount that Rinke calculated based on the market-reach theory, the jury clearly accepted her apportionment analysis and found that Ford met its burden of proving that only a portion of Ford's module sales (and therefore profits) were attributable to Ford's use of the "Upfitter Interface Module" name.

In its motion, InterMotive argues that it is entitled to recover all of Ford's module profits because Ford did not meet its burden of proving

apportionment. InterMotive maintains that the jury's profits award is "inappropriate" because Rinke's market-reach apportionment analysis is "incorrect" and "unsupported." Initially, InterMotive questions the relevance of its market reach as a proper measure of damages. According to InterMotive, the plaintiff's market reach only goes to a calculation of the plaintiff's lost profits, not a calculation of the defendant's profits. InterMotive also takes issue with Rinke's determination of its market reach. InterMotive does not dispute that its market reach through customer sales was three percent. However, InterMotive argues that Rinke should have considered the companies that InterMotive reached through advertising, marketing, and promotion, including those that Ford reached on InterMotive's behalf. InterMotive maintains that many more companies in the upfit marketplace knew its brand than bought its module. Similarly, InterMotive argues that Rinke should have considered who InterMotive's customers were. InterMotive hypothesizes that its customers could have been large enough to buy tens of thousands of modules from Ford.

For these reasons, InterMotive asks the Court to overturn the jury's profits award and underlying findings. Specifically, InterMotive asks the Court to reject Rinke's market reach apportionment analysis, make its own finding that Ford did not meet its burden of proving apportionment, and, ultimately, increase the jury's profits award to $15 million. In its opposition brief, Ford argues that InterMotive waived an argument that

17

Rinke's market-reach apportionment analysis did not satisfy Ford's burden of proving apportionment. As Ford points out, at no point before or during the trial did InterMotive seek to exclude Rinke's analysis under Rule 702 in its *Daubert* motion.  Nor, once the evidence was presented, did InterMotive move for judgment as a matter of law under Rule 50(a) on the ground that Ford did not meet its burden. In its reply brief, InterMotive does not substantively address Ford's waiver argument. InterMotive merely relies on the Court's discretionary power under § 1117(a). According to InterMotive, § 1117(a) does not incorporate Rule 50 and Rule 702/*Daubert* requirements. In InterMotive's words, Rule 50's "waiver concept does not apply here," and cases where courts found Rule 702 challenges waived in other contexts "are irrelevant." ECF No. 273, PageID.11447, 11449. Instead, the Court "gets the final say" regardless of "the sufficiency of [Ford's] evidence," "what was or was not presented to the jury," and whether "InterMotive should have challenged Ms. Rinke earlier." ECF No. 257, PageID.10483; ECF No. 273, PageID.11447, 11449, 11451.

In the context of this case and InterMotive's asserted ground for increasing the jury's profits award, the Court is skeptical of InterMotive's contention that § 1117(a) does not incorporate requirements from other parts of the law. For background, Ford filed a motion for a bench trial one week before the trial began. ECF No. 221. Arguing that disgorgement of profits is an equitable remedy that does not confer the right to a jury trial,

Ford requested that "all issues in this case be tried to the Court, sitting without a jury." *Id.* at PageID.8260. InterMotive opposed Ford's motion. ECF No. 224. Arguing that "there is authority that allows a jury to decide the disgorgement issue," InterMotive stated, "InterMotive should be permitted to have a jury hear this case." *Id.* at PageID.8285. After Ford withdrew its motion for a bench trial, the Court, under Fed. R. Civ. P. 39(c)(2), relied on InterMotive's statement to deem it to have consented to trial of the issues in this case by the jury as if a jury trial had been a matter of right. ECF No. 269, PageID.11194. *See*, *e.g.*, *Lexington Furniture Indus., Inc. v. Lexington Co.*, 2023 U.S. App. LEXIS 34154, at *4 (2d Cir. Dec. 26, 2023) (noting that "the question of whether disgorgement is warranted by the equities of the case is ordinarily left to the court" but "disgorgement can also be submitted to the jury by consent of the parties") (citing Fed. R. Civ. P. 39(c)(2)).

