UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY and FORD GLOBAL TECHNOLOGIES, LLC,**<br><br>Plaintiffs/Counter-Defendants,<br><br>vs.<br><br>**INTERMOTIVE, INC. and GREGORY E. SCHAFFER,**<br><br>Defendants/Counter-Plaintiffs. | 4:17-CV-11584-TGB-APP<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART INTERMOTIVE'S MOTION TO AMEND THE FINAL JUDGMENT**<br>**(ECF NO. 285)** |

Following a jury trial in this matter between Plaintiffs/Counter-Defendants Ford Motor Company and Ford Global Technologies, LLC (together, "Ford") and Defendants/Counter-Plaintiffs InterMotive, Inc. and Gregory E. Schafer (together, "InterMotive"), the jury rendered a verdict for InterMotive on several of its counterclaims, assessed the amount of Ford's profits that InterMotive is entitled to recover as damages, and then the Court entered final judgment on the jury verdict.

Presently before the Court is InterMotive's motion to amend the final judgment entered on the jury verdict under Federal Rule of Civil Procedure 59(e). The parties have submitted written briefs explaining their positions on whether InterMotive is entitled to its requested amendments to the final judgment. ECF Nos. 285, 291, 293. Pursuant to

1

Local Rule 7.1(f)(2), the Court will decide InterMotive's motion without a hearing. E.D. Mich. LR 7.1(f)(2). For the reasons stated in this opinion and order, the Court will **GRANT IN PART** and **DENY IN PART** InterMotive's motion to amend the final judgment.

## I.     RELEVANT PROCEDURAL HISTORY

This case was tried before a jury from October 18, 2023 to November 1, 2023. Because Plaintiff Ford dropped its claim after the evidence was presented, Defendant InterMotive's counterclaims were submitted to the jury. These counterclaims included: (i) trademark infringement under Section 32 of the Lanham Act, 15 U.S.C. § 1114; (ii) false advertising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a); (iii) breach of contract; (iv) trade secret misappropriation under the Michigan Uniform Trade Secrets Act (the "MUTSA"), M.C.L. §§ 445.1901-1910; (v) unfair competition under Michigan law; and (vi) unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

A jury verdict was rendered on November 1, 2023, and entered on November 2, 2023. ECF No. 247. With respect to InterMotive's present motion to amend the final judgment, the jury found for InterMotive on its counterclaim for trade secret misappropriation under the MUTSA. As set forth in the verdict form, the jury found that "the use of programmable inputs in a device like the Upfitter Interface Module" was InterMotive's trade secret, and that Ford misappropriated InterMotive's trade secret. *Id.*, PageID.9411. Based on its assessment of the amount of

2

Ford's profits that were caused by Ford's use of the trade secret, the jury awarded InterMotive $13,209,300 for trade secret misappropriation. *Id.*

Additionally, the jury found for InterMotive on two of its Lanham Act counterclaims: (1) trademark infringement under Section 32 of the Lanham Act; and (2) unfair competition under Section 43(a) of the Lanham Act. As set forth in the verdict form, the jury found that InterMotive owns a valid trademark in the product name "Upfitter Interface Module." *Id.*, PageID.9408. The jury was instructed to find for InterMotive on validity if it proved that InterMotive's registered "Upfitter Interface Module" trademark is at least descriptive (i.e., is not generic) and has acquired distinctiveness through secondary meaning. ECF No. 266, PageID.11142-11145. Furthermore, the jury found that Ford's use of the "Upfitter Interface Module" name created a likelihood of confusion as to the origin of Ford's module, and therefore constituted trademark infringement and unfair competition under the Lanham Act. ECF No. 247, PageID.9408, 9413. The jury also found that Ford's infringement was willful, deliberate, and intentional. *Id.*, PageID.9408. Based on its assessment of the amount of Ford's profits that were caused by Ford's Lanham Act violations, the jury awarded InterMotive $0 for trademark infringement and $349,867 for unfair competition. *Id.*, PageID.9408, 9413.

On September 25, 2024, the Court entered final judgment on the jury verdict. ECF No. 282. After concluding that allowing InterMotive to

3

separately recover the smaller amount the jury awarded for unfair competition would constitute a double recovery of Ford's profits, the Court ordered that InterMotive shall be allowed to recover only the larger amount the jury awarded for trade secret misappropriation. *Id.*, PageID.11652.

