UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **FORD MOTOR COMPANY and FORD GLOBAL TECHNOLOGIES, LLC,**<br>Plaintiffs/Counter-Defendants,<br>vs.<br>**INTERMOTIVE, INC. and GREGORY E. SCHAFER,**<br>Defendants/Counter-Plaintiffs. | **4:17-CV-11584-TGB-APP**<br>HON. TERRENCE G. BERG<br>**ORDER GRANTING IN PART AND DENYING IN PART INTERMOTIVE'S MOTION FOR APPORTIONED ATTORNEY FEES (ECF NO. 306)**<br>**AND GRANTING FORD'S MOTION FOR REVIEW OF TAXED COSTS (ECF NO. 308)** |

Following a jury trial in this matter between Plaintiffs/Counter-Defendants Ford Motor Company and Ford Global Technologies, LLC (together, "Ford") and Defendants/Counter-Plaintiffs InterMotive, Inc. and Gregory E. Schafer (together, "InterMotive"), the jury rendered a verdict in favor of InterMotive on several of its counterclaims and assessed the amount of Ford's profits that InterMotive is entitled to recover as damages. The Court thereafter awarded InterMotive attorney fees for its trade secret claim, its trademark infringement claims, and Ford's trademark infringement claims, but ordered InterMotive to file a motion addressing the apportionment of its requested fees, excluding

time related to claims which do not allow for attorney fees. Around that same time, costs were taxed against Ford in the amount of 181,859.90.

Now before the Court is InterMotive's Motion for Apportioned Attorney Fees, ECF No. 306, which has been fully briefed, ECF Nos. 309, 313, and Ford's Motion for Review of Taxed Costs, ECF No. 308, which has also been fully briefed. ECF Nos. 311, 312. Upon review of the parties' filings, the Court concludes oral argument will not aid in the resolution of these matters. Accordingly, the Court will resolve the present motions on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the Court will **GRANT IN PART** and **DENY IN PART** InterMotive's Motion for Apportioned Attorney Fees, and **GRANT** Ford's Motion for Review of Taxed Costs.

## I. BACKGROUND

The Court has previously set forth in multiple prior orders an extensive background of the facts of this case and the litigation history between Ford and InterMotive and will not repeat that background and history at length here. Relevant to the instant motions, Ford brought this lawsuit against InterMotive on May 17, 2017, alleging: (1) Trademark Infringement under the Lanham Act, 15 U.S.C. § 1114, (2) False Designation of Origin under the Lanham Act, 15 U.S.C. § 1125(a), (3) Unfair Competition, (4) Trademark Dilution under the Lanham Act, 15 U.S.C. § 1125(c), (5) Cancelation of Trademark Registration pursuant to 15 U.S.C. § 1064, and (6) Declaratory Judgment. ECF Nos. 1, 26. The

Court dismissed with prejudice Ford's Count V for Trademark Cancelation relatively early in this litigation. *See* ECF No. 35.

InterMotive answered and brought six counterclaims against Ford, alleging (1) Infringement of a Registered Trademark under the Lanham Act, (2) Unfair Competition under § 43(a) of the Lanham Act, (3) Breach of Contract, (4) Unfair Competition under state law, (5) Trade Secret Misappropriation under the Michigan Uniform Trade Secrets Act ("MUTSA"), and (6) False Advertising. ECF No. 42.

Following years of contentious discovery and motion practice, a jury trial was ultimately held in this case from October 18, 2023 to November 1, 2023. With respect to InterMotive's present motion for attorney fees, Ford dismissed its trademark claims against InterMotive during trial, but only after it presented its case-in-chief, so only InterMotive's counterclaims were presented to the jury. The jury ultimately found for InterMotive on two of its Lanham Act counterclaims: (1) trademark infringement under § 32 of the Lanham Act, 15 U.S.C. § 1114; and (2) unfair competition under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). As set forth in the verdict form, the jury found that InterMotive owns a valid trademark in the product name "Upfitter Interface Module." ECF No. 247, PageID.9408. The Court instructed the jury to find for InterMotive on validity if it proved that InterMotive's registered "Upfitter Interface Module" trademark is not generic (i.e., is, at least, descriptive) and has acquired distinctiveness through secondary