Now, InterMotive asks the Court to redecide an issue submitted to the jury consistent with InterMotive's request. In other words, InterMotive seeks a second bite at the apple. While appealing to the Court's discretionary power under § 1117(a), InterMotive does not, for example, ask the Court to decide an additional issue that InterMotive understood was committed to the Court's discretion. Instead, InterMotive asks the Court to overturn the jury's finding that Ford met its burden by substituting its own finding that Ford did not.

Contrary to InterMotive's contention that § 1117(a) does not incorporate Rule 50 requirements, where, as here, the disgorgement remedy was submitted to the jury, the Sixth Circuit's recent *Max Rack* and *House* decisions suggest that parties and courts in the Sixth Circuit understand, first, that a party's argument that the other party did not meet its burden is a sufficiency-of-the-evidence argument, and second, that the proper vehicle is a pre-verdict Rule 50(a) motion for judgment as a matter of law. *Max Rack, Inc.*, 40 F.4th at 471–73 (affirming district court's denial of defendant's Rule 50 & 59 motion to overturn jury's profits award on ground that plaintiff did not prove sales because "this sum had a reasonable basis in the evidence when read against the Lanham Act's burden-shifting approach to proving profits"); *House*, No. 22-5843, 2024 WL 495998, at *6 n.6 (6th Cir. Feb. 8, 2024) (rejecting plaintiff's argument that defendant appealing jury's profits award as excessive because plaintiff did not prove nexus between infringement and revenues "is making a sufficiency-of-the-evidence argument that is also forfeited" because defendant "raised the nexus argument in its oral Rule 50(a) directed verdict motion").

Because InterMotive did not move for judgment as a matter of law under Rule 50(a) on this ground before this case was submitted to the jury, the Court would be fully justified in finding that InterMotive waived an argument that Rinke's market-reach apportionment analysis did not satisfy Ford's burden of proving apportionment. *Cf. Hanover Am. Ins. Co.*

*v. Tattooed Millionaire Ent., LLC*, 974 F.3d 767, 784 (6th Cir. 2020) (holding that district court had "no power" to "allow parties to preserve un-made, nonspecific Rule 50(a) motions beyond the jury's verdict").

Furthermore, by arguing that Rinke's analysis is "incorrect" and "unsupported," InterMotive essentially advances the functional equivalent of a *Daubert* motion. Contrary to InterMotive's claim that § 1117(a) does not include Rule 702/*Daubert* requirements, the Ninth Circuit has held that a party waives a challenge to the substance of an expert's testimony forming the basis of a jury's profits award if the party fails to move to exclude the expert testimony before or at trial. In *Skydive Arizona, Inc. v. Quattrocchi*, 673 F.3d 1105, 1114 (9th Cir. 2012), the Ninth Circuit upheld the district court's decision to maintain the jury's profits award over the defendant's objection to the plaintiff's expert's erroneous calculations, because the defendant had "waived its ability to challenge the substance of [his] testimony by failing to object before, or at, trial." The Seventh Circuit held similarly in *4SEMO.com Inc. v. S. Illinois Storm Shelters, Inc.*, 939 F.3d 905, 911–12 (7th Cir. 2019).In *4SEMO*, the court of appeals upheld the district court's decision to award the full amount of revenues calculated by the plaintiff's expert, as the defendant had "effectively conceded the expert's calculation at trial" by failing to "object to the expert's calculations or introduce countervailing evidence."

Ultimately, the Court need not answer whether InterMotive waived challenges to the sufficiency of Ford's evidence and the substance of Rinke's testimony. Whether InterMotive waived these arguments or not, the Court finds that based on the evidence presented, it would violate principles of fundamental fairness to overturn the jury's finding that Ford met its burden of proving apportionment. As previously mentioned, Ford disclosed Rinke's testimony in its June 14, 2021 rebuttal expert report. InterMotive elected not to challenge Rinke's analysis in the pre-trial, trial, or pre-verdict contexts—it is not fundamentally unfair to require them to abide by the jury's decision accepting that analysis.  In contrast, it would be patently unfair for the Court to effectively penalize Ford by rejecting Rinke's analysis in the post-trial context. For more than three years before the trial, InterMotive essentially told Ford that it was free to present an apportionment analysis based on InterMotive's market reach, understanding that Ford would attempt to convince the jury to award a small fraction of Ford's module profits. It is only reasonable and fair for InterMotive, rather than Ford, to bear the burden of any issues that InterMotive now perceives with Rinke's analysis.