## II. INTERMOTIVE'S MOTION

InterMotive's motion to amend the final judgment entered on the jury verdict is directed to: (1) damages for trade secret misappropriation under the MUTSA, which the jury awarded in the amount of $13,209,300; and (2) damages for unfair competition under the Lanham Act, which the jury awarded in the amount of $349,867. In its motion, InterMotive asks the Court to make three amendments to the final judgment under Federal Rule of Civil Procedure 59(e): (1) allowing InterMotive to separately recover the jury's award for unfair competition under the Lanham Act, which InterMotive stylizes as a request to "restore the Lanham Act remedies"; (2) adding an award of prejudgment interest on the jury's award for trade secret misappropriation under the MUTSA; and (3) adding an award of prejudgment interest on the jury's award for unfair competition under the Lanham Act.

## III. LEGAL STANDARDS

Following entry of a judgment, Federal Rule of Civil Procedure 59(e) provides for a party to file a motion to alter or amend the judgment. Fed. R. Civ. P. 59(e). Generally, a district court may grant a motion to

alter or amend the judgment "if there is a clear error of law, newly discovered evidence, an intervening change in controlling law, or to prevent manifest injustice." *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999) (citations omitted). Moreover, a motion for prejudgment interest filed after the entry of judgment constitutes a motion to alter or amend the judgment under Rule 59(e). *Osterneck v. Ernst & Whinney*, 489 U.S. 169, 175 (1989).

### IV. ANALYSIS

Below, the Court will address InterMotive's three requests to amend the final judgment in light of the record at trial and the applicable law, and determine whether InterMotive is entitled to the requested amendments.

#### A. Separate Recovery for Unfair Competition

InterMotive's first requested amendment to the final judgment is to allow InterMotive to separately recover the jury's award for unfair competition under the Lanham Act, which InterMotive stylizes as a request to "restore the Lanham Act remedies." As set forth in the verdict form, the jury awarded InterMotive $13,209,300 for trade secret misappropriation under the MUTSA and $349,867 for unfair competition under the Lanham Act. ECF No. 247, PageID.9411, 9413. With respect to the final judgment, InterMotive argues that the Court made a clear error of law in concluding that allowing InterMotive to separately recover the amount the jury awarded for unfair competition would constitute a

5

double recovery of Ford's profits. The Court reached this conclusion because the amount the jury awarded for trade secret misappropriation already represents all of Ford's profits. As stated in the final judgment:

> The Court finds that to prevent double or duplicative recovery of Ford's profits for both trade secret misappropriation and unfair competition under the Lanham Act, InterMotive shall not separately recover the jury's award of $349,867.00 for unfair competition under the Lanham Act because that amount represents a percentage of Ford's profits which has already been included in the $13,209,300 award for trade secret misappropriation representing the full amount of Ford's profits.

ECF No. 282, PageID.11652.

To elaborate, as damages for its counterclaims, including but not limited to its at-issue counterclaims for trade secret misappropriation and unfair competition, InterMotive sought only disgorgement of Ford's profits. In seeking coextensive damages measured by Ford's profits, InterMotive did not additionally, or alternatively, seek actual damages (e.g., InterMotive's lost profits) or any other measure of damages (e.g., a reasonable royalty). As well, in connection with awarding damages, the jury was instructed to separately assess the amount of Ford's profits that InterMotive was entitled to recover, without regard to duplication or overall recovery:

> In answering questions about damages, answer each question separately. Do not increase or

6

> reduce the amount in one answer because of your answer to any other question about damages. Do not speculate about what a party's ultimate recovery may be, may or may not be. Overall recovery, if any, will be determined by the Court when it applies the law to your answers at the time of judgment.

ECF No. 266, PageID.11164-11165.

In light of the record at trial, it is apparent that the jury awarded duplicative amounts of Ford's profits. In particular, the jury awarded the entirety of Ford's profits on duplicative numbers of Ford's sales. The parties stipulated before the jury that: "From model year 2017 to the present, Ford has sold 92,365 vehicles worldwide with the Ford Upfitter Interface Module installed on the vehicle." ECF No. 265, PageID.10924. In the discussion of the stipulation, the parties confirmed that the number of Ford's vehicle sales represents the number of Ford's module sales. ECF No. 264, PageID.10852. With respect to Ford's profits, the verdict form shows that the jury adopted the calculations of Ford's damages expert, Ms. Sara D. Rinke. The amount the jury awarded for trade secret misappropriation, $13,209,300, is the exact amount Rinke calculated for the entirety of Ford's profits on sales of 92,360 modules worldwide. ECF No. 265, PageID.10930. The amount the jury awarded for unfair competition, $349,867, is the exact amount Rinke calculated for the entirety of Ford's profits on three percent of sales of 81,554 modules in the United States. *Id.*, PageID.10941-10942. Accordingly, it