meaning. ECF No. 266, PageID.11142–45. Furthermore, the jury found that Ford's use of the "Upfitter Interface Module" name created a likelihood of confusion as to the origin of Ford's module and, therefore, constituted trademark infringement and unfair competition under the Lanham Act. ECF No. 247, PageID.9408, 9413. Additionally, the jury determined that Ford's infringement was willful, deliberate, and intentional. *Id*. at PageID.9408. Based on its assessment of the amount of Ford's profits caused by Ford's Lanham Act violations, the jury awarded InterMotive $0.00 for trademark infringement and $349,867 for unfair competition. *Id*. at PageID.9408, 9413.

The jury also found for InterMotive on its counterclaim for trade secret misappropriation under the Michigan Uniform Trade Secrets Act ("MUTSA"), M.C.L. § 445.1901, *et seq*. At trial, InterMotive defined the trade secret as "the use of programmable inputs in a device like the Upfitter Interface Module." ECF No. 266, PageID.11154. In other words, the trade secret is a combination of two elements: (1) a device like the Upfitter Interface Module; and (2) programmable inputs. As set forth in the verdict form, the jury found that "the use of programmable inputs in a device like the Upfitter Interface Module" was InterMotive's trade secret, and that Ford misappropriated InterMotive's trade secret. *Id*. at PageID.9411. Based on its assessment of the amount of Ford's profits that were caused by Ford's use of the trade secret, the jury awarded InterMotive $13,209,300 for trade secret misappropriation. *Id*. The jury

also found for InterMotive on its breach of contract claim, awarding $1.00 in damages, but not on InterMotive's false advertising claim. *Id.* at PageID.9409–10.

On September 25, 2024, the Court entered final judgment on the jury verdict. ECF No. 282. After concluding that allowing InterMotive to separately recover the smaller amount the jury awarded for unfair competition would constitute a double recovery of Ford's profits, the Court ordered that InterMotive shall be allowed to recover only the larger amount the jury awarded for trade secret misappropriation. *Id.* at PageID.11652.

InterMotive moved for attorney fees as permitted by the Lanham Act, the MUTSA, and the Court's inherent authority, seeking $2,442,970.27 against Ford, which represented InterMotive's total attorney fees incurred of $2,729,186.00, less the amount Ford had paid for sanctions in relation to expert discovery, $286,215.73. ECF No. 284. The Court entered an Order granting InterMotive's motion in part, finding that this litigation was as an "exceptional case" that qualified for attorney fees under the Lanham Act, 15 U.S.C. § 1117(a), with respect to both Ford's trademark claims and InterMotive's trademark and unfair competition claims, and that Ford's misappropriation of InterMotive's trade secrets was willful and malicious, and thus qualified for attorney fees under the MUTSA, M.C.L. § 445.1905. ECF No. 297. The Court, however, could not determine the amount of those fees because

InterMotive failed to identify and apportion the time that counsel spent litigating the claims under the Lanham Act and the MUTSA, the only claims for which counsel was entitled to attorney's fees. *See id.* Therefore, the Court ordered InterMotive to file a supplemental motion in support of its fee request for the Lanham Act claims and the MUTSA, addressing the apportionment of its requested fees as to those claims, and excluding time related to claims which do not allow for attorney fees, such as InterMotive's breach of contract claim and unsuccessful false advertising claim. *Id.*

InterMotive has now filed a Motion for Apportioned Attorney Fees, seeking $2,405,974 in fees, which it asserts represents the amount of fees originally claimed minus the amount in attorney billing entries that specifically identify work for unrecoverable claims such as breach of contract and false advertising. ECF No. 306. InterMotive alternatively asks the Court to award $2,000,000 in attorney fees as a "more rough apportionment based on the percentage of recoverable claims to the total number of claims." *Id.*

Ford filed a response objecting to the amount requested, and "request[ing] that the Court deny InterMotive's motion for attorney fees." ECF No. 309. InterMotive then filed a reply brief in support of its motion. ECF No. 313.