The Court notes that InterMotive relies upon Magistrate Judge Patti's January 31, 2020 order as a separate reason that the jury's profits award is "inappropriate" and Rinke's market reach apportionment analysis is prejudicial. For background, Magistrate Judge Patti denied InterMotive's motion to compel Ford to disclose the identities of

customers who purchased Ford vehicles. ECF No. 76, PageID.2029. At
the January 28, 2020 hearing, InterMotive conceded to Magistrate Judge
Patti's ruling. ECF No. 77, PageID.2049–52. InterMotive explained that
while InterMotive assumed that Ford might use its customer information
to prove offsets, InterMotive did not need Ford's customer information to
prove sales. *Id.* at PageID.2050–51. Thus, InterMotive can claim no
prejudice arising from Magistrate Judge Patti's ruling or from Rinke's
analysis in and of themselves. However, InterMotive maintains that the
lack of access to Ford's customer information rendered Rinke's analysis
prejudicial because InterMotive could not show who Ford's customers
were and investigate whether they were confused.

Whatever prejudice InterMotive suggests arises from its lack of
access to Ford's customer information, it does not provide a basis for
increasing the jury's profits award. At this stage, InterMotive cannot hold
Ford or the Court responsible for the lack of access to Ford's customer
information. Indeed, on September 3, 2020, InterMotive informed the
Court that "after Ford fought all efforts to discover its customer names,
Ford just voluntarily disclosed them" through "the invoice material it
recently produced." ECF No. 111, PageID.3178. In any event,
InterMotive acceded to Magistrate Judge Patti's ruling based on its
assumption that Ford would use its customer information to prove offsets.
As Ford disclosed through Rinke's June 14, 2021 rebuttal expert report,
Ford instead used InterMotive's market reach. If InterMotive perceived

23

any prejudice from being unable to show who Ford's customers were, InterMotive should have promptly reasserted its motion to compel or sought other relief from the Court. Because InterMotive never claimed or attempted to cure any prejudice concerning Rinke's analysis for over three years before trial, the Court will not effectively punish Ford for any prejudice to InterMotive in the post-trial context.

## B.    Whether The Jury's Profits Award is Inadequate Because Ford Underreported Its Sales

InterMotive asserts that an increase to the jury's profits award is warranted due to Ford's underreported module sales (and, consequently, profits). This argument is aimed explicitly at Ford's supplementation of its discovery responses in advance of trial. Ford, despite producing the most up-to-date sales information available on October 15, 2023, just three days before trial, has not provided supporting *invoice data* since September 28, 2020. InterMotive contends that, by presenting sales information without invoice data, Ford has underreported the number of module sales. To support this, InterMotive submits a declaration from Robinson, who had previously analyzed Ford's financial data during expert discovery. ECF No. 257-2. Robinson's analysis suggests that cross-checking the sales information against invoice data would likely reveal that the sales information understates Ford's vehicle sales. *Id.* at PageID.10504–05. Specifically, Robinson states that the sales information understates Ford's vehicle sales by 880 vehicles through

2020 and that, assuming the same relationship from 2021–2023, the understatement would be "much higher now." *Id.*

Ford argues that the stipulation to Ford's vehicle sales at trial precludes InterMotive from challenging the sales information. Ford explains that the sales information served as the basis for the stipulation, such that the parties were stipulating to the sales information itself. It follows, Ford argues, that InterMotive cannot challenge the completeness or accuracy of the sales information to say that Ford underreported its module sales.[3] Ford also contends that the Court should not give any weight to Robinson's declaration because it was prepared after trial to create a "sham" fact issue.