7

is apparent that the jury's unfair competition award, which covers Ford's profits on a subset of Ford's sales (i.e., United States sales), is duplicative to the jury's trade secret misappropriation award, which covers Ford's profits on all of Ford's sales (i.e., worldwide sales).

InterMotive acknowledges that, under the doctrine of double recovery, InterMotive is not entitled to recover the same damages twice for the same injury. As explained by the Sixth Circuit: "A party is not entitled to recover twice for the same loss, even if the party would otherwise be able to recover for that loss under separate theories of liability." *Johnson v. Howard*, 24 F. App'x 480, 484–85 (6th Cir. 2001) (citing *General Tel. Co. v. EEOC*, 446 U.S. 318, 333 (1980); *Bradley v. City of Pontiac*, 906 F.2d 220, 224 (6th Cir. 1990)). InterMotive argues that, here, whether Ford is already disgorging all of its profits is irrelevant because trade secret misappropriation and unfair competition are different injuries. Furthermore, according to InterMotive, its two counterclaims have different remedies. Specifically, InterMotive argues that disgorgement of Ford's profits for trade secret misappropriation would compensate InterMotive for the theft of its technology, while disgorgement of Ford's profits for unfair competition would compensate InterMotive for the damage to its brand. Because they compensate InterMotive for different injuries arising from different wrongs, InterMotive argues that it is entitled to recover both the jury's trade secret misappropriation award and the jury's unfair competition award.

8

In support of its argument, InterMotive cites the Sixth Circuit's *La Quinta* decision. In *La Quinta*, the plaintiff, a hotel franchisor, sued the defendant, a hotel franchisee, for breaching the franchise agreement and for unauthorized holdover use of the plaintiff's trademarks after termination of the franchise agreement. *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 332 (6th Cir. 2010). After granting summary judgment in the plaintiff's favor, the district court awarded both liquidated damages for breach of contract and treble damages for willful trademark infringement during the holdover period. *Id.* at 333–34. The contractually-defined liquidated damages, which were awarded for losses arising from early termination, and the royalty-based trademark infringement damages, which were awarded for holding over after termination, included a common element of lost royalties. *Id.* at 34--45. However, the reason that the Sixth Circuit upheld the awards was that the plaintiff's claims for breach of contract and trademark infringement "are distinct actions, based on separate conduct and addressing disparate harms." *Id.* at 345. Moreover, in upholding the awards, the Sixth Circuit noted that the trademark infringement award excluded royalties on some of the defendant's revenues attributable to its use of the plaintiff's trademarks. *Id.* at 343. Additionally, the Sixth Circuit concluded that the liquidated damages award was not a double recovery because the awarded amount fell short of the royalties that the

9

plaintiff would have received over the entire remaining term of the franchise agreement. *Id.* at 345.

As InterMotive points out, a district court in the Sixth Circuit has cited *La Quinta* to hold that "an award of damages [measured by the plaintiff's lost sales] for both breach of contract and trademark infringement does not constitute an impermissible double award where the damages are directed at two different sets of wrongs." *Matco Tools Corp. v. Urquhart*, 435 F. Supp. 3d 802, 814 (N.D. Ohio 2020) (quotation and alteration omitted) (citing *La Quinta*, 603 F.3d at 344). However, while it is hornbook law that a party is not entitled to recover twice for the same injury, the Court does not read *La Quinta* as implying a corollary rule that the existence of different injuries arising from different wrongs automatically entitles a party to recover duplicative damages. Rather, the Sixth Circuit set forth a detailed, evidence-driven analysis explaining why the plaintiff's recovery should not be limited to liquidated damages for breach of contract, particularly given that neither the liquidated damages award nor the trademark infringement award alone adequately compensated the plaintiff for the true extent of its injuries. *La Quinta*, 603 F.3d at 343–45.