In addition, following the jury verdict in its favor, InterMotive submitted a Bill of Costs, ECF No. 303, which the Clerk taxed on

November 7, 2025, in the amount of $181,859.90 for costs including service fees, court reporter fees, witness fees, and court-appointed expert fees. ECF No. 307. On November 14, 2025, Ford filed a Motion for Review of Taxed Costs, opposing the Clerk's taxation of two portions of the costs sought by InterMotive: (1) InterMotive's portion of the Court-appointed Special Master Christopher Darrow's fees; and (2) InterMotive's portion of Court-appointed mediator, Retired Magistrate Judge Mona Majzoub's, fees. ECF No. 308.

InterMotive filed a response in opposition to Ford's motion, ECF No. 311, and Ford filed a reply brief in support of its motion. ECF No. 312.

## II. LEGAL STANDARDS

### A. Attorney Fees

"Where a plaintiff fails to establish a claim for trademark or trade dress infringement under the Lanham Act, a court may award attorney's fees to the defendant in 'exceptional cases.'" *Bliss Collection, LLC v. Latham Cos., LLC*, 82 F.4th 499, 516 (6th Cir. 2023) (quoting 15 U.S.C. § 1117(a)). "An 'exceptional' case is 'one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated.'" *Id.* (emphasis added) (quoting *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014)). "[U]nder 15 U.S.C. § 1117(a), attorneys' fees are

recoverable only for work performed in connection with claims filed under the Lanham Act." *U.S. Structures, Inc. v. J.P. Structures, Inc.*, 130 F.3d 1185, 1193 (6th Cir. 1997). The MUTSA provides, in relevant part, that a court "may award reasonably attorney's fees to the prevailing party" "if willful or malicious misappropriation [of a trade secret] exists." M.C.L. § 445.1905.

"In determining a 'reasonable' fee under section 1117(a), the Court must first determine the 'lodestar' amount (the product of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly fee) and then reduce or augment that amount by considering other case-specific factors." *Mike Vaughn Custon Sport, Inc. v. Piku*, No. 12-13083, 2015 WL 4603171, at *2 (E.D. Mich. July 30, 2015) (Lawson, J.) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 433–37 (1983)). "[T]he resulting sum should be adjusted to reflect the 'result obtained,'" which "involves the following of two questions: 'First, did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded? Second, did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?'" *U.S. Structures*, 130 F.3d at 1193 (quoting *Hensley*, 461 U.S. at 434). "The party seeking attorney's fees 'bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates.'" *Yellowbook Inc. v. Brandeberry,* 708 F.3d 837, 848 (6th Cir. 2013) (quoting *Hensley*, 461 U.S. at 437).

While "[t]he key requirement for an award of attorney's fees is that the documentation offered in support of the hours charged must be of sufficient detail and probative value to enable the court to determine with a high degree of certainty that such hours were actually and reasonably expended in the prosecution of the litigation," *Imwalle v. Reliance Med. Prods., Inc.,* 515 F.3d 531, 553 (6th Cir.2008), "the determination of fees 'should not result in a second major litigation" and "trial courts need not, and indeed should not, become green-eyeshade accountants." *Fox v. Vice,* 563 U.S. 826, 838 (2011). Rather, "[t]he essential goal in shifting fees (to either party) is to do rough justice, not to achieve auditing perfection." *Id.* "So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

Thus, there is "no requirement" that district courts "identify and justify each disallowed hour" or "announce what hours are permitted for each task." *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1202 (10th Cir. 1986). Instead, a "concise but clear explanation" by the district court is sufficient. *See Hensley*, 461 U.S. at 437 (cautioning that a "request for attorney's fees should not result in a second major litigation"). "When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the relationship between the amount of the fee awarded and the results obtained." *Hensley*, 461 U.S. at 437.

**B. Taxable Costs**

Rule 54(d) of the Federal Rules of Civil Procedure "establishes that the prevailing party shall be allowed to recover its costs unless the court directs otherwise. Costs that may be taxed are specified in 28 U.S.C. § 1920." *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 417 (6th Cir. 2005) (*abrogated on other grounds* by *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560 (2012)). That statute identifies taxable costs as:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation service under section 1828 of this title.