The Court agrees with Ford. The parties stipulated before the jury that: "From model year 2017 to the present, Ford has sold 92,365 vehicles

---

[3] InterMotive also argues that an increased profits award is warranted because Ford has a history of underreporting sales in violation of Court orders. Without elaboration, InterMotive directs the Court to InterMotive's September 30, 2021 *Daubert* motion (ECF No. 155). ECF No. 257, PageID.10489–90. There, InterMotive argued that Ford's late disclosure of 1,600 police vehicle sales violated the Court's March 16, 2021 sanctions order (ECF No. 128). ECF No. 155, PageID.5421. However, as InterMotive acknowledged at the time of its *Daubert* motion, the Court had already addressed the police vehicle sales at the May 7, 2021 status conference. *Id.* The Court ruled that Ford's late disclosure did not warrant punishment because Ford promptly investigated and cured its previous non-disclosure. ECF No. 143, PageID.3828, 3831. Accordingly, the Court finds that this past instance of Ford's late disclosure of sales does not provide a basis for finding that Ford's sales are presently understated.

worldwide with the Ford Upfitter Interface Module installed on the vehicle." ECF No. 265, PageID.10924. The Sixth Circuit has held that stipulations voluntarily entered by the parties are binding on district courts. *Fed. Deposit Ins. Corp. v. St. Paul Fire & Marine Ins. Co.*, 942 F.2d 1032, 1038 (6th Cir. 1991). Accordingly, regardless of the merits of InterMotive's argument, the Court is bound by the stipulation and cannot make a factual finding that the sales information understates Ford's vehicle sales.

The Court notes that InterMotive argues in its reply brief that the stipulation is not binding with respect to Ford's module sales. However, in discussing the stipulation at trial, the parties essentially confirmed that the number of Ford's vehicle sales represents the number of Ford's module sales. InterMotive began the discussion by stating as much, and the parties proceeded to explain that their damages experts would only need to testify on Ford's module profits:

> THE COURT: Well, what about the UIM side of it?
>
> [INTERMOTIVE'S COUNSEL]: I don't know why we couldn't reach a similar — a similar stipulation. I mean it's — it's — they say that the number of UIMs is the same as the number of the vehicles, and maybe there's a — there's a dispute about the profit.
>
> [FORD'S COUNSEL]: There's a dispute on the profit on the UIM, Your Honor, as well as the —

26

the method of damages analysis based on the UIM.
So there would be a little bit on that front.

THE COURT: Well, it sounds like we should call
[Robinson] to testify at least about the calculation
of profits regarding the sales of the UIM.

[INTERMOTIVE'S COUNSEL]: Okay. We can do
that.

THE COURT: All right. Then let's — let's do that.
So let's bring in the jury.

ECF No. 264, PageID.10852.

Because the Court cannot make a factual finding that the sales information understates Ford's vehicle sales, and the same is true for Ford's module sales, the Court declines to increase the jury's profits award on the basis that Ford underreported its module sales.[4]

## C.   Whether The Jury's Profits Award is Inadequate to Compensate InterMotive

InterMotive argues that an increase to the jury's profits award is warranted because an award of three percent of Ford's module profits is

---

[4] Because the Court declines to increase the jury's profits award, the Court need not resolve the additional dispute between the parties concerning whether Ford's production of the sales information alone represents a violation of Magistrate Judge Patti's June 17, 2020 sanctions order. ECF No. 106, PageID.3064–65, 3067 (granting InterMotive's motion to compel Ford to produce invoice data on top of sales information because "InterMotive is entitled to check the figures provided against actual sales invoices, i.e., to test both the veracity and accuracy of these figures").

27

inadequate to compensate InterMotive for the damage to its brand. But InterMotive offers little more than a bare assertion of this argument. For example, InterMotive does not address or cite any evidence of record to demonstrate the original value of its "Upfitter Interface Module" brand. Nor does InterMotive explain why the jury's $349,867 profits award is inadequate to achieve compensation, much less why InterMotive's requested $15 million profits award is necessary. Accordingly, the Court declines to increase the jury's profits award on the basis that it is inadequate to compensate InterMotive for the damage to its brand.