Here, by contrast, InterMotive chose to seek only coextensive damages measured by Ford's profits, and it turned out that the jury awarded all of Ford's profits for trade secret misappropriation in the amount of $13,209,300. Notably, InterMotive does not cite any evidence

or offer any supporting analysis for its assertion that, in the absence of the duplicative $349,867 amount the jury awarded for unfair competition, "InterMotive has received compensation for the theft of its technology, but nothing for the damage to its brand." ECF No. 285, PageID.11798. In other words, InterMotive does not direct the Court to any reasoned basis to accept what amounts to InterMotive's attorney argument that an award of all of Ford's profits is inadequate to achieve compensation for both of these injuries. In this regard, the Court notes that InterMotive similarly asserts that it "is entitled to Ford's profits as a proxy for damages." ECF No. 293, PageID.13129. However, having presided over the trial, the Court is quite certain that any serious inquiry into InterMotive's actual damages (e.g., InterMotive's lost profits) or any other measure of damages (e.g., a reasonable royalty) is more likely to lead down the road of reducing, not increasing, InterMotive's overall recovery.

And in any event, although InterMotive has identified some authority to the contrary, the clear weight of authority supports the Court's conclusion that allowing InterMotive to separately recover the amount the jury awarded for unfair competition would constitute a double recovery of Ford's profits. *See, e.g.*, *Texas Advanced Optoelectronic Sols., Inc. v. Renesas Elecs. Am., Inc.*, 895 F.3d 1304, 1328 (Fed. Cir. 2018) (holding that there was an impermissible double recovery between a trade secret disgorgement award "in which all profits made from sales of

11

the infringing products … would go to [plaintiff]" and a patent reasonable royalty award "based on a fraction of the total profits for those infringing products" because "[t]he award for patent infringement was based on a subset of the sales that form the basis of the award for trade secret misappropriation"); *Aero Prods. Int'l, Inc. v. Intex Recreation Corp.*, 466 F.3d 1000, 1019 (Fed. Cir. 2006) (holding that there was an impermissible double recovery where "[plaintiff] based both its patent and trademark damages solely on sales of the accused [products]" because "all of the damages awarded to [plaintiff] flowed from the same operative facts: sales of the [same] infringing [products]"); *Nintendo of Am., Inc. v. Dragon Pac. Int'l*, 40 F.3d 1007, 1011 & n.1 (9th Cir. 1994) (although upholding award of both statutory copyright infringement damages and actual trademark infringement damages over defendant's double recovery argument because plaintiff "did not recover the same type of damages under both acts," explaining that case where court refused to award plaintiff both actual damages for copyright infringement and lost profits for trademark infringement "is distinguishable on the grounds that the plaintiff sought the same type of damages under both acts"); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 720 (2d Cir. 1992) (holding that a party "may not obtain a double recovery where the damages for copyright infringement and trade secret misappropriation are coextensive").

12

In summary, both the record at trial and the clear weight of authority compel the conclusion that the jury's award of Ford's profits on a subset of Ford's sales for unfair competition is impermissibly duplicative of the jury's award of Ford's profits on all of Ford's sales for trade secret misappropriation award. Accordingly, the Court will **DENY** InterMotive's motion to amend the final judgment as to its request to allow InterMotive to separately recover the jury's award for unfair competition under the Lanham Act.

### B. Prejudgment Interest for Trade Secret Misappropriation

InterMotive's second requested amendment to the final judgment is adding an award of prejudgment interest on the jury's award for trade secret misappropriation under the MUTSA. InterMotive argues, and Ford does not dispute, that InterMotive is entitled to an award of prejudgment interest. The applicable Michigan interest statute, M.C.L. § 600.6013, provides in relevant part:

> (1) Interest is allowed on a money judgment recovered in a civil action, as provided in this section. …

> \* \* \*

> (8) … [F]or complaints filed on or after January 1, 1987, interest on a money judgment recovered in a civil action is calculated at 6-month intervals from the date of filing the complaint at a rate of interest equal to 1% plus the average interest rate paid at

13

> auctions of 5-year United States treasury notes during the 6 months immediately preceding July 1 and January 1, as certified by the state treasurer, and compounded annually, according to this section.

M.C.L. § 600.6013(1) & (8). As instructed by the Michigan Supreme Court, this interest statute "entitles a prevailing party to prejudgment interest from the filing of the complaint to the entry of a judgment in any civil action." *Old Orchard by the Bay Assocs. v. Hamilton Mut. Ins. Co.*, 454 N.W.2d 73, 78 (Mich. 1990), *overruled on other grounds by Holloway Constr. Co. v. Oakland Cnty. Bd. of Cnty. Rd. Comm'rs*, 543 N.W.2d 923, 926 (Mich. 1996).

Here, InterMotive argues that, under the statutory formula, InterMotive is entitled to prejudgment interest on the jury's $13,209,300 award in the amount of $3,011,092. As with InterMotive's entitlement to an award of prejudgment interest, Ford does not challenge InterMotive's calculation of the amount. Accordingly, the Court will **GRANT** InterMotive's motion to amend the final judgment as to its request to add an award of prejudgment interest in the amount of $3,011,092 on the jury's award for trade secret misappropriation under the MUTSA.

### C. Prejudgment Interest for Unfair Competition

InterMotive's third requested amendment to the final judgment is adding an award of prejudgment interest on the jury's award for unfair competition under the Lanham Act. Specifically, InterMotive argues that

14

it is entitled to prejudgment interest on the jury's $349,867 award in the amount of $79,754. The applicable damages provision of the Lanham Act, 15 U.S.C. § 1117(a), does not explicitly provide for an award of prejudgment interest, and courts are split on whether prejudgment interest is an available remedy. Corresponding, InterMotive and Ford respectively argue for adoption of what some commentators have dubbed the "majority view" and the "minority view."

As InterMotive points out, some courts, including the Sixth Circuit in an unpublished opinion, hold that: "'Although Section 1117(a) does not provide for prejudgment interest, such an award is within the discretion of the trial court and is normally reserved for "exceptional" cases.'" *Wynn Oil Co. v. Am. Way Serv. Corp.*, 61 F.3d 904, 1995 WL 431019, at *3, 1995 U.S. App. LEXIS 19191, at *8–*9 (6th Cir. July 20, 1995) (unpublished table decision) (quoting *Am. Honda Motor Co. v. Two Wheel Corp.*, 918 F.2d 1060, 1064 (2d Cir. 1990)). But as Ford points out, more recently, other courts have begun to take into consideration that the damages provision applicable to knowing and intentional use of a counterfeit mark, 15 U.S.C. § 1117(b), does explicitly provide for an award of prejudgment interest, and hold that: "because § 1117(b) allows courts to award prejudgment interest and § 1117(a) does not provide for prejudgment interest, prejudgment interest is unavailable under § 1117(a)." *Kars 4 Kids Inc. v. America Can!*, 8 F.4th 209, 225 (3d Cir. 2021) (citing *Russello v. United States*, 464 U.S. 16, 23 (1983) ("Where

15

Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.") (quotation and alteration omitted)); *see also Georgia-Pacific Consumer Prods. LP v. von Drehle Corp.*, 781 F.3d 710, 722 (4th Cir. 2015) ("To be sure, as a general matter, prejudgment interest may be awarded at the district court's discretion unless the applicable statute provides otherwise. But when, as here, a statute provides particularized forms of monetary relief and explicitly authorizes prejudgment interest in some circumstances but not others, we conclude that prejudgment interest is not intended to be awarded except as provided in the statute.") (citation omitted).

Here, the Court need not take a side on whether prejudgment interest is an available remedy under Section 1117(a). As set forth above, the Court has concluded that InterMotive is not entitled to separately recover the amount the jury awarded for unfair competition. For the same reasons, the Court concludes that an award of prejudgment interest on the jury's unfair competition award would be impermissibly duplicative to the award of prejudgment interest on the jury's trade secret misappropriation award. Accordingly, the Court will **DENY** InterMotive's motion to amend the final judgment as to its request to add an award of prejudgment interest on the jury's award for unfair competition under the Lanham Act.

16

## V. CONCLUSION

For the reasons stated in this opinion and order, the Court will **GRANT** in part and **DENY** in part InterMotive's motion to amend the final judgment.

Specifically, the Court will **GRANT** InterMotive's motion to amend the final judgment to add an award of prejudgment interest on the jury's award for trade secret misappropriation under the MUTSA in the amount of **$3,011,092**. InterMotive's motion to amend the final judgment is otherwise **DENIED**.

The Court will enter an amended final judgment consistent with this opinion and order in due course.

**SO ORDERED**

Dated: September 30, 2025          /s/Terrence G. Berg
                                   The Honorable Terrence G. Berg
                                   United States District Judge