28 U.S.C. § 1920. "Rule 54(d)(1) creates a presumption in favor of awarding costs to the prevailing party," but a court may award *only* those costs listed in § 1920. *Cooley v. Lincoln Elec. Co.*, 776 F. Supp. 2d 511, 574 (N.D. Ohio 2011).

## III. DISCUSSION

### A. Request for Attorney Fees

InterMotive had attached its attorneys' billing records in support of its initial fee motion, supported by a declaration of counsel for InterMotive, Gerald E. McGlynn III. *See* ECF No. 284-1. These records show that InterMotive paid $2,442,907.27 in attorney fees. This figure represents InterMotive's total attorney fees of $2,729,186.00, less the amount Ford has paid for sanctions in relation to expert discovery ($286,215.73). *See id.* at ¶¶ 104–05, PageID.11709.

InterMotive first argues that it is entitled to "most" of its fees because the recoverable and non-recoverable claims are "inextricably intertwined," and that "the administrative burden of apportioning fees by claim in real time over eight years would have been unjustified." ECF No. 306, PageID.13557–59. It contends that all but one claim—the false advertising claim—were essentially trademark and theft of technology claims, with overlaps in the pleading, discovery, briefing, and trial preparation, and that it is "virtually impossible" to separate the work done for the recoverable claims from the nonrecoverable claims. InterMotive asserts that it nevertheless reviewed its billing records in an effort to exclude billing that refers to claims for which the Court is not permitting recovery—false advertising, breach of contract, and state unfair competition. Using "key words," InterMotive states that it identified 24 billing entries that mention either false advertising, unfair

competition, or contract, totaling $36,996. *Id.* at PageID.13558–59 (citing Andrew Grove Declaration, ECF No. 306-2). Deducting this amount from the total fees (less discovery sanctions), would yield a fee award of $2,405,974. The Court takes note that this amount would result in InterMotive receiving over 98% of its claimed fees in this case, where it is only permitted a recovery of attorney fees on a subset of its claims.

Ford objects to this fee request and argues that none of InterMotive's non-trademark and non-trade secret claims is so intertwined with its trademark and trade secret claims that InterMotive should receive essentially all of its fees. ECF No. 309, PageID.13604–07. The Court notes that Ford does not dispute the hourly rates claimed by InterMotive's attorneys. The Court finds that InterMotive's request for over 98% of its fees does not adequately take into account the difference between recoverable and non-recoverable claims and therefore does not represent an accurate or good faith apportionment. InterMotive's contention that its "attorneys could not have reasonably foreseen that the Court would award attorney fees for some claims but not for other," ECF No. 306, PageID.13557, is not plausible, as under the American rule, unless Congress provides otherwise, parties to litigation are to bear their own attorney fees. *Fogerty v. Fantasy*, 510 U.S. 517, 533 (1994). InterMotive's attorneys knew which claims were asserted by each party and which claims allowed for the recovery of attorney fees and which did not. InterMotive's inability to more precisely parse out its billing entries

for the recoverable versus non-recoverable claims should not be visited upon Ford. Accordingly, InterMotive's request for fees in the amount of $2,405,975 will not be approved.

InterMotive offers an alternative method of apportionment of fees, based on the ratio of the number of claims for which fees are awardable over the total number of claims brought in the case. ECF No. 306, PageID.13559–63. InterMotive lists the following number of claims in this case as:

1. Ford's claim for trademark infringement under the Lanham Act.
2. Ford's claim for false designation of origin under the Lanham Act.
3. Ford's claim for unfair competition.
4. Ford's claim for dilution under the Lanham Act.
5. Ford's claim for trademark cancellation under the Lanham Act.
6. Ford's claim for declaratory judgment of non-infringement under the Lanham Act, for non-breach of contract, and non-theft of technology, presumably under the MUTSA.
7. InterMotive's claim for trademark infringement under the Lanham Act.
8. InterMotive's claim for unfair competition under the Lanham Act.
9. InterMotive's claim for breach of contract.
10. InterMotive's claim for unfair competition.
11. InterMotive's claim for misappropriation of trade secret under MUTSA.
12. InterMotive's claim for false advertising.

ECF No. 306, PageID.13559–60 (citing ECF No. 36; ECF No. 297, PageID.13325).

InterMotive states that the Court awarded fees for the trade secret misappropriation claim under the MUTSA, and the "trademark infringement" claims under the Lanham Act, and that InterMotive was successful on 7 of the 12 claims in the case, and successful on at least 2/3 of Ford's declaratory judgment claim, for a total successful number of claims of 7.667 out of 12, or approximately 64% (63.89%). *Id.* at 13560–61. InterMotive asserts that 64% of $2,442,970.27 would yield a fee award in the amount of at least $1,560,854. *Id.*

InterMotive contends, however, that this figure is "too rough and too low," as the claims were all inextricably intertwined and InterMotive was successful on the majority of the claims brought by both parties. *Id.* PageID.13561–62. InterMotive states that all of the damages awarded by the jury were for compensable claims, and contends (without any support) that only a small amount of work was done for the Michigan unfair competition claims and the false advertising claim and that it did not bill that much for those claims. *Id.* InterMotive suggests that the Court therefore "add back in several hundred thousand dollars … to arrive at a number of $2,000,000" in fees. *Id.*

Ford responds that this number is still too high for many reasons. While Ford does not challenge InterMotive's calculation of the percentage of recoverable claims at 64%, it argues that InterMotive failed to subtract

fees before applying that percentage to the fees sought. ECF No. 309, PageID.13609–10. Specifically, Ford faults InterMotive for not subtracting the time entries it attributed to the false advertising, unfair competition, and contract claims based on its keyword search, totaling $36,996. *Id.* However, there is no need to subtract those fees because that figure is already accounted for as part of the non-recoverable claims (the approximately 36% of the fees InterMotive is not seeking).

Ford also contends that InterMotive is not entitled to fees related to the United States Patent and Trademark Office's ("USPTO's") rejections of InterMotive's trademark applications for the principal register, which Ford calculates at $32,879. ECF No. 309, PageID.13609–10 (citing ECF No. 309-1, PageID.13615–19 (billing entries from July 29, 2017 through June 15, 2018)). Ford contends that this work was undertaken for non-litigation reasons. *Id.* (citing ECF No. 255, PageID.10246 (Mr. Ellison testifying that InterMotive attempted to register the mark "to make sure that the brand was recognized as ours.")).

InterMotive broadly contends that these fees are inextricably intertwined with the litigation "because it was part of InterMotive's strategy from the beginning of the case" because InterMotive "needed a federal registration to enforce its rights against infringers, and Ford was the most immediate, real and present infringer." ECF No. 306, PageID.13562–63. InterMotive states that although it already owned a

U.S. Registration on the Supplemental Register for its brand, it had to show that it at least tried to register its brand on the Principal Register and show the Trademark Office that it had achieved secondary meaning in the brand." *Id.* InterMotive asserts that it "*would have used* this application evidence more aggressively if registration on the Principal Register had been allowed during the litigation," and that this attempted registration was "part of the effort to prove InterMotive's trademark rights against Ford." *Id.* (emphasis added).

Neither party has cited any case law addressing the recovery of fees for work before the USPTO in a Lanham Act case. However, in the absence of such case law authorizing such an award, the Court, in the exercise of its discretion, will decline recovery of such fees incurred conducting work before a separate tribunal. *Cf. Amneal Pharms. LLC v. Almirall, LLC*, 960 F.3d 1368, 1371–72 (Fed. Cir. 2020) (concluding that "section 285 [of the Patent Act] does not authorize this court to award fees for work that was done before the agency on appeal from an IPR"); *see also Dragon Intellectual Prop. LLC v. Dish Network L.L.C.*, 101 F4th 1366, 1372 (Fed. Cir. 2024), *cert. denied*, 145 S. Ct. 1176 (2025) (holding § 285 did not allow recovery of fees incurred in a voluntarily undertaken parallel IPR proceeding). InterMotive does not contest Ford's calculation of the amount of those fees as $32,879. The Court will accept that amount and deduct it from InterMotive's fees before applying a percentage reduction.

Ford also contests billing entries related to InterMotive's preparation of fee applications in response to the Court's prior order awarding it fees, contending that InterMotive already sought and received a sanction for its discovery motion. ECF No. 309, PageID.13610 (citing ECF No. 284-1, PageiD.11780); ECF No. 309-1, PageID.13620–24 (billing entries dated 3/5/2021 to 9/30/2204). However, InterMotive has deducted the amount it received from the sanctions order, and InterMotive is entitled to receive fees for its work on motions for attorney fees, including the fees now sought. This objection will be denied.

Finally, Ford contends that InterMotive has included billing entries related to researching and briefing discovery motions and motions for sanctions against Ford. ECF No. 309, PageID.13610–11. Ford argues that InterMotive should not be permitted to recover these fees when it has already been awarded a sanction, and that these fees total $92,563.50. *Id.* However, InterMotive's counsel has already deducted $286,215.73 in fees that Ford has paid due to sanctions from the total amount of $2,729,186 charged to InterMotive, leaving the remaining requested amount of $2,442,970.27. ECF No. McGkynn Decl. ¶¶ 104–05, 281-1, PageID.11709.

Accordingly, the Court will deduct $32,879, representing fees incurred in proceedings before the USPTO, from InterMotive's requested fees of $2,442,970.27, leaving $2,410,091.27. Applying the 63.89% multiplier, results in an award of **$1,539,807.31**. The Court finds that

this is a reasonable and fair award in this case taking into account the Court's overall sense of the case, including the lengthy and contentious litigation history, the eleven-day trial, and InterMotive's success in this case. The Court denies InterMotive's request for an upward adjustment.

**B. Review of Taxed Costs**

On November 7, 2025, the Clerk entered a Taxed Bill of Costs in this action, taxing costs against Ford in the amount of $181,859.90. ECF No. 307. Ford has filed a Motion for Review of Taxed Costs, objecting to the Clerk's taxation of costs for InterMotive's share of mediator and special master fees included in the Bill of Costs as "court-appointed experts" fees. ECF No. 308.

**1. Mediator fees**

On November 6, 2020, the Court entered an Order for Facilitation in this matter, ordering the parties to facilitate before Retried Magistrate Judge Mona Majzoub. ECF No. 116. That order provided that "[t]he facilitator shall be compensated at a reasonable rate to be determined by the facilitator, which shall be borne jointly by the parties." *Id.* InterMotive included its half of Judge Majzoub's fees in its bill of costs, which were taxed against Ford in the amount of $6,920.00. ECF No. 303-3, PageID.13462.

The Court's power to tax costs is limited to "the items enumerated in [28 U.S.C.] § 1920." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 442 (1987). Section 1920 does not list mediator fees or mediation fees

as a taxable cost, 28 U.S.C. § 1920, and "[t]here appears to be a circuit consensus that mediation fees are not recoverable under Section 1920." *Moore Fam. Tr. v. Bingham*, No. 2:19-CV-115, 2023 WL 11964124, at *2 (W.D. Mich. Jan. 19, 2023) (disallowing costs and citing *Cook Children's Med. Ctr. v. New England PPO Plan of Gen Consol. Mgmt. Inc.*, 491 F.3d 266, 277 (5th Cir. 2007) (citing decisions from the Eighth and Ninth Circuits)); *see also Nicholas v. Allianceone Receivables Mgmt., Inc.*, 450 F. App'x 887, 888 (11th Cir. 2012) (mediation fees are not taxable costs under § 1920); *Capitani v. World of Miniature Bears, Inc.*, No. 3:19-CV-00120, 2022 WL 587580, at *5 (M.D. Tenn. Feb. 25, 2022) (mediation costs are not recoverable under § 1920), *report and recommendation adopted*, 2022 WL 3334347 (M.D. Tenn. Aug. 11, 2022); *Necak v. Select Portfolio Servicing, Inc.*, No. 1:17 CV 1473, 2019 WL 13196983, at *1 (N.D. Ohio July 25, 2019) ("Mediation fees do not fall within any category of recoverable costs listed in § 1920 and, therefore, are not recoverable.").

InterMotive attempts to distinguish this line of cases as not applying to court-appointed mediators as opposed to mediators hired by the parties. ECF No. 311, PageID.13682. However, the court in *Cook Children's Medical Center*, cited above, expressly rejected this argument, stating that "the source of the district court's authority to authorize the use of mediation in a civil action does not support the taxation of mediation fees. There is absolutely nothing in [28 U.S.C. §§ 651–652] that would expressly or impliedly provide district courts with the inherent

authority or discretion to award mediation fees as costs." 491 F.3d at 276. That court further explained that "aside from acting as neutral parties, mediators appear to share no other significant common qualities with court appointed experts.." *Id.* at 277.

InterMotive's argument that court-ordered mediator costs are taxable under Michigan law is a non-starter. The award of costs in this Court is a procedural matter governed by Rule 54 of the Federal Rules of Civil Procedure and § 1920, not state law. *See Stender v. Archstone-Smith Operating Tr.*, 958 F.3d 938, 946 (10th Cir. 2020); *see also Blount v. Stanley Eng'g Fastening*, No. 5:19-cv-109, 2022 WL 2304687, at *1 (W.D. Ky. June 27, 2022) ("Rule 54(d) is procedural and applies in federal court despite contrary state law.") (citations omitted).

Accordingly, InterMotive is not entitled to recover mediation fees in the amount of **$6,920.00** in the Taxed Bill of Costs, and that amount shall be removed from the Taxed Bill of Costs.

**2. Special/discovery master fees**

On April 26, 2022, the Court appointed Christopher Darrow as a "discovery master/mediator," ordering that "[t]he fees and expenses of the Discovery Master shall be shared equally by Plaintiffs and Defendant, subject to redistribution by the Court upon recommendation of the Discovery Master or in the discretion of the Court." ECF No. 175, PageID.6565. InterMotive included the Discovery Master's fees in its bill

of costs submitted to the Court, in the amount of **$162,030.00** as "Court-appointed experts" fees. ECF No. 303-3, PageID.13463–65; ECF No. 307.

Ford challenges the taxability of $162,030 for special master fees. Ford argues that these fees are not taxable under Rule 54 and that the Appointment Order—which apportioned the Special Master fees evenly between the parties—now bars InterMotive from recovering the fees it paid to the Special Master. ECF No. 308, PageID.13593–95.

It is generally recognized that Special Master fees are not included in § 1920 and thus are not recoverable as costs under Rule 54. *See* 28 U.S.C. § 1920. *See e.g. Perez v. Carey Int'l, Inc.*, 373 F. App'x 907, 914 n.4 (11th Cir. 2010) (affirming the district court's denial of special master costs where "[t]he plaintiffs alternatively argue[d] that the special master is really an expert, and therefore his fees are taxable under 28 U.S.C. § 1920(6)," because "[t]he special master functioned as a special master, not as a court-appointed expert, and his fees are not taxable as costs."); *Sobobo Band of Luiseno Indians v. California*, No. 1:20-cv-00147, 2024 WL 4957180, at *3 (E.D. Cal. Dec. 3, 2024) ("Costs for a master are not expressly taxable under section 1920. Nor are they arguably incorporated by any of the enumerated allowable costs.") (citation modified); *Acceleron, LLC v. Dell Inc.*, No. 1:12-CV-4123, 2022 WL 1087683, at *24 (N.D. Ga. Mar. 7, 2022), *aff'd*, No. 2022-1620, 2023 WL 4503189 (Fed. Cir. July 13, 2023) (concluding that special master fees are

not taxable as costs under Rule 54).[1] The Sixth Circuit has offered as "non-binding, non-exhaustive, not-even-rising-to-the-level-of-dicta" that while special masters "use expertise to assist the court," they are not "court appointed experts" under § 1920(6) and their compensation is instead "provided for elsewhere" by Rule 53. *In re Cardizem CD Antitrust Litig.*, 481 F.3d 355, 363–64 (6th Cir. 2007).

"Under Rule 53(a) of the Federal Rules of Civil Procedure, the district court may charge the special master's compensation against one or more of the parties or apportion it among them." *Apponi v. Sunshine Biscuits, Inc.*, 809 F.2d 1210, 1220 (6th Cir. 1987) (citing *Morgan v. Kerrigan,* 530 F.2d 401, 427 (1st Cir. 1976); *Erickson's, Inc. v. Travelers Indem. Co.,* 454 F.2d 884, 885 (5th Cir. 1972)). "The district court has broad discretion to determine which of the parties to charge, and the district court's decision will not be disturbed absent an abuse of that discretion." *Id.* (citing *Morgan,* 530 F.2d at 427).

---

[1] The Court recognizes that some courts in other jurisdictions have taxed costs of special masters, even though not expressly enumerated under § 1920. *See, e.g., Aird v. Ford Motor Co.*, 86 F.3d 216, 221 (D.C. Cir. 1996) (special master's compensation is taxable costs, to be awarded to the prevailing party under Rule 53(a)); *Gressett v. Contra Costa Cnty.*, No. 12-cv-03798, 2015 WL 8770599, at *2 (N.D. Cal. Dec. 15, 2015) ("While section 1920 does not explicitly provide for special master's fees, the Ninth Circuit has held that district courts have discretion to tax special master's fees.") (citations omitted). The better reasoned decisions limit taxable costs to those expressly listed in § 1920, in accord with *Crawford Fitting*, which held that the only costs that may be awarded under Rule 54(d) are those explicitly listed in § 1920. 482 U.S. at 439.

Under this rule, the Court ordered an allocation of the Special Master fees in its April 26, 2022 Order Appointing Discovery Master, ordering that "[t]he fees and expenses of the Discovery Master shall be shared equally by Plaintiffs and Defendant, subject to redistribution by the Court upon recommendation of the Discovery Master or in the discretion of the Court." ECF No. 175, PageID.6565. Mr. Darrow has not recommended a different allocation, and the Court finds no reason to support one.

While the Court has discretion under Fed. R. Civ. P. 53(g)(3) to amend its allocation of fees, it will not do so in this case. The Court appointed Mr. Darrow as a Discovery Master "[g]iven the complexity of the issues and the benefits afforded to the Court from drawing on the expertise of a highly competent special master," concluding "that the appointment of a Discovery Master to address [the issues] will promote efficiency and expedite the ultimate resolution of the litigation." ECF No. 175, PageID.6562–63. Mr. Darrow subsequently worked to assist the Court regarding expert discovery, evidentiary issues, both pre-trial and during trial, as well as in facilitating settlement discussions between the parties, and his assistance in this case benefited the Court and both InterMotive and Ford. The Court finds no reason to amend the allocation of fees between the parties. *See In re: Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, No. 1:08-WP-65000, 2015 WL 11995255, at *4 (N.D. Ohio Feb. 18, 2015) (declining to reapportion fees under Rule 53(g)

because "the need for a Special Master derived from the dramatic number of motions presented to the Court and the complexity of the issues—attributable [to both parties]" and "the Special Master's assistance in resolving voluminous pretrial motions and preparing this case for trial benefits both sides.") (citing cases).

Accordingly, the Special Masters fees in the amount of **$162,030** will be deducted from the taxable costs.

## IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that InterMotive's Motion for Apportioned Attorney Fees, ECF No. 306, is **GRANTED IN PART** and **DENIED IN PART**, and InterMotive is awarded attorney fees in the amount of **$1,539,807.31.**

**IT IS FURTHER ORDERED** that Ford's Motion for Review of Taxed Costs, ECF No. 308, is **GRANTED** and the Court **STRIKES** the mediator and Discovery Master costs included as "Court-appointed experts" costs in the amount of **$168,950.00** from the Bill of Costs total at ECF No. 307. Costs are taxed in favor of Defendant in the amount of **$12,909.53**.

**IT IS SO ORDERED.**

Dated: September 28, 2026 /s/Terrence G. Berg

HON. TERRENCE G. BERG
UNITED STATES DISTRICT JUDGE