### D. Whether The Jury's Profits Award is Inadequate to Deter Ford

InterMotive argues that an increase to the jury's profits award is warranted because an award of less than all of Ford's module profits is inadequate to deter Ford from future misconduct. As to the need for additional deterrence, InterMotive cites various trial exhibits to allege that Ford intended to sell more vehicles through its wrongdoing. Assuming that Ford did, in fact, sell more vehicles, InterMotive maintains that Ford is getting a windfall from vehicle profits. InterMotive argues that "it is simply not just and fair that Ford pays so little of its profits for … the windfall Ford received for its bad acts." ECF No. 257, PageID.10481. *See also id.* at PageID.10490 ("It is not fair for Ford to return only 3% of the profits it wrongly earned from module sales, and nothing from vehicle profits.") (capitalization omitted). According to

InterMotive, Ford "will keep doing what it is doing" and "will gladly steal from others if it only has to disgorge a small fraction of its ill-gotten gains." *Id.* at PageID.10494.

Ford argues that InterMotive's requested increase is improper for two reasons. First, Ford argues that InterMotive should be judicially estopped from asking the Court to award Ford's vehicle profits because InterMotive never sought to recover them for trademark infringement and unfair competition. Second, Ford argues that InterMotive is asking the Court to increase the jury's profits award for a punitive reason. Ford cites the Sixth Circuit's guidance that such an "improper purpose" might exist where a court "highlighted the defendant's bad faith as the basis for the increase." *Max Rack, Inc.*, 40 F.4th at 473. Ford argues that, here, InterMotive only offers unsupported speculation about future misconduct, such that an increase on this basis would represent a similarly improper purpose.

The Court notes that InterMotive's argument raises the question of whether deterrence is a proper basis for increasing a jury's profits award. Section 1117(a) provides that an award of the defendant's profits is "subject to the principles of equity" and that an increased profits award "shall constitute compensation and not a penalty." 15 U.S.C. § 1117(a). The Sixth Circuit has "suggested, though perhaps not held," that deterrence "can support an award of profits under the Lanham Act." *La Bamba Licensing, LLC*, 75 F.4th at 613 (identifying unjust enrichment,

29

compensation, and deterrence as "the commonly recognized, non-punitive, theories of trademark recovery"). However, the parties do not cite, and the Court has not identified, any cases where the Sixth Circuit has addressed whether deterrence is a non-punitive reason for *increasing* a jury's profits award, particularly where, as here, the jury found that the defendant met its burden of proving apportionment.

Assuming, *arguendo*, that deterrence is a proper basis for increasing a jury's profits award, the Court finds that InterMotive has not demonstrated a need for additional deterrence in this case. As distinguished from trademark infringement and unfair competition, InterMotive's argument is directed to Ford's overall "wrongdoing" against InterMotive. As to its contention that Ford is getting a windfall from vehicle profits, InterMotive's allegation resembles its allegation that Ford's use of InterMotive's programmable input trade secret drove additional vehicle sales, not the facts of this case concerning Ford's use of the "Upfitter Interface Module" name. For example, InterMotive argued to the jury in closing arguments that "you've seen lots of evidence of the benefit of the trade secret" and "you've seen evidence of Ford's repeated advertising of the feature" where Ford was "touting the benefit of the programmable input feature in their module to sell more vehicles." ECF No. 266, PageID.11124–25. Ultimately, InterMotive did not persuade the jury that any of Ford's vehicle profits were caused by trade secret misappropriation, much less trademark infringement and unfair

competition. To the extent InterMotive's argument relies on the logic that the jury's $349,867 profits award is inadequate to achieve deterrence because Ford "will gladly steal from others" in pursuit of a windfall from vehicle profits, the Court agrees with Ford that InterMotive only offers unsupported speculation. Accordingly, the Court declines to increase the jury's profits award on the basis that it is inadequate to deter Ford from future misconduct.

## VI.   CONCLUSION

For the reasons stated in this opinion and order, the Court will **DENY** InterMotive's motion for an increased profits award.

**SO ORDERED.**

Dated: August 15, 2024   s/Terrence G. Berg
TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE